**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOVERNOR ANDREW M. CUOMO,

                    Movant,

        v.

LINDSEY BOYLAN,

                Respondent.

Case No.  23-mc-185

TROOPER 1,

               Plaintiff,

        v.

NEW YORK STATE POLICE, ANDREW
CUOMO, MELISSA DEROSA, and
RICHARD AZZOPARDI,

              Defendants.

Pending In: Civil Action No. 22-cv-00893
(LDH) (TAM), United States District Court
for the Eastern District of New York

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**FORMER GOVERNOR ANDREW M. CUOMO'S MOTION TO COMPEL**
**LINDSEY BOYLAN'S COMPLIANCE WITH SUBPOENA**

**Glavin PLLC**
Rita M. Glavin
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

**SHER TREMONTE LLP**
Theresa Trzaskoma
Allegra Noonan
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

THE DOCUMENT SUBPOENA AT ISSUE ................................................................. 2

    Trooper 1 Relies on Ms. Boylan's Allegations.................................................... 2

BACKGROUND TO MS. BOYLAN'S ALLEGATIONS ............................................ 7

    Ms. Boylan's Resignation................................................................................... 9

    Ms. Boylan's Conduct in Connection with the OAG Investigation ................. 10

ARGUMENT ............................................................................................................... 11

I.     THE INFORMATION SOUGHT IS UNQUESTIONABLY RELEVANT ................... 11

II.    MS. BOYLAN'S BURDEN-RELATED OBJECTIONS ARE WITHOUT MERIT ...... 16

III.   CONFIDENTIALITY CONCERNS ARE NOT A PROPER BASIS TO WITHHOLD
      THE REQUESTED MATERIALS.................................................................... 19

CONCLUSION............................................................................................................. 20

**TABLE OF AUTHORITIES**

**Cases**

*Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 08-CV-3235-ENV-CLP, 2009 WL 10705911 (E.D.N.Y. Aug. 3, 2009) ............................................................ 14

*Bulkmatic Transp. Co., Inc. v. Pappas*, No. 99Civ.12070(RMB)(JCF), 2001 WL 504839 (S.D.N.Y. May 11, 2001) ................................................................................................ 12

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. Oct. 21, 1996) .................. 16

*Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17 Civ. 7417 (VM) (SLC), 2020 WL 7383940 (S.D.N.Y. Dec. 16, 2020) .......................................................................... 20

*Eckert v. United Auto. Workers*, No. 04-CV-0538S(Sr), 2006 WL 8455725 (W.D.N.Y. June 12, 2006) .......................................................................................................................... 13

*Impact Env't Consulting v. Chillak*, No. CV 15-6694 (AKT), 2016 WL 11185296 (E.D.N.Y. Sept. 8, 2016) ................................................................................................................ 19

*In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704 (S.D.N.Y. June 11, 2019) ................................................................................................ 13

*MacNamara v. City of New York*, No. 04Civ.9612(KMK) (JCF), 2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006) ................................................................................................................ 16

*Nat'l Cong. For P.R. Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88 (S.D.N.Y. 2000) 11

*Padilla v. Sacks & Sacks, LLP,* No. 19-CV-10021 (GBD) (KHP), 2021 WL 4429785 (S.D.N.Y. Sept. 27, 2021) ................................................................................................................ 14

*Powell v. Allied Universal Sec. Servs.*, No. 17-CV-6133-ARR-SJB, 2018 WL 4378168 (E.D.N.Y. Aug. 9, 2018) ................................................................................................ 19

*Redd v. N.Y. State Div. of Parole*, 923 F. Supp. 2d 393 (E.D.N.Y. 2013) .................................. 15

*Stinson v. City of New York*, No. 10 Civ. 4228 (RWS), 2015 WL 4610422 (S.D.N.Y. July 23, 2015) .......................................................................................................................... 18

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-cv-4044 (BCM), 2020 WL 91636 (S.D.N.Y. Jan. 8, 2020) ................................................................................................ 12

*United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 215 (S.D.N.Y. 1974) .................................. 14

*United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 92 (S.D.N.Y. 1979) ............................ 12, 16

Former Governor of New York State Andrew M. Cuomo ("Governor Cuomo") brings this motion to compel Lindsey Boylan to comply with a valid Rule 45 subpoena seeking documents relevant to a pending civil action in the Eastern District of New York alleging that Governor Cuomo engaged in sexual harassment (claims that Governor Cuomo denies). Although the underlying lawsuit contains dozens of allegations related to Ms. Boylan's and others' accusations against Governor Cuomo, Ms. Boylan has refused to produce several categories of documents called for by the subpoena. For the reasons set forth below, Ms. Boylan should be compelled to produce the subpoenaed materials so that Governor Cuomo can properly defend himself.

## PRELIMINARY STATEMENT

In February 2022, Trooper 1[1] filed a lawsuit against Governor Cuomo in the Eastern District of New York, captioned *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (the "Trooper 1 Action") alleging claims for discrimination, sexual harassment, and retaliation against Governor Cuomo. Seeking to bolster her own claims for discrimination and harassment, Trooper 1 includes in her Complaint dozens of paragraphs of findings from the New York State Attorney General's 2021 investigation concerning sexual harassment allegations against Governor Cuomo and allegations about Governor Cuomo by other women who Trooper 1 did not know and did not work with. Ms. Boylan is one of those women.

Indeed, the Complaint in the Trooper 1 Action contains ***more than 13 paragraphs*** of Ms. Boylan's allegations that Governor Cuomo harassed her. To defend against Trooper 1's allegations of a "pattern" of harassment based on Ms. Boylan's accusations, Governor Cuomo served a Rule 45 subpoena on Ms. Boylan in early April 2023. On Friday, June 2, 2023, Ms. Boylan finally

---

[1]     Governor Cuomo did not oppose Trooper 1's motion to proceed anonymously in the underlying action.

produced approximately 25 pages of documents that she had previously produced to the OAG during the OAG's investigation. But Ms. Boylan continues to refuse to produce entire categories of documents called for by the subpoena.

Among other things, Ms. Boylan refuses to produce communications with others (including other complainants) about her and others' sexual harassment allegations against Governor Cuomo, which are plainly relevant and necessary for Governor Cuomo to defend himself in the Trooper 1 Action. She also refuses to produce documents concerning the circumstances of her departure from state employment, which are relevant in light of Ms. Boylan's public claim that she resigned because of the alleged harassment. And Ms. Boylan also refuses to produce documents concerning how she used her allegations against Governor Cuomo in connection with her campaign for Manhattan Borough President, which are relevant to her motive in making the allegations.

Although Ms. Boylan's counsel contends that Governor Cuomo's subpoena is "further harassment" of Ms. Boylan, the subpoena is part of necessary and routine civil discovery. Indeed, Governor Cuomo needs to take discovery from Ms. Boylan only because Trooper 1 chose to include Ms. Boylan's claims as part of Trooper 1's own lawsuit. Due process and the Federal Rules of Civil Procedure require that Governor Cuomo be allowed to take discovery regarding all of these allegations. Ms. Boylan should be compelled to produce the subpoenaed materials so that Governor Cuomo can properly defend himself.

## THE DOCUMENT SUBPOENA AT ISSUE

### *Trooper 1 Relies on Ms. Boylan's Allegations*

In her Complaint, Trooper 1 alleges that she "was not the Governor's only victim" and that "the Governor harassed numerous other women in almost the same manner that he harassed Trooper 1." Second Amended Complaint, Trooper 1 Action, ECF 74 ("Compl.") ¶ 75. Trooper 1

specifically devotes more than ten pages of her pleading to allegations concerning "The Governor's Harassment of Other Women." *Id*. ¶¶ 75–143. With respect to Ms. Boylan, Trooper 1 acknowledges Ms. Boylan's role in instigating the New York State Attorney General's ("OAG") investigation by publicly accusing Governor Cuomo of harassment in December 2020. *Id.* ¶ 63. The Complaint contains thirteen paragraphs summarizing Ms. Boylan's allegations and detailing several instances of alleged harassment relating to Ms. Boylan—which Governor Cuomo denies— that were part of the Report issued by the OAG (the "OAG Report"). *Id.* ¶¶ 103–116; *see also* Declaration of Rita M. Glavin dated June 5, 2023 ("Glavin Decl.") ¶ 4.

Trooper 1 further made clear her intent to rely on Ms. Boylan's allegations in Trooper 1's Rule 26(a) Initial Disclosures, which identify Ms. Boylan as an "individual likely to have discoverable information that may support [her] claims" and who "has knowledge concerning, *inter alia*, (i) the allegations set forth in the Amended Complaint and Answers, including, but not limited to, the allegations as they relate to Boylan; (ii) Defendants' personnel and employment decisions, practice, and/or policies." Ex. 1 at 2, 4.[2] Trooper 1's disclosures likewise identify as witnesses the other complainants who are referenced in the Complaint. *Id.* at 4–6; Compl. ¶¶ 75– 143.

On July 11, 2022, Governor Cuomo served Rule 45 subpoenas on the OAG and the New York Assembly Judiciary Committee ("AJC") seeking information related to the harassment allegations included in Trooper 1's Complaint, including as to Ms. Boylan's allegations. Glavin Decl. ¶ 6. Governor Cuomo's motions to compel productions from the AJC and OAG are still pending. *Id.* ¶ 8. During argument on those motions to compel, the OAG contended that Governor Cuomo should obtain the requested materials from individual witnesses: "If [Governor Cuomo]

---

[2]      All cites to exhibits to the Glavin Decl. are cited "Ex. __."

wants to depose the other complainants, he knows who they are. He can depose them. If he wants to request documents from them he can do so." *See* Transcript of Proceedings Held on February 7, 2023 before Judge Merkl, *Cuomo v. Office of the N.Y. State Att'y Gen.*, 22-mc-3044 (S.D.N.Y. Feb. 14, 2023), ECF 25 ("OAG Oral Arg. Tr.") at 67:13–21. During that argument, the Court acknowledged that, based on the allegations in Trooper 1's Complaint, information regarding the other complainants is relevant, and that it would be inappropriate to narrow the scope of discovery based on premature concerns about potential admissibility. *Id.*; *see also id.* at 92:2–8; 95:23–96:25. Accordingly, the Court acknowledged Governor Cuomo's need to "conduct robust discovery" based on the allegations in the Complaint and the potential relevance of the other complainants. *Id.* at 100:4–7. And the Court further suggested that Governor Cuomo could obtain the discovery through individual witnesses. *Id.* at 95:17–22.

In the wake of that oral argument, Governor Cuomo served Rule 45 subpoenas on various nonparty witnesses, including the other complainants referenced in Trooper 1's Complaint. Governor Cuomo sent two subpoenas to Ms. Boylan: one for documents returnable on April 20, 2023 (the "Document Subpoena") and one for a deposition (the "Deposition Subpoena"). Both subpoenas were returnable in the Southern District of New York, where Ms. Boylan resides. Ex. 2; Ex. 3. Ms. Boylan's counsel agreed to accept service of both subpoenas. The Document Subpoena is at issue in this motion.[3]

The Document Subpoena seeks the following categories of materials related to Ms. Boylan's accusations against Governor Cuomo:

---

[3]     Counsel for Ms. Boylan suggested that she planned to refuse to comply with the Deposition Subpoena, but counsel agreed to defer discussions around Ms. Boylan's deposition until after the disputes around the Document Subpoena were resolved. We anticipate that the Court's ruling on this motion will resolve any deposition issues that may arise.

- Ms. Boylan's communications with and about Governor Cuomo, communications about her and others' allegations of sexual harassment and misconduct against Governor Cuomo, and communications concerning the OAG and AJC investigations (Requests No. 1–7, 11, 16).

- Information concerning Ms. Boylan's credibility with respect to her allegations against Governor Cuomo, including (i) whether Ms. Boylan left state employment because of sexual harassment, as she claimed in a series of tweets in December 2020 and in a blog piece she published in February 2021, or whether she left state employment for other reasons, and (ii) whether Ms. Boylan's sexual harassment allegations were an effort to energize her campaign for Manhattan Borough President and/or as retaliation against Governor Cuomo for, among other things, not allowing her to rescind her resignation in September 2018 and not supporting her earlier congressional campaign. Among other things, these materials include:

  o Information concerning Ms. Boylan's campaign for Manhattan Borough President and the use of her sexual harassment allegations against Governor Cuomo in connection with her campaign. (Requests No. 9, 15);

  o Information concerning whether Ms. Boylan believed that Governor Cuomo's COVID-19 safety executive order negatively affected her congressional campaign or that Governor Cuomo otherwise failed to support her congressional campaign. (Request No. 10);

  o Information concerning Ms. Boylan's employment at Empire State Development ("ESD") and, in particular, the circumstances that led to her departure from ESD, including whether other ESD employees complained about Ms. Boylan's workplace conduct and whether other ESD employees complained about Ms. Boylan's relationship with ESD's CEO and President; why Ms. Boylan's relationship with others at ESD and in the Executive Chamber soured; and the actual events that led to Ms. Boylan's resignation from ESD in September 2018. (Requests No. 8, 12–14);

- Ms. Boylan's communications with other women about their sexual harassment allegations against Governor Cuomo. (Request No. 5.)

In an initial meet and confer about the Document Subpoena, Ms. Boylan's counsel indicated that Ms. Boylan viewed the Requests as purely retaliatory, that counsel's "marching orders" were not to produce anything, and that Ms. Boylan objected to the Document Subpoena in full. Glavin Decl. ¶ 12. On April 25, 2023, Ms. Boylan served responses and objections to the Document Subpoena (the "Responses and Objections"), in which she asserted blanket objections to each of the categories of documents in the Document Subpoena and confirmed her position that

she would produce nothing. *See id.* ¶ 14; Ex. 4. Broadly, Ms. Boylan asserted boilerplate objections as to relevance, breadth, burden, and vagueness, and ultimately took the position that the Requests "intended to harass, intimidate, and retaliate against Ms. Boylan." *See* Ex. 4. Ms. Boylan also made several general objections suggesting that the Document Subpoena was premature in light of the pending motions to dismiss and the pending motions to compel the OAG and AJC.  *See id.*

Over the next month, counsel for Ms. Boylan and Governor Cuomo met and conferred several times to determine if the issues in dispute could be narrowed, including on May 2, 2023, May 4, 2023, and May 15, 2023. Glavin Decl. ¶ 15. During those conversations, Ms. Boylan's counsel also represented that they had not begun gathering documents from their client and so could not comment on how burdensome compliance would be. *Id.* On May 16, 2023, Ms. Boylan's counsel confirmed that she would agree only to produce documents in response to Requests No. 1–4, 11, and 16—except to the extent such Requests overlap with any excluded Requests—but only if Governor Cuomo agreed to drop all other Requests. *Id.* ¶ 16; Ex. 5. In the absence of an agreement, Ms. Boylan offered to produce documents that were previously provided to the OAG or the AJC. *Id.* On Thursday, May 18, 2023, Governor Cuomo's counsel confirmed that the parties remained at an impasse and that they would raise the disputed issues with the Court. Glavin Decl. ¶ 17; Ex. 5.

On June 2, 2023, Ms. Boylan finally produced approximately 25 pages consisting of a handful of messages and photographs, which apparently is what she had previously produced to the OAG and AJC in 2021. Ms. Boylan produced no communications with other women who complained about Governor Cuomo, no drafts of her *Medium* piece, no communications asking other women to come forward, no documents concerning her resignation from ESD, no documents

concerning her relationship with Mr. Zemsky, and no documents concerning her use of the harassment allegations in connection with her campaign.

## BACKGROUND TO MS. BOYLAN'S ALLEGATIONS

Ms. Boylan joined state employment in 2015 as a Vice President of ESD and was later elevated to Chief of Staff. Glavin Decl. ¶ 22. She then served as Deputy Secretary for Economic Development and Special Advisor to Governor Cuomo, liaising between ESD and the Executive Chamber. *Id.* Ms. Boylan resigned from state employment on or about September 26, 2018, and Ms. Boylan's subsequent efforts to rescind her resignation just days later were unsuccessful.

About a year later, August 2019, Ms. Boylan announced her campaign for Congress, seeking to unseat Congressman Jerry Nadler, then-Chairman of the House Judiciary Committee, in the Democratic primary. *Id.* ¶ 28. That campaign was ultimately disrupted by the COVID-19 pandemic. On March 14, 2020, just one week after he declared a state of emergency, Governor Cuomo issued an Executive Order shortening the petition period for all primary election candidates. *Id.* ¶ 29. The Executive Order applied to all primary candidates statewide, but Ms. Boylan viewed it as a personal and political attack in her primary campaign for Congress. In a series of text messages she sent to Governor Cuomo's aides, Ms. Boylan threatened to retaliate: "I see what the point is here and I will find ways to respond," "The future is coming after assholes," and "Life is long," "And so is my memory," "And so are my resources." *Id.* ¶ 30. Ms. Boylan lost in the primary. *Id.* ¶ 31.

Just months later, Ms. Boylan made good on her threat to respond to Governor Cuomo. After entering the race for Manhattan Borough President in November 2020, Ms. Boylan began making negative comments about her tenure in the Cuomo administration, including: "Most toxic team environment? Working for @NYGovCuomo"; "I had to quit three times before it stuck . . ."; "And I'm a privileged person. I could opt out and eventually did."; and "Yes I did not sign

7

whatever they told me to sign when I left. Nope!" These tweets culminated in an allegation on December 13, 2020 that Governor Cuomo "sexually harassed her for years." *Id.* ¶ 32.

On February 24, 2021, Ms. Boylan self-published an essay on *Medium* detailing further her allegations of sexual harassment against Governor Cuomo. *Id.* ¶ 35. Specifically, Ms. Boylan alleged that Governor Cuomo suggested playing "strip poker" on a plane, gave her a private tour in the Capitol, made comments about her appearance, and at one point kissed her on the lips. *Id.* She also reiterated the claim that she resigned from her state post in September 2018 after she "started speaking up for" herself and the environment "grew hostile." *Id.* Governor Cuomo denies Ms. Boylan's allegations.

As her political campaign progressed, Ms. Boylan's rhetoric grew more extreme, and her allegations against Governor Cuomo became central to her campaign. For example:

- Ms. Boylan's campaign paid Cade Leebron, a writer whose work has focused on rape culture, assault, and trauma, $10,500 in the weeks leading up to the publication of Ms. Boylan's *Medium* essay, and nearly $32,000 in total; *Id.* ¶ 36.

- On March 18, 2021, *The New Yorker* published an interview of Ms. Boylan by Ronan Farrow, which discussed Ms. Boylan's allegations against Governor Cuomo and noted that Ms. Boylan was "embracing her new role as one of Cuomo's most public and persistent critics"; *Id.* ¶ 40(a).

- On March 26, 2021, Ms. Boylan posted a speech to her campaign's Facebook page: "I'm Lindsey Boylan. I'm a candidate for Manhattan Borough President, but you likely know my name from the headlines. Please know, like all survivors, I am so much more than the person that you read about in the news. It was an incredibly difficult decision to tell my story of harassment that I experienced while working for Governor Cuomo of New York."; *Id.* ¶ 40(b).

- On May 10, 2021, Ms. Boylan referred to her sexual harassment allegations in a campaign speech: "I'm Lindsey Boylan. I'm running for Manhattan Borough President. . . . [Y]ou may have heard of me recently. I'm fighting my own battle against abuse of the system, abuse of power. Governor Cuomo of New York is an abuser. . . ." *Id.* ¶ 40(c).

Ms. Boylan's heavy reliance on the sexual harassment allegations was likely controversial even within her own campaign. Lupe Todd-Medina, who had been serving as Ms. Boylan's

communications consultant, quit the campaign several days after Ms. Boylan's December 2020 tweets about Governor Cuomo. *Id.* ¶ 33. A source explained that Ms. Boylan's allegations were the "straw that broke the camel's back" and "[t]he Cuomo incident was the final straw," causing Ms. Todd-Medina to resign. *Id.* Although Ms. Todd-Medina has since denied that Ms. Boylan's allegations caused her to resign, Governor Cuomo is entitled to know whether Ms. Todd-Medina told Ms. Boylan that she believed Ms. Boylan's allegations were politically motivated, what the discussion was with Ms. Boylan about her resignation, and Ms. Boylan's response to Ms. Todd-Medina's resignation from the campaign. *Id.* ¶ 34.

### *Ms. Boylan's Resignation*

Throughout her campaign, Ms. Boylan repeatedly characterized her departure from state government in September 2018 as an act of defiance in the face of an allegedly hostile work environment. But in truth and in fact, Ms. Boylan's tenure at ESD was fraught and she resigned after numerous coworkers had complained about her conduct, including that she was "abusive," a "bully," and did not follow agency procedures. *Id.* ¶ 25.

Specifically, in or about January 2018, a coworker expressed concerns about Ms. Boylan's relationship with her direct supervisor, Howard Zemsky, the President and CEO of ESD. *Id.* ¶ 24. As a result of this complaint, then-counsel to Governor Cuomo, Alphonso David, met with Ms. Boylan and Mr. Zemsky separately to ask about the situation. *Id.* Ms. Boylan told Mr. David during their meeting "that she had not been subject to sex discrimination, harassment or retaliation." OAG Report at 73. In July 2021, however Mr. Zemsky made certain admissions to OAG investigators about his relationship with Ms. Boylan. Glavin Decl. ¶ 27.

Additional concerns about Ms. Boylan surfaced. Among other things, coworkers complained that Ms. Boylan was a "bully," "yell[ed]," treated employees "like children," and displayed a lack of professionalism. *Id.* ¶ 25. On or about September 20, 2018, senior management

at ESD, including then-ESD counsel Elizabeth Fine, requested that Ms. Boylan's employment be terminated. *Id*. A memorandum summarized the problem: "On an agency-wide basis, L. Boylan is reported to be hostile and a bully." *Id*.

On September 26, 2018, Mr. David met with Ms. Boylan to give her an opportunity to respond to the serious complaints. *Id.* ¶ 26. After she "acknowledged to a large degree many of the allegations," Ms. Boylan informed Mr. David that she was resigning and left the meeting. Several hours later, Ms. Boylan sent an email to Executive Chamber staff announcing her resignation effective immediately. *Id.* Four days later, Ms. Boylan reached out to ask for her job back, but Mr. David explained that it would be complicated because there were "complainants with active complaints." *Id.* Ms. Boylan also sought to contact Governor Cuomo about getting her job back, but he did not return her call. *Id.* The Chamber ultimately concluded that, in light of the many pending complaints, it would be inappropriate to allow Ms. Boylan to rescind her resignation. *Id.* ¶ 22.

### *Ms. Boylan's Conduct in Connection with the OAG Investigation*

Ms. Boylan had a lot at stake, both personally and politically, in pushing her false narrative about her resignation and in portraying Governor Cuomo as a sexual harasser. She immediately set about trying to drum up support for her position. Ms. Boylan admitted to OAG investigators that she contacted current and former Executive Chamber employees, including those whom she did not know, who she thought Governor Cuomo "would find attractive." Glavin Decl. ¶ 5 ("Boylan Tr.") at 215. She went to so far as to conduct research on LinkedIn, Boylan Tr. at 216, to identify "very attractive" women who had "similar coloring." *Id.* at 216–17. Ms. Boylan was (and continues to be) in direct communication with several women who also made allegations against Governor Cuomo. Glavin Decl. ¶ 40.

Ms. Boylan was aggressive in seeking support in other ways. Shortly after publishing the *Medium* piece, for example, Ms. Boylan contacted a former female colleague to ask for a "favor." The former colleague had never heard Ms. Boylan complain about sexual harassment even though they were close friends and had worked together for years. And when the former colleague failed to respond to the "favor" request, Ms. Boylan complained publicly in a tweet that the former colleague was not "standing with" her and also sent the former colleague a chilling and threatening text: "I hope your lack of courage was worth it. You had a friend in me for life but now you don't, bitch. Good luck." *Id.* ¶ 39.

Similarly, the same day that Mr. Zemsky signed on to a public statement with other Executive Chamber staffers in February 2021 disputing Ms. Boylan's allegation that Governor Cuomo had suggested playing strip poker on a plane, Ms. Boylan sent Mr. Zemsky a threatening message via the secure, self-deleting application "Confide" and told him she would "destroy [his] life." *Id.* ¶ 38. After receiving this message, Mr. Zemsky reversed course and corroborated Ms. Boylan's story. *Id.*

## **ARGUMENT**

## I.     THE INFORMATION SOUGHT IS UNQUESTIONABLY RELEVANT

Rule 26 provides that a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 26 is to be interpreted broadly and explicitly provides that evidence need not be admissible to be discoverable. *See Nat'l Cong. For P.R. Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (quoting *Morrissey v. City of New York*, 171 F.R.D. 85, 88 (S.D.N.Y. 1997) ("In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable].")). Discovery fairly encompasses "inquiry into facts that have been alleged" and thus have been put

11

"presumptively at issue." *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-cv-4044 (BCM), 2020 WL 91636, at *2 (S.D.N.Y. Jan. 8, 2020).

Trooper 1 expressly incorporated detailed accusations by Ms. Boylan against Governor Cuomo, Compl. ¶¶ 103–116, and Trooper 1 did so in support of the broad allegation that Governor Cuomo "harassed numerous other women in almost the same manner that he harassed Trooper 1," *id.* ¶ 75. As part of his defense, Governor Cuomo is entitled to take discovery for the purpose of establishing that Ms. Boylan's allegations are irrelevant to Trooper 1's claims because Ms. Boylan's claims are not sufficiently similar and/or are not credible. It is critical, however, that any determination of this issue be based on a full and complete record, and it thus essential that Governor Cuomo have an opportunity to discover information related to Ms. Boylan's allegations.

Contrary to Ms. Boylan's repeated contentions, the Document Subpoena is not "intended to harass, intimidate, and retaliate against" her but is instead part of routine discovery. An "abusive purpose" cannot be inferred from a subpoena calling for materials that are "relevant" and "within the broad ambit of federal discovery." *United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 92, 94 (S.D.N.Y. 1979); *accord Bulkmatic Transp. Co., Inc. v. Pappas*, No. 99Civ.12070(RMB)(JCF), 2001 WL 504839, at *3 (S.D.N.Y. May 11, 2001) ("[Plaintiff] has not abused the discovery process in moving to compel production of documents plainly relevant to its case."). Governor Cuomo did not initiate this lawsuit. Trooper 1—*not Governor Cuomo*—put Ms. Boylan's allegations directly at issue by featuring them prominently in the Complaint and identifying Ms. Boylan as a witness with relevant information. Further, Governor Cuomo served the Document Subpoena only after first attempting to obtain many of these materials from the OAG and AJC, and only after the Court suggested that Governor Cuomo could and should seek the materials

directly from individual complainants such as Ms. Boylan. OAG Oral Arg. Tr. at 67:13–21, 95:1–22, 96:2–3.

Moreover, the documents Governor Cuomo seeks are plainly relevant.

First, the Document Subpoena seeks documents and communications specifically related to allegations of misconduct against Governor Cuomo, including Ms. Boylan's own allegations. These materials include Ms. Boylan's direct communications with Governor Cuomo (Requests No. 1, 11, and 16), Ms. Boylan's communications with others (*e.g.*, the OAG, the AJC, media outlets, and other complainants) about her allegations (Requests No. 1, 2, 3, 4, 6, 7), and Ms. Boylan's communications with other complainants about their allegations against Governor Cuomo (Request No. 5). These documents are at the heart of the issues in Trooper 1's Complaint and should be produced. *See In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704, at *3, *5 (S.D.N.Y. June 11, 2019) (finding that the materials requested, including "[a]ll non-privileged [d]ocuments and external [c]ommunications concerning any allegation" that the defendant had committed malpractice or engaged in improper representation of the plaintiff, were "plainly relevant"); *see also Eckert v. United Auto. Workers*, No. 04-CV-0538S(Sr), 2006 WL 8455725, at *2 (W.D.N.Y. June 12, 2006) (requiring plaintiff to supplement response to interrogatory seeking details regarding communications "which relate to or refute, in any way, your [c]omplaint or any of the claims and allegations in the [c]omplaint" because defendants are entitled to "discover communications regarding the allegations in [p]laintiff's [c]omplaint").

Second, Governor Cuomo seeks materials relevant to Ms. Boylan's credibility and motive in making her allegations, which is permissible. "Courts in this circuit have found that 'one of the purposes of discovery is to obtain information for use on cross-examination and for the

impeachment of witnesses.'" *Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 08-CV-3235-ENV-CLP, 2009 WL 10705911, at *3 (E.D.N.Y. Aug. 3, 2009) (quoting *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 215, 218–19 (S.D.N.Y 1974)). To assess a witness who testifies to allegations of sexual harassment, discovery into past conduct that bears on the witness's "motive and/or credibility" with respect to current allegations is manifestly relevant. *See Padilla v. Sacks & Sacks, LLP,* No. 19-CV-10021 (GBD) (KHP), 2021 WL 4429785, at *3 (S.D.N.Y. Sept. 27, 2021).

In this regard, Requests No. 9 and 15 seek materials concerning Ms. Boylan's campaign for Manhattan Borough President and the use of her allegations in connection with her campaign. Governor Cuomo is entitled to explore the possibility that Ms. Boylan fabricated or embellished her allegations to sustain or boost her campaign. Courts routinely allow discovery concerning a witness's personal or financial interests in giving particular testimony because it is "important to search out" whether that testimony is "biased by personal motives and the force of any motives" as well as to "explore a witness' interest in the outcome of a case and the extent of that interest." *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 215, 218–19 (S.D.N.Y. 1974). Governor Cuomo is also entitled to explore whether Ms. Todd-Medina resigned from the campaign because she believed Ms. Boylan's allegations were politically motivated and he is also entitled to know what discussions Ms. Boylan had with Ms. Todd-Medina about the allegations against Governor Cuomo.

Similarly, Request No. 10 seeks information concerning whether Ms. Boylan believed that Governor Cuomo's COVID-19 safety executive order negatively affected her congressional campaign. Such materials are directly relevant to whether Ms. Boylan's allegations were, *as she specifically threatened*, retaliation for Governor Cuomo having taken an action that Ms. Boylan

14

believed hurt her political prospects. A witness's motive to retaliate against a party is undoubtedly relevant to any allegations of wrongdoing. *See Redd v. N.Y. State Div. of Parole*, 923 F. Supp. 2d 393, 401 (E.D.N.Y. 2013) (finding relevant and admissible evidence concerning the possibility that a defendant's prior discipline of plaintiff "may have given [plaintiff] a motive to retaliate against [defendant] by accusing her of sexual harassment").

Likewise, Request No. 8, which seeks information concerning Ms. Boylan's relationship with Mr. Zemsky, and Requests No. 12–14, which seek materials concerning Ms. Boylan's conduct at and eventual resignation from ESD, are also relevant. Ms. Boylan has claimed on numerous occasions that she resigned because of harassment. Thus, the actual circumstances of her departure from ESD are a critical issue that goes to the heart of whether she is a reliable narrator and whether her allegations are believable. If the documents reflect, as we believe they will, that Ms. Boylan actually resigned after being confronted with numerous complaints about her own behavior, that sets up a strong motive for her to create an alternative narrative to explain her sudden resignation. This is particularly true considering her political ambitions, which would have been compromised if the public narrative were the truth: that she had been viewed "on an agency-wide basis" as a horrible bully. Similarly, the fact that Governor Cuomo's counsel Mr. David, rather than ESD's counsel Ms. Fine, delivered the message to Ms. Boylan about the complaints regarding her conduct may well have led Ms. Boylan to conclude that the Chamber was behind efforts to terminate Ms. Boylan, providing Ms. Boylan with an additional motive to retaliate against Governor Cuomo. The same is true for the fact that Governor Cuomo did not return Ms. Boylan's call when she tried to rescind her resignation. Further, Ms. Boylan's relationship with Mr. Zemsky is not only tied up in the same story but is relevant to whether Ms. Boylan then improperly used that relationship to threaten Mr. Zemsky to support her allegations. In this regard, it is important

to note that the OAG also inquired into these issues. It is also important that Ms. Boylan sent Mr. Zemsky a threatening message prior to his speaking with OAG investigators. Governor Cuomo is entitled to take discovery on the same issues that the OAG saw fit to investigate.

Under these circumstances and under the liberal discovery standards, Governor Cuomo is entitled to challenge Ms. Boylan's accusations using the information sought in the Document Subpoena. The materials he seeks are clearly relevant, either because they directly concern Ms. Boylan's allegations against Governor Cuomo, or because they concern Ms. Boylan's credibility in pressing those allegations.

## II.   MS. BOYLAN'S BURDEN-RELATED OBJECTIONS ARE WITHOUT MERIT

In addition to objecting to the relevance of the materials sought in the Document Subpoena, Ms. Boylan seeks to avoid complying in full because she contends the Requests are unduly burdensome. Ms. Boylan offers several bases for her claimed "undue burden." None of them has any merit.

As an initial matter, Ms. Boylan bears the burden of showing that the Document Subpoena is unduly burdensome. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. Oct. 21, 1996). Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id*. at 49 (quoting *United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). As explained above, the materials sought are highly relevant to Trooper 1's lawsuit. And where the subpoenaed party is the only party that can provide the necessary documents, the breadth of the requests is not a basis to quash the subpoena. *See MacNamara v. City of New York*, No. 04Civ.9612(KMK) (JCF), 2006 WL 3298911, at *16 (S.D.N.Y. Nov. 13, 2006) (quoting *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005)).

16

Other than boilerplate objections, Ms. Boylan has not articulated any reason why it would be unusually burdensome for her to comply with these Requests. She has not, for example, explained the volume of documents or whether unusual steps would be required to gather and produce them. To the contrary, Ms. Boylan's counsel acknowledged that they had neither collected documents from their client nor endeavored to specifically understand the volume of responsive documents, and therefore could not explain what burden, exactly, the Document Subpoena imposed on Ms. Boylan.  Glavin Decl. ¶ 15.

Moreover, Ms. Boylan's main burden argument derives from her general position that as a nonparty, her participation on any level in Trooper 1's lawsuit is burdensome and harassing. But many (if not all) nonparties face the same sort of inconvenience and expense in being subpoenaed for information in connection with someone else's dispute. And this general burden of being required to produce information is not sufficient to relieve Ms. Boylan of the need to comply; such a burden is simply baked into the Federal Rules. Ms. Boylan's generalized burden objections are simply not sufficient to outweigh the relevance and need for the discovery sought.

Nor is there any merit to Ms. Boylan's objection that the documents sought are more readily available "through another custodian." The documents sought are her own communications and many relate to her own allegations. Ms. Boylan's "get it from someone else" objection falls particularly flat given that neither the OAG nor the AJC have produced any documents concerning Ms. Boylan or any complainant other than Trooper 1. Rather, the OAG (and the Court) suggested that Governor Cuomo seek documents from individual complainants like Ms. Boylan directly. OAG Oral Arg. Tr. at 67:13–21, 95:1–22, 96:2–3. In any event, no one else would even have many of the responsive communications because Ms. Boylan's disclosures to the OAG appear to have been limited (and the same is likely true for other witnesses in the OAG investigation), and because

Ms. Boylan has never produced any communications that post-date the August 3, 2021 OAG Report.

Ms. Boylan also complains that many Requests lack a date range. But any Requests without a specified date range are naturally limited in time since Ms. Boylan's interactions with Governor Cuomo did not begin until 2014. *See* Compl. ¶ 104. Moreover, most Requests cover materials that are, by definition, limited to a much more recent and narrow time period: for example, documents concerning the issues that arose during her employment at ESD are likely limited to 2017 and 2018. Ms. Boylan's campaign for Manhattan Borough President was also short-lived, from November 2020 to June 2021. Likewise, communications regarding her allegations of sexual harassment apparently did not begin until December 2020. Further, for those Requests without an inherent date range, Governor Cuomo provided one, as in Requests No. 8–10.

In any event, the absence of a date ranges is no basis to deny a motion to compel. In *Stinson v. City of New York*, No. 10 Civ. 4228 (RWS), 2015 WL 4610422 (S.D.N.Y. July 23, 2015), where all the plaintiffs' discovery requests demanded documents spanning over more than ten years and dozens of custodians, the court did not deny plaintiffs' motion to compel but instead directed the parties to meet and confer to develop a search protocol for each custodian or set of custodians. *Id.* at *5. Here, where Ms. Boylan is the only custodian and where the date ranges are more circumscribed as described above, Governor Cuomo is still amenable to a proposal from Ms. Boylan about appropriate limitations on date ranges. But Ms. Boylan has to this point refused to produce any materials in response to most of the Requests at issue. Under these circumstances, it is clear that—whether under the reasonable specifications in the Document Subpoena or under more limited date ranges—Ms. Boylan will have to produce documents in response to each

Request. Ms. Boylan cannot refuse to produce anything on the basis that the Requests are unduly burdensome.

## III.    CONFIDENTIALITY CONCERNS ARE NOT A PROPER BASIS TO WITHHOLD THE REQUESTED MATERIALS

Ms. Boylan also broadly objects to producing documents based on the notion that the Requests "call[] for the production of Privileged Information, Confidential Information, or information otherwise protected from disclosure under New York and/or federal law." But courts routinely reject privilege and confidentiality arguments when they are unsupported. For example, in *Powell v. Allied Universal Sec. Servs.*, No. 17-CV-6133-ARR-SJB, 2018 WL 4378168 (E.D.N.Y. Aug. 9, 2018), the court denied the motion to quash a subpoena on such grounds because the movants offered "no explanation for their conclusory assertions of privilege and confidentiality." *Id.* at *1. Even where the subject of a subpoena provides a privilege log—which Ms. Boylan has not done here—courts compel the production of documents where the subject "provide[s] no explanation as to what privilege applies to each document and why the documents fall under the claimed privilege." *Impact Env't Consulting v. Chillak*, No. CV 15-6694 (AKT), 2016 WL 11185296, at *3 (E.D.N.Y. Sept. 8, 2016). Because Ms. Boylan offers no reason that any responsive documents are privileged or confidential, she should be compelled to produce them.

Moreover, there is a protective order in place specifically designed to protect information that producing parties consider to be (and can be designated as) "confidential." *See* Trooper 1 Action, ECF 68 at 1. That protective order was recently amended to provide additional assurance to nonparties that they could designate materials as confidential subject to the terms of the confidentiality order. *Id*. Where a protective order encompasses private material, confidentiality is no basis to refuse to respond to discovery requests. *See Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17 Civ. 7417 (VM) (SLC), 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16,

2020) (compelling defendant to produce unredacted documents because it identified "no persuasive grounds to depart from the general rule prohibiting relevance redactions" and because any "confidential or highly sensitive documents" could be "designated as confidential"), *objections overruled*, No. 17 Civ. 7417 (VM), 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021). The protective order can undoubtedly provide the necessary protection to any private or confidential information produced by Ms. Boylan.

## **CONCLUSION**

For the foregoing reasons, Governor Cuomo respectfully requests that the Court compel Ms. Boylan to produce the materials sought in the Document Subpoena.

Dated: New York, New York
      June 5, 2023

Respectfully submitted,

   */s/ Rita M. Glavin*

Rita M. Glavin
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

Theresa Trzaskoma
Allegra Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com
*Counsel for former Governor*
*Andrew M. Cuomo*