UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOVERNOR ANDREW M. CUOMO,<br><br>                Movant,<br><br>v.<br><br>LINDSEY BOYLAN,<br><br>                Respondent. | Case No. 23-mc-185 |
| TROOPER 1,<br><br>                Plaintiff,<br><br>v.<br><br>NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA, and RICHARD AZZOPARDI,<br><br>                Defendants. | Related To: Civil Action No. 22-cv-00893 (LDH) (TAM), United States District Court for the Eastern District of New York |

**DECLARATION OF RITA M. GLAVIN IN SUPPORT OF
FORMER GOVERNOR ANDREW M. CUOMO'S MOTION TO COMPEL
LINDSAY BOYLAN'S COMPLIANCE WITH SUBPOENA**

I, RITA M. GLAVIN, an attorney admitted to practice before this Court, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a principal of the law firm Glavin PLLC, counsel to former Governor of the State of New York Andrew M. Cuomo ("Governor Cuomo") in *Trooper 1 v. New York State Police, et al.*, No. 22-cv-00893 (LDH) (TAM), a case currently pending in the Eastern District of New York (the "Trooper 1 Action").

2. I submit this declaration in support of Governor Cuomo's Motion to Compel Lindsay Boylan's Compliance with Subpoena. I have knowledge of the issues described herein.

3. Attached hereto as **Exhibit 1** is a true and correct copy of Trooper 1's Rule 26(a) Initial Disclosures, dated June 13, 2022.

4. Available at the following link is the Attorney General's August 3, 2021 Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo: https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf.

5. Available at the following link is the redacted transcript of Ms. Boylan's sworn testimony before the OAG, publicly released by the OAG on November 10, 2021 ("Boylan Tr."): https://ag.ny.gov/sites/default/files/2023-01/2021.05.20_lindsey_boylan_cleary_11.09.2021.pdf.

6. On or about July 11, 2022, Governor Cuomo served Rule 45 subpoenas on the OAG and the AJC seeking information related to the harassment allegations included in Trooper 1's Complaint, including as to Ms. Boylan's allegations.

7. On or about February 7, 2023, after Governor Cuomo moved to compel the OAG and AJC's compliance with the Rule 45 subpoenas, the Court held oral argument on the matter.

8. Governor Cuomo's motions to compel productions from the AJC and OAG are still pending.

9. Attached hereto as **Exhibit 2** is a true and correct copy of the Subpoena to Produce Documents served by Governor Cuomo on Ms. Boylan in connection with the Trooper 1 Action, dated March 30, 2023 (the "Document Subpoena"), which was served on Ms. Boylan on April 4, 2023.

10. Attached hereto as **Exhibit 3** is a true and correct copy of the Subpoena to Testify at a Deposition served by Governor Cuomo on Ms. Boylan in connection with the Trooper 1 Action, dated March 30, 2023 (the "Deposition Subpoena"), which was served on Ms. Boylan on April 4, 2023.

11. Ms. Boylan's counsel agreed to accept service of both subpoenas.

12. Counsel for Ms. Boylan and for Governor Cuomo first met and conferred on April 19, 2023, at which point Ms. Boylan's counsel indicated that Ms. Boylan viewed the Subpoenas as purely retaliatory, that counsel's "marching orders" were not to produce anything, and that Ms. Boylan objected to the Document Subpoena in full.

13. Counsel for Ms. Boylan further indicated that they would provide specific responses and objections to the Document Subpoena.

14. On April 25, 2023, counsel for Ms. Boylan served upon counsel for Governor Cuomo her Responses and Objections to the Document Subpoena, a true and correct copy of which is attached hereto as **Exhibit 4** ("Responses and Objections").

15. In an effort to resolve the disputes surrounding the Document Subpoena, counsel for Ms. Boylan and for Governor Cuomo further met and conferred on May 2, 2023, May 4, 2023, and May 15, 2023. During those conversations, Ms. Boylan's counsel also represented that they had not begun gathering documents from their client and so could not comment on how burdensome compliance would be.

16. On May 16, 2023, Ms. Boylan's counsel confirmed via email that Ms. Boylan's final position was that she would agree only to produce documents in response to Requests No. 1–4, 11, and 16—except to the extent such Requests overlapped with any Requests for which she refused to produce documents—but only if Governor Cuomo agreed to drop all other Requests. In the absence of an agreement as to her final position, Ms. Boylan offered to produce documents that were previously provided to the OAG or AJC.

17. On May 18, 2023, counsel for Governor Cuomo informed counsel for Ms. Boylan that despite good-faith efforts, the parties were at an impasse.

18. On June 2, 2023, Ms. Boylan produced approximately 25 pages of selected messages, photographs, and communications, which counsel represented to be documents that were previously produced to the OAG and AJC during their investigations.

19. Ms. Boylan did not produce any correspondence with the OAG or AJC regarding the subpoena she received or regarding any agreement to limit the scope of her productions.

20. Ms. Boylan's June 2, 2023 production does not contain materials responsive to a number of the Requests in the Document Subpoena, including communications with other complainants or potential complainants, communications or drafts regarding her *Medium* piece, documents regarding her employment with and resignation from state employment, or documents relating to her use of the harassment allegations in connection with her campaign.

21. As a result, notwithstanding counsel's good faith efforts and Ms. Boylan's June 2, 2023 production, the parties remained at an impasse. This motion to compel followed.

22. Ms. Boylan joined Empire State Development ("ESD") in 2015. Much of her employment history with ESD has been detailed by counsel for the New York State Executive Chamber in a July 18, 2021 letter, which is available at the following link: https://www.governor.ny.gov/sites/default/files/2021-08/07.18.21_Letter_to_NY_AG.pdf.

23. Then-counsel to Governor Cuomo, Alphonso David, also testified about Ms. Boylan's employment with ESD and her relationship with her supervisor, Howard Zemsky, to the OAG's investigators. His redacted video testimony is available at the following link: https://ag.ny.gov/CuomoIndependentInvestigation/alphonso-david-video-testimony.

24. I have reviewed the video testimony of Alphonso David, former counsel to Governor Cuomo, and based upon that testimony and my knowledge of the OAG's investigation, it is my understanding that in January 2018, after a coworker expressed concerns about Ms.

Boylan's relationship with her direct supervisor, Howard Zemsky, Mr. David met with Ms. Boylan and Mr. Zemsky separately to ask about the situation.

25. On or about September 20, 2018, senior management at ESD, including then-ESD counsel Elizabeth Fine, requested that Ms. Boylan's employment with ESD be terminated. I have reviewed a September 20, 2018 memo summarizing this request, which states that coworkers complained that Ms. Boylan was a "bully," "yell[ed]," treated employees "like children," and displayed a lack of professionalism, and that "On an agency-wide basis, L. Boylan is reported to be hostile and a bully."

26. Based upon Mr. David's video testimony and my knowledge of the OAG's investigation, it is my understanding that after receiving Ms. Fine's memorandum, on September 26, 2018, Mr. David met with Ms. Boylan to give her an opportunity to respond to the serious complaints, and that after she "acknowledged to a large degree many of the allegations," Ms. Boylan informed Mr. David that she was resigning and left the meeting. Four days later, Ms. Boylan reached out to ask for her job back, but Mr. David explained that it would be complicated because there were "complainants with active complaints." Based upon my review of testimony from the OAG's investigation, I also understand that Ms. Boylan also sought to contact Governor Cuomo about getting her job back, but he did not return her call.

27. I have reviewed an interview memo memorializing Mr. Zemsky's July 8, 2021 statements to OAG's investigators, which states that during his interview, Mr. Zemsky made certain admissions to OAG investigators about his relationship with Ms. Boylan.

28. Following her resignation from state employment, Ms. Boylan announced her campaign for Congress in August 2019, seeking to defeat incumbent Congressman Jerry Nadler, then-Chairman of the House Judiciary Committee, in the primary elections.

29. At the beginning of the COVID-19 pandemic, on March 14, 2020, Governor Cuomo issued an Executive Order shortening the petition period for primary election candidates. Available at the following link is a press release regarding that Executive Order, *Amid COVID-19 Pandemic, Governor Cuomo Signs Executive Order Temporarily Modifying Election Procedures to Reduce Spread of Coronavirus*, dated March 14, 2020: https://www.governor.ny.gov/news/amid-covid-19-pandemic-governor-cuomo-signs-executive-order-temporarily-modifying-election.

30. Shortly thereafter, Ms. Boylan sent the following text messages to aides of Governor Cuomo:

a. 


b.

31. Ms. Boylan lost the primary election against Congressman Nadler in June 2020.

32. Later that year, in November 2020, Ms. Boylan entered the race for Manhattan Borough President. After announcing her campaign, in early December 2020, Ms. Boylan made a series of negative tweets about the Cuomo Administration reproduced below, culminating in allegations of sexual harassment:

- a. "Most toxic team environment? Working for @NYGovCuomo." Lindsey Boylan (@lindseyboylan), Twitter (Dec. 5, 2020, 1:00 p.m.), https://twitter.com/LindseyBoylan/status/1335282911331950596.

- b. "I tried to quit three times before it stuck . . . That environment is beyond toxic. I'm still unwrapping it years later in therapy!" Lindsey Boylan (@lindseyboylan), Twitter (Dec. 5, 2020, 2:08 p.m.), https://twitter.com/LindseyBoylan/status/1335300029041553410.

- c. "And I'm a privileged person. I could opt out and eventually did." Lindsey Boylan (@lindseyboylan), Twitter (Dec. 5, 2020 2:09 p.m.), https://twitter.com/LindseyBoylan/status/1335300208830402561

    d. "Yes I did not sign whatever they told me to sign when I left. Nope!" Lindsey Boylan (@lindseyboylan), TWITTER (Dec. 5, 2020, 6:13 p.m.), https://twitter.com/LindseyBoylan/status/1335361707565314049.

    e. "Yes, @NYGovCuomo sexually harassed me for years. Many saw it, and watched. I could never anticipate what to expect: would I be grilled on my work (which was very good) or harassed about my looks. Or would it be both in the same conversation? This was the way for years." Lindsey Boylan (@lindseyboylan), Twitter (Dec. 13, 2020 9:16 a.m.), https://twitter.com/lindseyboylan/status/1338125549756182529?lang=en.

33. A news article detailed the circumstances that led to the resignation of Lupe Todd-Medina, who had been serving as Ms. Boylan's communications consultant. *See Ex-Gov Aide Lindsey Boylan Loses Press Staffer Over Cuomo Sex Harass Allegations*, N.Y. DAILY NEWS, dated December 19, 2020, available at the following link: https://www.nydailynews.com/news/politics/new-york-elections-government/ny-nyc-boylan-cuomo-20201219-jpxunggpvbe75anuq22utzb5am-story.html.

34. Ms. Todd-Medina's resignation was also referenced in Luis Ferré-Sadurní and Grace Ashford's article, *An Emboldened Cuomo Takes Swings at Accusers and Investigators,* N.Y. Times (Jan. 13, 2022), which can be found at the following link: https://www.nytimes.com/2022/01/13/nyregion/andrew-cuomo-rita-glavin.html.

35. On February 24, 2021, Ms. Boylan published an essay titled *My story of working with Governor Cuomo* in Medium. That essay is publicly available at https://lindseyboylan4ny.medium.com/my-story-of-working-with-governor-cuomo-e664d4814b4e.

36. Ms. Boylan's campaign hired Cade Leebron, a writer whose work has focused on rape culture, assault, and trauma. Ms. Boylan's campaign expenditures to Ms. Leebron can be found on the New York City Campaign Financial Board's website at the following link: https://www.nyccfb.info/FTMSearch/Candidates/Expenditures?ec=2021&cand=2465&ir=Leebron%2C%20Cade&trans=F (last accessed Oct. 14, 2021).

37. Ms. Boylan also reportedly made various public statements attacking Governor Cuomo, including:

    a. Ronan Farrow, *Cuomo's First Accuser Raises New Claims of Harassment and Retaliation*, The New Yorker (Mar. 18, 2021), https://www.newyorker.com/news/news-desk/cuomos-first-accuser-raises-new-claims-of-harassment-and-retaliation.

    b. Lindsey Boylan for Manhattan, Facebook (Mar. 26, 2021), https://www.facebook.com/347949635853274/videos/469259011162904.

    c. Ernest Chirico, Facebook (May 10, 2021), https://www.facebook.com/1326935285/videos/10220051921631466.

38. I have reviewed the interview memo memorializing Mr. Zemsky's July 8, 2021 statements to the OAG's investigators. During that interview, Mr. Zemsky informed the OAG that the day he signed on to a public statement with other Executive Chamber staffers in February 2021 disputing Ms. Boylan's allegation that Governor Cuomo had suggested playing strip poker on a plane, Ms. Boylan sent Mr. Zemsky a threatening message via the secure, self-deleting application "Confide" and told him she would "destroy [his] life." After receiving this message, Mr. Zemsky corroborated Ms. Boylan's story regarding a strip poker comment.

39.     I have reviewed the interview memo memorializing statements made by one of Ms. Boylan's former colleagues to the OAG's investigators on May 14, 2021. This former colleague worked with Ms. Boylan in New York State government. During that interview, the former colleague told investigators that after Ms. Boylan published the *Medium* piece, Ms. Boylan texted the colleague asking for a "favor." The former colleague had never heard Ms. Boylan complain about sexual harassment previously even though they were close friends and had worked together for years. When the former colleague failed to respond to Ms. Boylan's request, Ms. Boylan sent a threatening text: "I hope your lack of courage was worth it. You had a friend in me for life but now you don't, bitch. Good luck." The former colleague also told OAG investigators that Ms. Boylan complained publicly, posting on Twitter that she felt hurt by her former friends and colleagues not "standing with her."

40.     It is my understanding that, based on my review of materials received in discovery in the Trooper 1 Action, Ms. Boylan was and continues to be in direct communication with several women who also made allegations against Governor Cuomo.

Dated: New York, New York                               */s/ Rita M. Glavin*
        June 5, 2023                                              Rita M. Glavin