UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREW M. CUOMO,

                    Movant,

         v.

LINDSEY BOYLAN,

                    Respondent.

Case No. 23-mc-01587 (LDH)

Oral Argument Requested

**MEMORANDUM OF LAW IN OPPOSITION TO ANDREW M. CUOMO'S
MOTION TO COMPEL AND IN SUPPORT OF
RESPONDENT LINDSEY BOYLAN'S CROSS MOTION TO QUASH**

E. Danya Perry
Rachel Fleder
Perry Law PLLC
157 East 86th Street, 4th Floor
New York, NY 10028
Phone: 646-974-0935
Fax: 646-849-9609
Email: dperry@danyaperrylaw.com

Julie R. F. Gerchik (*pro hac vice motion
pending*)
Glaser Weil Fink Howard Jordan & Shapiro
LLP
10250 Constellation Blvd.
Suite 1900
Los Angeles, CA 90067
310-553-3000
Fax: 310-556-2920
Email: jgerchik@glaserweil.com

*Attorneys for Respondent Lindsey Boylan*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

I.   MR. CUOMO'S CAMPAIGN TO "RECREATE" THE OAG AND AJC INVESTIGATIONS ............... 5

II.   MR. CUOMO'S IMPROPER SUBPOENA TO LINDSEY BOYLAN ................................................. 6

III.   PROCEDURAL BACKGROUND ................................................................................................. 7

LEGAL STANDARD ............................................................................................................... 9

ARGUMENT ......................................................................................................................... 10

I.   MR. CUOMO'S DOCUMENT SUBPOENA SEEKS EXCLUSIVELY IRRELEVANT MATERIAL ........ 10

   A.   Mr. Cuomo is Precluded from Seeking Discovery of Irrelevant Information. ................. 11
   B.   Mr. Cuomo Is Not Entitled to Discovery Where He Has Not Asserted Defenses. .......... 12
   C.   Mr. Cuomo Cannot Seek Discovery to Contest Facts that Have No Bearing on the
   Issues in this Case. ....................................................................................................... 15

II.   MR. CUOMO'S DOCUMENT SUBPOENA IS SERVED FOR IMPROPER PURPOSES. ..................... 18

   A.   Mr. Cuomo's Cannot Seek Discovery to Contest Facts that Have No Bearing on the
   Issues in this Case. ....................................................................................................... 18
   B.   Mr. Cuomo Cannot Seek Discover to Smear Non-Party Ms. Boylan. ........................... 19

III.   MR. CUOMO'S DOCUMENT SUBPOENA IS NOT PROPORTIONAL AND WOULD IMPOSE AN
UNDUE BURDEN. ................................................................................................................... 23

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*In re Alper Holdings, Inc.*,
  398 B.R. 736 (S.D.N.Y. 2008)........................................................................12

*Alvarado v. GC Dealer Servs. Inc.*,
  2018 WL 6322188 (E.D.N.Y. Dec. 3, 2018) ...............................................23

*Anwar v. Fairfield Greenwich Ltd.*,
  297 F.R.D. 223 (S.D.N.Y. 2013) .................................................................23

*Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*,
  2009 WL 10705911 (E.D.N.Y. Aug. 3, 2009)........................................21, 22

*Bhatt v. Lalit Patel Physician P.C.*,
  2020 WL 13048694 (E.D.N.Y. Oct. 19, 2020)..............................................10

*Boyce v. Weber*,
  2021 WL 2821154 (S.D.N.Y. July 7, 2021) ..................................................14

*Breaking Media, Inc. v. Jowers*,
  2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021)..................................................10

*Burhans v. Lopez*,
  24 F. Supp. 3d 375 (S.D.N.Y. 2014).............................................................17

*Cuomo v. The N.Y. State Assembly Judiciary Comm.*,
  No. 22-mc-3027 (LDH)(TAM)(E.D.N.Y.) .......................................................6

*Cuomo v. Office of the N.Y. State Att'y Gen.*,
  No. 22-mc-3044 (LDH)(TAM) (E.D.N.Y. Feb. 14, 2023) ECF 25................5, 6, 19

*Delta Air Lines, Inc. v. Lightstone Grp., LLC*,
  2021 WL 2117247 (S.D.N.Y. May 24, 2021) ..................................................9

*Fenner v. News Corp.*,
  2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) .................................................17

*Flynn v. New York State Div. of Parole*,
  620 F. Supp. 2d 463 (S.D.N.Y. 2009) (§ 1983)..............................................17

*Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist.*
163, 315 F.3d 817 (7th Cir. 2003) (Rovner concurring)........................................................15

*Guillebeaux v. Jewish Child Care Ass'n*,
2005 WL 1265906 (S.D.N.Y. May 25, 2005) ........................................................15

*Harge v. City of New York*,
2021 WL 3855305 (S.D.N.Y. Aug. 26, 2021)........................................................17

*Harge v. City of New York*,
2022 WL 17481819 (2d Cir. Dec. 7, 2022) ........................................................17

*In The Matter of the Application of Governor Andrew M. Cuomo vs. Letitia James*,
Index No. 156771/2022 (Sup. Ct. N.Y. Cnty.). ........................................................5

*Leibovitz v. New York City Transit Auth.*,
252 F.3d 179 (2d Cir. 2001)........................................................17

*Lifeguard Licensing Corp. v. Kozak*,
2016 WL 3144049 (S.D.N.Y. May 23, 2016) ........................................................12

*Macklin v. Mendenhall*,
257 F.R.D. 596 (E.D. Cal. 2009) ........................................................21

*Manzo v. Sovereign Motor Cars, Ltd.*,
2009 WL 3151094 (E.D.N.Y. Sept. 29, 2009) ........................................................15

*McAnneny v. Smith & Nephew, Inc.*,
2018 WL 1383400 (D. Conn. Mar. 19, 2018) ........................................................24

*McGowan v. JPMorgan Chase Bank, N.A.*,
2020 WL 1974109 (S.D.N.Y. Apr. 24, 2020)........................................................16

*Offor v. Mercy Med. Ctr.*,
2020 WL 8839769 (E.D.N.Y. June 11, 2020) ........................................................9

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)........................................................18, 19

*Padilla v. Sacks & Sacks, LLP*,
2021 WL 4429785 (S.D.N.Y. Sept. 27, 2021)........................................................22

*Park W. Radiology v. CareCore Nat. LLC*,
547 F. Supp. 2d 320 (S.D.N.Y. 2008)........................................................20

*Nat'l Cong. For P.R. Rights ex rel. Perez v. City of New York*,
194 F.R.D. 88 (S.D.N.Y. 2000) ........................................................9

iii

*Redd v. New York State Div. of Parole*,
　　923 F. Supp. 2d 393 (E.D.N.Y. 2013) ....................................................17, 21, 22

*Refco Grp. Ltd., LLC, v. Cantor Fitzgerald, L.P.*,
　　2014 WL 5420225 (S.D.N.Y. Sept. 22, 2017).......................................................11

*Shih v. Petal Card, Inc.*,
　　2021 WL 5279395 (S.D.N.Y. Nov. 12, 2021)...................................................20, 21

*Sibley v. Choice Hotels Int'l*,
　　2015 WL 9413101 (E.D.N.Y. Dec. 22, 2015) .........................................................9

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
　　2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017)............................................24

*Tottenham v. Trans World Gaming Corp.*,
　　2002 WL 1967023 (S.D.N.Y. June 21, 2002) .......................................................14

*Trooper 1 v. N.Y. State Police*,
　　No. 1:22-cv-00893-LDH-TAM (E.D.N.Y.)............................................................1

*Tucker v. Interstate Home Loan Centers, Inc.*,
　　No., 2022 WL 4079580 (E.D.N.Y. Sept. 6, 2022)................................................20

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
　　2020 WL 91636 (S.D.N.Y. Jan. 8, 2020) ..............................................................16

*United States v. Int'l Bus. Machines Corp.*,
　　66 F.R.D. 215(S.D.N.Y. 1974) ..............................................................................22

*United States v. UBS Sec. LLC*,
　　2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020).......................................................12

*Vaigasi v. Solow Mgmt. Corp.*,
　　2016 WL 616386 (S.D.N.Y. Feb. 16, 2016)............................................................9

*Warnke v. CVS Corp.*,
　　265 F.R.D. 64 (E.D.N.Y. 2010) .............................................................................11

*Wilcox v. Cornell Univ.*,
　　986 F. Supp. 2d 281 (S.D.N.Y. 2013)......................................................15, 17, 18

*Zakrzewska v. New Sch.*,
　　2008 WL 126594 (S.D.N.Y. Jan. 7, 2008) ............................................................21

**Rules & Statutes**

Fed. R. Civ. P. 11(b) ...................................................................................................12

Fed. R. Civ. P. 26 ......................................................................................... *passim*

Fed. R. Civ. P. 45 ......................................................................................... *passim*

Fed. R. Civ. P. 412(a) ..........................................................................................21

Fed. R. Evid. 404(b) ......................................................................................13, 14

Fed. R. Evid. 608(b) ..............................................................................................20

The Plaintiff in the underlying action (the "Trooper 1 Action"),[1] anonymized as "Trooper 1," has brought suit against the Defendant/Movant, former New York Governor Andrew M. Cuomo, for sexual harassment and retaliation. In her pleadings, Trooper 1 references accusations made against Mr. Cuomo by a number of women, including Respondent Lindsey Boylan—who is not a party to this action nor to any action. Mr. Cuomo responded to Ms. Boylan's public accusations with a torrent of public vitriol, recrimination, and retaliation. He has responded to Trooper 1's complaint with more of the same: by issuing a flurry of subpoenas to and about Ms. Boylan seeking information that has no relevance to this action and no proper purpose.

Ms. Boylan submits this memorandum of law in opposition to Mr. Cuomo's motion ("Cuomo Mot."), ECF 3, to compel compliance with a document subpoena, dated March 30, 2023, (the "Document Subpoena") and in support of Ms. Boylan's cross-motion to quash the Document Subpoena pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Defendant former Governor Andrew Cuomo and his enablers have relentlessly sought to retaliate against non-party Lindsey Boylan and destroy her personal and professional life, including by unlawfully releasing her personnel records to the media and by publicly smearing Ms. Boylan through counsel. As the first woman to come forward with public accusations of sexual harassment against Mr. Cuomo, Ms. Boylan has long been squarely in Mr. Cuomo's crosshairs. Though the accusations made by Ms. Boylan were thoroughly investigated and subsequently vindicated by an independent investigation commissioned by the New York State Attorney General, the instant subpoena is yet another attempt by Mr. Cuomo to weaponize the legal system and attack Ms. Boylan and the other women he harassed.

---

[1] *Trooper 1 v. N.Y. State Police*, No. 1:22-cv-00893-LDH-TAM (E.D.N.Y.).

Federal Rule of Civil Procedure 26 limits discovery to that which "is relevant to any party's claim or defense *and* proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). The discovery requested in the Document Subpoena is neither relevant to a claim or defense in the Trooper 1 Action (as Mr. Cuomo himself has argued) nor proportional to the needs of the case—nor does it comport with the strictures in Federal Rule of Civil Procedure 45 against imposing an "undue burden" on third parties. *See* Fed. R. Civ. P. 45(d)(1). To the contrary, it is a bald-faced attempt to improperly leverage Trooper 1's case to challenge the investigations into Mr. Cuomo's misconduct and further harass Mr. Cuomo's victims—primarily Ms. Boylan, whom Mr. Cuomo has long viewed as his chief antagonist.

Mr. Cuomo's previous sexual harassment of non-party Ms. Boylan is of *no relevance* to the claims brought against him by Trooper 1 in this action. Moreover, Ms. Boylan has no direct information about this action: she was not a witness to Mr. Cuomo's harassment of Trooper 1, has never spoken with Trooper 1, knows nothing about the interactions between Mr. Cuomo and Trooper 1 beyond what has been made public already and, indeed, does not even know who Trooper 1 is.

The oddity and indeed perversity of this Motion is that Mr. Cuomo, as movant, is in full agreement with Ms. Boylan that she has no information to offer of any relevance to this action. Mr. Cuomo has argued as much to this Court. Nevertheless, Mr. Cuomo has issued subpoena after subpoena, including the Document Subpoena at issue here, requesting expansive and deeply invasive personal information about Ms. Boylan from a host of other individuals or entities—all based on Mr. Cuomo's purported need to prove nonrelevance. Meanwhile, Trooper 1—the party who referenced Ms. Boylan's public accusations into her Complaint—has not sought any discovery from Ms. Boylan and has not intervened in this discovery dispute. Indeed, Trooper 1's

counsel has advised this Court that no more information regarding Mr. Cuomo's other victims is required than that which already is publicly available. As such, there currently is no active proponent of the relevance of this information. Moreover, Mr. Cuomo's requests are at a minimum premature in light of the facts that (i) Mr. Cuomo's motions to compel the same type of discovery from the New York State Attorney General and New York State Assembly Judiciary Committee are still pending; and (ii) Mr. Cuomo has yet to answer Trooper 1's complaint and assert defenses.

Mr. Cuomo has laid bare why he seeks a mountain of information from and about Ms. Boylan—information he believes to be legally irrelevant to the Trooper 1 Action: to achieve some form of political comeback and, as his counsel admitted to the Court, to "re-create" the independent government investigations that made adverse findings against him. Since Ms. Boylan first bravely came forward with public accusations of harassment—creating a domino effect that ultimately toppled the former Governor—Mr. Cuomo has been obsessively focused on taking her down. But political gamesmanship and personal animus are patently improper purposes for seeking discovery under the rules and should not be countenanced by this Court.

This memorandum will address the context evidencing Mr. Cuomo's improper purpose in issuing the Document Subpoena; the Document Subpoena's disproportionate scope; and the undue burden compliance would impose on Ms. Boylan. However, the Court need not even reach those matters because the requested information simply is not relevant. For the reasons detailed below, the Court should deny Mr. Cuomo's Motion and grant Ms. Boylan's cross-motion to quash the Document Subpoena in its entirety.

## **BACKGROUND**

Mr. Cuomo's Document Subpoena to Ms. Boylan is nothing more than a collateral attack on the findings from two independent government investigations into Mr. Cuomo's sexual

misconduct. When allegations emerged that Mr. Cuomo had sexually harassed many women, the New York State Office of the Attorney General (the "OAG") appointed best-in-class independent attorneys from Cleary Gottlieb and Vladeck, Raskin & Clark to investigate them. In August 2021, those independent investigators finished their work, concluding in their investigative report (the "OAG Report") that Mr. Cuomo had "sexually harassed a number of current and former New York State employees," including Ms. Boylan. Ex. 1 at 1.[2] Days later, amidst a series of scandals, Mr. Cuomo resigned from office in disgrace. In his resignation speech, Mr. Cuomo denied that he sexually harassed the eleven women mentioned in the OAG report, but stated that he took "full responsibility for [his] actions" after recounting several transgressions with different women and admitted that there were "[n]o excuses" for his actions. Ex. 2. The New York State Assembly Judiciary Committee (the "AJC") also engaged Davis Polk & Wardwell to conduct a separate impeachment investigation to determine whether Mr. Cuomo should be removed from office and concluded "that there [was] overwhelming evidence that the former Governor engaged in sexual harassment." Ex. 3 at 2.

Rather than accept these findings, Mr. Cuomo has instead sought to try to undo the OAG and AJC investigations and "recreate" them himself. *See* Ex. 4 at ¶¶ 41-44. After the Attorney General declined "to make all the evidence underlying [its] Report available to Governor Mr. Cuomo for scrutiny," Mem. of Law in Support of Motion to Dismiss, Trooper 1 Action, ECF 45, at 1, Mr. Cuomo took it upon himself to procure the evidence through other channels, namely third-party subpoenas. *See* Cuomo Mot., ECF 3, at 3-4. His subpoena to Ms. Boylan is the latest phase

---

[2] Citations in the form "Ex. __" refer to exhibits to the Declaration of Julie R. F. Gerchik, dated June 28, 2023, ("Gerchik Decl."), filed contemporaneously herewith.

of his campaign to drag through the mud the witnesses against him and traumatize them anew.[3]

## I. Mr. Cuomo's Campaign to "Recreate" the OAG and AJC Investigations

Although this case is about only one of Mr. Cuomo's victims—Trooper 1—Mr. Cuomo seeks to transform it into an opportunity to use the judicial system and public resources[4] to relitigate the OAG and AJC investigations in their entirety.

Mr. Cuomo first attempted to subpoena and moved to compel the OAG's investigatory files wholesale (totaling some 73,000 documents), as well as the AJC's investigatory files (which included about 600,000 pages). The purpose of those requests, Mr. Cuomo admitted, was to "go out and re-create [both investigations]." *See* Transcript of Oral Argument ("OAG Oral Arg. Tr."), *Cuomo v. Office of the N.Y. State Att'y Gen.*, No. 22-mc-3044 (LDH)(TAM)("OAG Action") (E.D.N.Y. Feb. 14, 2023) ECF 25 at 95:1-9. That theory, however, was immediately rejected by the Court: "*That's not what you have to do.* . . . What the Attorney General's Office mandate was was [sic] to look at the whole thing . . . . But *that's not what this case is. This case is about one Plaintiff* over a span of years saying she had multiple interactions with [Mr. Cuomo]." *Id.* at 95:10-22. (emphasis added).[5] Mr. Cuomo's motions to compel compliance with his subpoenas to the OAG and AJC, and the OAG's and AJC's corresponding motions to quash those subpoenas, are

---

[3] Mr. Cuomo has reserved a special quotient of retaliation and rage for Ms. Boylan, his first public accuser. From the day Ms. Boylan disclosed her harassment, the Governor and individuals from his Executive Chamber actively engaged in a campaign to discredit her, releasing disparaging documents to the press and drafting a disparaging op-ed that was ultimately not published but was widely shared with current and former Executive Chamber employees and members of the press. Ex. 1, at 27, 104-11.

[4] Taxpayers will bear the financial cost of this discovery, since Mr. Cuomo has been granted a State-funded defense in the Trooper 1 Action, and are the ones funding Mr. Cuomo's fight for and review of these documents. *See In The Matter of the Application of Governor Andrew M. Cuomo vs. Letitia James*, Index No. 156771/2022 (Sup. Ct. N.Y. Cnty.). (NYSCEF DOC NO. 102). For her part, Ms. Boylan has to shoulder the financial burden on her own.

[5] Mr. Cuomo's Motion suggests that the Court, during oral argument on his motions to compel against the OAG and AJC, somehow "acknowledged" that the discovery Mr. Cuomo seeks here is "relevant" or otherwise appropriate. Cuomo Mot., ECF 3, at 4. In so doing, Mr. Cuomo cites primarily to comments made by his own counsel and to comments from the Court reflecting those arguments back to signal an understanding, not to endorse them. *E.g.*, OAG Oral Arg Tr., ECF 25, at 96:4-100:9. No ruling on the relevance of the discovery sought here was made, nor could it have been.

still pending in two miscellaneous matters before the Court. ECF 4 (Declaration of Rita M. Glavin dated June 5, 2023) ¶¶ 7-8; *see* OAG Action; *Cuomo v. The N.Y. State Assembly Judiciary Comm.*, No. 22-mc-3027 (LDH)(TAM)(E.D.N.Y.) ("AJC Action").

Undeterred and without awaiting the Court's decision on those motions, Mr. Cuomo instead subpoenaed many of the documents from individuals who provided files to the OAG and AJC investigators. In doing so, he seeks both documents the investigators reviewed *and* documents he apparently thinks the investigators *should have* received and reviewed. As Mr. Cuomo explains, the "purpose" of these expansive requests is to "establish[] that Ms. Boylan's allegations are *irrelevant* to Trooper 1's claims" because they are "not sufficiently similar and/or not credible." Cuomo Mot., ECF 3, at 12 (emphasis added).

The problem, however, is that no discovery is necessary to conclude that Mr. Cuomo's mistreatment of Ms. Boylan is *irrelevant* to Trooper 1's lawsuit. As explained below, the truth, credibility, and specifics of Ms. Boylan's accusations against Mr. Cuomo have no bearing on the truth, credibility, or specifics of Trooper 1's allegations, and certainly are not proportional to the needs of the Trooper 1 Action.

## II. Mr. Cuomo's Improper Subpoena to Lindsey Boylan

On April 4, 2023, Mr. Cuomo served two subpoenas on Ms. Boylan: the Document Subpoena and a subpoena for deposition (the "Deposition Subpoena"). Ex. 5-6 [Document Subpoena and Deposition Subpoena]. The Document Subpoena is at issue here.[6] The requests in the Document Subpoena ("Requests") have nothing to do with Trooper 1; they do not even mention

---

[6] As acknowledged in Mr. Cuomo's brief, counsel for Ms. Boylan and Mr. Cuomo agreed to defer discussions about the Deposition Subpoena until after the disputes regarding the Document Subpoena have been resolved. *See* Cuomo Mot., ECF 3, at 4, n.3. However, Mr. Cuomo's counsel is incorrect that "the Court's ruling on this motion will resolve any deposition issues that may arise." The issue of Ms. Boylan's deposition presents separate issues and considerations, and Ms. Boylan reserves all rights to object to, move, and/or be heard regarding the Deposition Subpoena.

Trooper 1. If Mr. Cuomo had simply limited his Requests to all documents related to the discrete incidents in which Trooper 1 alleges Mr. Cuomo behaved inappropriately toward her, Ms. Boylan's response would be easy: there would be no responsive documents because she was not present, has never interacted with Trooper 1 to her knowledge (and certainly not about any of the allegations in the Complaint), and has no direct knowledge of any of Mr. Cuomo's actions related to Trooper 1. Instead, Mr. Cuomo seeks wide-ranging, intrusive, and irrelevant discovery about Ms. Boylan herself, including:

- Documents related to Ms. Boylan's political campaigns, including concerning fundraising, Governor Mr. Cuomo's March 14, 2020 executive order, and Lupe Todd Medina's decision to stop working for Ms. Boylan's campaign for Manhattan Borough President [Requests 9-10, 15];
- Documents related to Ms. Boylan's employment and resignation from New York State employment [Requests 12-14];
- Communications with Howard Zemsky about their personal and/or purported sexual relationship or about Mr. Cuomo [Request 8];
- Documents concerning the OAG and AJC investigations [Requests 2-3];
- Communications with media outlets or journalists regarding Ms. Boylan's allegations against Mr. Cuomo [Request 4];
- Communications with Karen Hinton and current or former Executive Chamber employees, including other complainants, concerning Mr. Cuomo [Requests 5, 7];
- Documents concerning Ms. Boylan's February 2021 Medium essay, including non-privileged drafts [Request 6];
- Communications, videos, images, or photographs with/of Mr. Cuomo and documents concerning Ms. Boylan's videos, images, photographs, and personal interactions with/of Mr. Cuomo and her allegations of sexual harassment or other misconduct against Mr. Cuomo [Request 1, 11, 16].

## III.    Procedural Background

In his motion to compel, Mr. Cuomo makes Ms. Boylan's very point, arguing that "Ms. Boylan's allegations are irrelevant to Trooper 1's claims." Cuomo Mot., ECF 3, at 12. Nonetheless, Mr. Cuomo has rebuffed Ms. Boylan's attempt to compromise on a narrowed set of requests—again, none of which seek information at all related to Mr. Cuomo's interactions with Trooper 1.

Further, in an apparent end-run around the meet and confer process, beginning on May 10, 2023, Mr. Cuomo launched a barrage of additional third-party subpoenas to various individuals and entities seeking personal information about Ms. Boylan—without making any pretense of tying the requests to Trooper 1's claims. Ex. 7-13 [7 additional subpoenas]. For example, Mr. Cuomo issued a subpoena to Verizon seeking extensive data about Ms. Boylan's *personal cellphone records*. *See* Ex. 13 The Verizon subpoena requests all subscriber information, all call and text message detail information, and length of service, for the period of January 1, 2020 through the present—a more than three-year period that does not even overlap with the time frame of Mr. Cuomo's harassment of Ms. Boylan. *See id*. Mr. Cuomo makes no effort to narrow his request to communications between Ms. Boylan and Trooper 1 or any other specific individuals. Further, Mr. Cuomo also issued subpoenas requesting broad discovery into Ms. Boylan's political campaigns, workplace conduct, and personal life from at least: (1) "Lindsey for New York," Ms. Boylan's Congressional campaign entity (which has nothing to do with Trooper 1's allegations); (2) Cade Leebron, the former finance director of Ms. Boylan's Congressional campaign (who has no connection to Trooper 1's allegations); (3) the Executive Chamber, Ms. Boylan's former employer (where Trooper 1 never worked); (4) Empire State Development Corporation ("ESD"), Ms. Boylan's former employer (where Trooper 1 never worked); (5) Howard Zemsky, Ms. Boylan's former supervisor at ESD (who has no connection to Trooper 1's allegations); and (6) Elizabeth Fine, the former General Counsel of ESD (who has no relationship to Trooper 1's allegations). *See* Ex. 7-12.

Still, in an attempt to avoid motion practice over Mr. Cuomo's expansive and irrelevant Requests in the Document Subpoena, Ms. Boylan met and conferred with Mr. Cuomo's counsel. On May 16, 2023, counsel for Ms. Boylan confirmed that Ms. Boylan would produce documents

responsive to Requests 1, 2, 3, 4, 11, and 16 (except to the extent such requests overlap with other requests) if Mr. Cuomo would agree to not pursue the other requests. Gerchik Decl. ¶ 22. When Mr. Cuomo's counsel rejected this offer, Ms. Boylan nonetheless voluntarily produced the documents she previously provided to the OAG and AJC investigations. Gerchik Decl. ¶ 24. Still unsatisfied, Mr. Cuomo filed this motion to compel Ms. Boylan to respond to the Document Subpoena in full, even though it unambiguously seeks documents related only to Ms. Boylan's allegations against him—which he concedes are irrelevant to Trooper 1's entirely separate allegations and lawsuit (and which are not being litigated in any lawsuit). Having no other choice, Ms. Boylan respectfully submits this opposition and cross-motion for quashal: she asks that the Court put a stop to Mr. Cuomo's cynical attempt to convert Trooper 1's lawsuit against him into a wide-ranging and vindictive investigation of an unrelated non-party, Ms. Boylan.

## **LEGAL STANDARD**

"Motions to compel compliance with Rule 45 subpoenas are governed by the relevancy and proportionality guidelines of Rule 26." *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021).[7] On a motion to compel, the moving party bears the burden of establishing that the information sought is relevant and proportional. *See, e.g., Offor v. Mercy Med. Ctr.*, 2020 WL 8839769, at *1 (E.D.N.Y. June 11, 2020). Proportionality is determined based on "importance of the issues at stake in the action, the amount in controversy, the parties'

---

[7] Mr. Cuomo claims that "all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]." *See* Cuomo Mot., ECF 3, at 11 (alteration in original) (quoting *Nat'l Cong. For P.R. Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000)). However, that is not the correct standard. *See Sibley v. Choice Hotels Int'l*, 2015 WL 9413101, at *3 (E.D.N.Y. Dec. 22, 2015) ("Notably absent from the present Rule 26 is the all too familiar, but never correct, iteration of the permissible scope [of] discovery as including all matter that is 'reasonably calculated to lead to' the discovery of admissible evidence. . . . [T]he new Rule disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope of discovery."). Proportionality "focuses on the marginal utility of the discovery sought." *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Id.*

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). An order granting a motion to compel "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

Further, Rule 45 requires a court to "quash or modify" a subpoena that, *inter alia*, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv)."[C]ourts assess whether a subpoena presents an undue burden by weigh[ing] the burden to the subpoenaed party against the value of the information to the serving party and by evaluating that information's relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Bhatt v. Lalit Patel Physician P.C.*, 2020 WL 13048694 at *1-2 (E.D.N.Y. Oct. 19, 2020) (citations omitted). "[C]ourts also give special weight to the burden on non-parties of producing documents to parties involved in litigation." *Breaking Media, Inc. v. Jowers*, 2021 WL 1299108, at *6 (S.D.N.Y. Apr. 7, 2021) (citations omitted).

## ARGUMENT

### I. Mr. Cuomo's Document Subpoena Seeks Exclusively Irrelevant Material

The perverse stance of this Motion is that both the Movant, Mr. Cuomo, and the Respondent, non-party Ms. Boylan, *agree* that Ms. Boylan's allegations *are irrelevant* to this action. This is a fatal flaw, requiring this Court to quash the Document Subpoena in its entirety. It is Mr. Cuomo's burden to show relevance, which he has utterly failed to do. Similarly, Mr. Cuomo cannot meet that burden by seeking discovery on issues that are yet to be properly raised, which include any possible defenses (as he has yet to file an answer). Further Mr. Cuomo could never

meet his burden of demonstrating relevance: Whether Mr. Cuomo committed sexual harassment or retaliation against Ms. Boylan simply does not shed light on whether Mr. Cuomo sexually harassed or retaliated against Trooper 1. Because Mr. Cuomo has failed to demonstrate any relevance of the information requested, the Document Subpoena must be quashed.

### A. Mr. Cuomo is Precluded from Seeking Discovery of Irrelevant Information.

"The burden of demonstrating relevance is on the party seeking discovery." *Refco Grp. Ltd., LLC, v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225 at *4 (S.D.N.Y. Sept. 22, 2017) (citations omitted). Specifically, the requesting party must demonstrate that its requests are "relevant" to a "party's claim or defense." Fed. R. Civ. P. 26(b)(1). "A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotation marks and citations omitted).

In his motion to compel, Mr. Cuomo admits that "Ms. Boylan's allegations are irrelevant to Trooper 1's claims," but argues that he seeks discovery *in order to show that they are irrelevant.* Cuomo Mot., ECF 3 at 12 (emphasis added). This is a tautology, and would turn the rules of discovery on their head: a movant cannot claim information is relevant to prove that it is irrelevant.

Given that Mr. Cuomo, as the party seeking discovery, bears the burden of establishing relevance, his admission that the discovery sought is irrelevant should be the beginning and end of this analysis. This is especially true where Trooper 1, the Plaintiff, also is not pressing the relevance of the information sought on this Motion, and indeed has indicated to the Court that no more information regarding Mr. Cuomo's other victims is required than that which is already publicly available. *See* Initial Conference Transcript, Trooper 1 Action (June 6, 2022), ECF 43 at 9.

**B. Mr. Cuomo Is Not Entitled to Discovery Where He Has Not Asserted Defenses.**

Mr. Cuomo implicitly tries to establish the relevance of the discovery sought by invoking a potential defense that he touched Trooper 1 accidently or inadvertently. As an initial matter, Mr. Cuomo has not filed an answer or actually asserted any defenses to Trooper 1's claims, so the discovery he seeks is definitionally not relevant to his unraised defenses. Notwithstanding that this discovery is entirely premature, the defense he claims he may one day assert also does not justify the discovery he seeks.

*i. Mr. Cuomo's Discovery into Unasserted Defenses is Improper*

Discovery is not permitted into *potential* claims or defenses—only defenses that have already been asserted in a matter can be subject to discovery. *See, e.g.*, *In re Alper Holdings, Inc*., 398 B.R. 736, 754 (S.D.N.Y. 2008) (discovery is unwarranted where it would function as a "fishing expedition for evidence in search of a theory that has yet to be asserted"). Permitting discovery into supposedly "likely" or "anticipated" but unpled claims or defenses would be a "waste of resources," would "dilute" the obligations imposed by Fed. R. Civ. P. 11(b) to conduct a reasonable inquiry before filing a pleading, and would contravene the "plain language" of Rule 26(b)(1). *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *2-4 (S.D.N.Y. May 23, 2016); s*ee also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (discovery is limited to "the actual claims and defenses involved in the action").

The pendency of Mr. Cuomo's motion to dismiss Trooper 1's retaliation claims does not alter the analysis. *Kozak*, 2016 WL 3144049, at *2-4 (denying discovery into potential defenses where defendants' motion to dismiss was pending but defendants had not yet filed an answer); *see also United States v. UBS Sec. LLC*, 2020 WL 7062789, at *9 (E.D.N.Y. Nov. 30, 2020) (denying motion to compel documents from a non-party in part because defendants had filed a motion to dismiss but they had not yet filed an answer, and thus, the court was unable to determine how the

discovery sought was relevant to defendants' defenses). At most, Mr. Cuomo's hypothetical defenses could justify issuing his subpoena to Ms. Boylan later, after the applicable defenses are asserted. For now, they are no defense to a motion to quash.

*ii. Mr. Cuomo is not entitled to discovery based on hypothetical "accident" defense is improper.*

Attempting to bypass the obvious relevance bar to the subpoenaed information, Mr. Cuomo prematurely seeks discovery into a possible "accident" defense. Mr. Cuomo offers the Court hypotheticals and conjecture as to how all the currently irrelevant evidence *might become* relevant under Fed. R. Evid. 404(b)(2) in order to prove "lack of accident." In service of his fishing expedition, Mr. Cuomo has offered only the thinnest reed of a relevance theory, as follows: That Trooper 1 has asserted that Mr. Cuomo sexually harassed her, including by touching her inappropriately; to which Mr. Cuomo hypothetically may assert the defense that he touched her "by accident"; to which Trooper 1 hypothetically may respond by specifically trying to call Ms. Boylan as a witness to show that it could not have been by accident because he did the same thing to Ms. Boylan; at which point Ms. Boylan will assert, as she has already testified, that she herself was inappropriately touched by Mr. Cuomo; at which point Mr. Cuomo may try to impeach her testimony through the information he seeks here. *See* OAG Oral Arg. Tr., ECF 25, at 96:4-19. Accordingly, in Mr. Cuomo's Motion, he insists that he requires discovery regarding Ms. Boylan in order to show that Ms. Boylan's allegations are "not sufficiently similar [to Trooper 1's allegations] and/or not credible." Cuomo Mot., ECF 3, at 12. That argument is unavailing.

As an initial matter, and as noted, Mr. Cuomo has not even properly asserted an accident defense through an answer. Secondarily, how Trooper 1 may one day use other complainants' accusations against Cuomo is the epitome of speculation and "[d]iscovery requests cannot be based

on pure speculation or conjecture." *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002).

Further, for other acts of sexual harassment such as inappropriate touching to be probative to the issue of intent or lack of accident under Fed. R. Evid. 404(b), they must, *inter alia*, be "sufficiently similar" or present a "close parallel" to the conduct at issue. *See Boyce v. Weber*, 2021 WL 2821154, at *5 (S.D.N.Y. July 7, 2021) (citations omitted). Ms. Boylan's allegations regarding Mr. Cuomo seemingly casually touching her on the lower back, waist, and legs, such as while posing for photographs, are plainly different in nature from Trooper 1's allegations, which specifically involve Cuomo sliding his hand between Trooper 1's belly button to her right hip and running his finger from her neck to her bra strap, in a much more visibly purposeful manner. Second Am. Compl., ECF 71, ¶¶ 39, 53-54.

Finally, Mr. Cuomo's public statements, including his resignation speech, support that Mr. Cuomo didn't realize what he was doing was offensive, not that he *accidentally* touched Trooper 1:

> The trooper also said that in an elevator I touched her back and when I was walking past her in a doorway I touched her stomach. Now I don't recall doing it, but if she said I did it, I believe her. At public events, troopers will often hold doors open or guard the doorways. When I walk past them, I often will give them a grip of the arm, a pat on face, a touch on the stomach, a slap on the back. It's my way of saying, 'I see you. I appreciate you, and I thank you.' I'm not comfortable just walking past and ignoring them. Of course, usually they are male troopers. In this case, I don't remember doing it at all. I didn't do it consciously with the female trooper. I did not mean any sexual connotation. I did not mean any intimacy by it. I just wasn't thinking. It was totally thoughtless in the literal sense of the word, but it was also insensitive. It was embarrassing to her, and it was disrespectful. It was a mistake, plain and simple. . . .

Ex. 2. However, a harasser's argument that his conduct was intended to be innocuous is not sufficient to defeat liability*,* as courts have "rejected the notion that a harasser's innocent intent will defeat liability . . . ." *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist.* 163, 315

F.3d 817, 827 (7th Cir. 2003) (Rovner concurring); *Manzo v. Sovereign Motor Cars, Ltd.*, 2009 WL 3151094, at *4, n.11 (E.D.N.Y. Sept. 29, 2009) (denying summary judgment where harasser argued that he made statement "in the context of joking"); *Guillebeaux v. Jewish Child Care Ass'n*, 2005 WL 1265906, at *2, *7 (S.D.N.Y. May 25, 2005) (denying summary judgment where harasser argued that his conduct was the "nature of his upbringing"). This utter lack of clarity underscores the prematurity of Mr. Cuomo's motion in a case where his putative defenses have not yet gelled.

### C. Mr. Cuomo Cannot Seek Discovery to Contest Facts that Have No Bearing on the Issues in this Case.

Mr. Cuomo's failure to establish the relevance of any of his requests is dispositive and requires denial of his motion to compel and quashing of his requests. But it is important to note that Mr. Cuomo *could not* have established relevance of his requests on the current pleadings because there is no way to make the information relevant to the claims against him.

Trooper 1 brought six causes of action against Mr. Cuomo, alleging: discrimination in violation of the Equal Protection Clause via 42 U.S.C. § 1983 (claim 1); retaliation in violation of the Equal Protection Clause 42 U.S.C. § 1983 (claim 2); discrimination in violation of the New York State Human Rights Law ("NYSHRL") (claim 3); retaliation in violation of the NYSHRL (claim 4); discrimination in violation of the New York City Human Rights Law ("NYCHRL") (claim 5); and retaliation in violation of the NYCHRL (claim 6). *See* Second Am. Compl, ECF 71. In support of Trooper 1's claims, Trooper 1 alleges that Mr. Cuomo took many discrete acts to both discriminate and retaliate against her, which she details in her Complaint.

Although it seems there are disputed facts about those alleged acts, there is *no dispute* that Ms. Boylan has no relationship to any of them. Ms. Boylan has brought no claims against Mr. Cuomo and is not a party to the Trooper 1 Action. She neither witnessed Mr. Cuomo's

misconduct, nor does she have any information about it beyond what others have said publicly. Neither Trooper 1 nor Mr. Cuomo argue otherwise. Those facts alone should end the inquiry.

Mr. Cuomo hangs his demand for information on the fact that information about Ms. Boylan's public accusations against Mr. Cuomo's are included in the complaint. However, "[t]o be entitled to discovery, it is not enough to point to an allegation made in a complaint or to a denial of that allegation. Rather, the plaintiff must show that the allegation has relevance to a claim or defense." *McGowan v. JPMorgan Chase Bank, N.A.*, 2020 WL 1974109, at *7 (S.D.N.Y. Apr. 24, 2020) (citing Fed. R. Civ. P. 26(b)(1) to foreclose discovery when the requestor "[did] not explain why the [requested information] would be relevant to a claim or defense").[8] As such, Trooper 1's mere inclusion in her complaint of content from the OAG report about Mr. Cuomo's misconduct toward Ms. Boylan (s*ee* Second Am. Compl., ECF 71, ¶¶ 63, 103-16, 144, 147-48), does nothing to support its relevance to Trooper 1's claims and Mr. Cuomo has failed to meet the burden of establishing relevance.

The simple elements of Trooper 1's claims confirm the irrelevance of information regarding Mr. Cuomo's harassment of Ms. Boylan. If Trooper 1 can prove that Mr. Cuomo discriminated and/or retaliated against her and her alone, in the specific instances alleged, she will prevail; if not, she will lose. Contrary to Mr. Cuomo's suggestion in his Motion, Trooper 1's claims do not turn on additionally demonstrating that Mr. Cuomo also engaged in a pattern of discrimination or retaliation based on Boylan's accusations. *See* Cuomo Mot., ECF 3, at 1.

---

[8] While the court in *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2020 WL 91636, at *2 (S.D.N.Y. Jan. 8, 2020) said it was not "prepared . . . to prohibit inquiry into facts that have been alleged . . . and denied [by defendants] . . . thus putting them presumptively at issue," such language regarding denials by parties to the litigation should not be taken out of context to permit errant mentions of non-parties to expose them to unproductive discovery that does nothing to advance the case at bar.

Specifically, to prove a claim of sexual harassment that creates a hostile work environment, "a plaintiff must specifically show (1) intentional harassment, (2) based on sex, (3) under color of state law, (4) which was sufficient to render the environment hostile to the plaintiff." *Burhans v. Lopez*, 24 F. Supp. 3d 375, 380 (S.D.N.Y. 2014). Significantly, "in order to be relevant, harassment not personally observed must have occurred in the same work environment that Plaintiffs inhabited and . . . must have affected the terms and conditions of Plaintiffs' employment adversely." *Fenner v. News Corp.*, 2013 WL 6244156, at *15 (S.D.N.Y. Dec. 2, 2013). Conduct taken outside of a plaintiff's presence is irrelevant unless it "contribute[s] to the Plaintiff's own experience at the workplace." *Harge v. City of New York*, 2021 WL 3855305, at *17 (S.D.N.Y. Aug. 26, 2021) (citing *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001)) *aff'd in part, vacated on other grounds, remanded sub nom. Harge v. City of New York*, 2022 WL 17481819 (2d Cir. Dec. 7, 2022). None of Mr. Cuomo's misconduct towards Ms. Boylan contributed to Trooper 1's workplace experience or affected the terms or conditions of Trooper 1's employment. More importantly, Mr. Cuomo has not asserted, let alone demonstrated, how it could have. Absent a showing of the relevance of Ms. Boylan's treatment to the elements of Trooper 1's claims, the information's production should not be compelled by this Court.

The same is true regarding the relevance of the information to Trooper 1's retaliation claims. To prove retaliation under 42 U.S.C. § 1983 and the NYSHRL, a plaintiff must prove (1) that she engaged in protected activity, (2) the defendant was aware of that activity, (3) that defendant took an adverse employment action against the plaintiff, and (4) that there is a causal connection between the protected activity and the adverse employment action. *Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 287 (S.D.N.Y. 2013) (NYSHRL); *Flynn v. New York State Div. of Parole*, 620 F. Supp. 2d 463, 488 (S.D.N.Y. 2009) (§ 1983). The NYCHRL maintains a more

expansive standard, requiring plaintiff to prove she opposed her employer's discrimination and as a result "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Wilco*x, 986 F. Supp. 2d at 287 (citations omitted). Mr. Cuomo has not even asserted any manner in which Ms. Boylan's opposition to Mr. Cuomo's discrimination or experience of retaliation is relevant to proving any of these elements with respect to Trooper 1.

A pattern of misconduct against others is not an element of any of Trooper 1's claims. As such, Mr. Cuomo's request for information regarding a pattern is irrelevant. Allowing discovery into this irrelevant pattern information from Ms. Boylan is improper.

## II.    Mr. Cuomo's Document Subpoena is Served for Improper Purposes.

Even if the subpoena did seek relevant material, it must still be quashed because it was brought for an improper purpose—to relitigate the OAG investigation and further harass and intimidate Ms. Boylan. As Mr. Cuomo explains in his motion to compel, he served this subpoena because he was (as he sees it) "entitled to take discovery on the same issues that the OAG saw fit to investigate" and "entitled to challenge Ms. Boylan's accusations using the information sought in the Document Subpoena." Cuomo Mot, ECF 3, at 16. As entitled as Mr. Cuomo feels himself to be, he is wrong on the law.

### A.   Mr. Cuomo's Cannot Seek Discovery to Contest Facts that Have No Bearing on the Issues in this Case.

First, as the Court already reminded Mr. Cuomo, he is *not* entitled to redo the OAG investigation because "the Attorney General's Office mandate was was [sic] to look at the whole thing . . . But *that's not that* [sic] *what this case is. This case is about one Plaintiff* over a span of years saying she had multiple interactions with [Mr. Cuomo]." OAG Oral Arg. Tr., ECF 25, at 95:10-22. (emphasis added).

Second, the Supreme Court held in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340

(1978), that "a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.*, at 353, n.17. As illustrated by the OAG's filing in support of its motion to quash in the OAG Action, Mr. Cuomo (through counsel) has undertaken a relentless campaign to attack the OAG's investigation through press conferences, media appearances, and written submissions, including an ethics complaint against the OAG investigators. Ex. 4 ¶¶ 41-44. It is inappropriate, as a matter of law, for Mr. Cuomo to continue in his attempt to use the discovery process in this case to facilitate his political vendetta against the OAG investigation and his personal vendetta against Ms. Boylan. This Court should not overlook Mr. Cuomo's improper purpose.

### B. Mr. Cuomo Cannot Seek Discover to Smear Non-Party Ms. Boylan.

Likewise, Mr. Cuomo has no business abusing the discovery process in Trooper 1's case to gather information to "challenge Ms. Boylan's accusations" (Cuomo Mot., ECF 3, at 16), which she first made publicly in December 2020 and in sworn testimony in May 2021, but which, as a non-party, she obviously has not raised here.

Admitting his improper purpose, Mr. Cuomo states that he seeks discovery to assess Ms. Boylan's credibility. *See* Cuomo Mot., ECF 3, at 13 (arguing that the requests are proper because they "seek[] materials relevant to Ms. Boylan's credibility and motive in making her allegations."). As Mr. Cuomo sees it, he is "entitled to explore the possibility that Ms. Boylan fabricated or embellished her allegations to sustain or boost her [political] campaign [which ended in 2021]," claiming that "Courts routinely allow discovery concerning a witness's personal or financial interests in giving particular testimony." Cuomo Mot., ECF 3, at 14. For example,

Mr. Cuomo argues that Request 8 and Requests 12-14 "[go] to the heart of whether [Boylan] is a reliable narrator and whether her allegations are believable." Cuomo Mot., ECF 3, at 15.

Ms. Boylan's reliability as a narrator, however, is entirely immaterial to this case because she has no narrative to offer with respect to Trooper 1's allegations. Rather than serving any function in the instant litigation, the challenge to Ms. Boylan's credibility continues the onslaught by Mr. Cuomo and his counsel's attempts to discredit Ms. Boylan and other accusers in hopes of repairing Mr. Cuomo's reputation.[9]

Mr. Cuomo's intended use of the records to undermine Ms. Boylan's credibility is improper under Federal Rule of Evidence 608, which provides that, other than evidence of criminal convictions, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). "Courts have historically been wary of discovery sought solely for impeachment purposes." *Shih v. Petal Card, Inc.*, 2021 WL 5279395, at *4 (S.D.N.Y. Nov. 12, 2021). Indeed, courts in the Second Circuit routinely quash subpoenas to non-parties when the stated purpose is to attack credibility. *See, e.g.*, *Tucker v. Interstate Home Loan Centers, Inc.*, No., 2022 WL 4079580, at *4 (E.D.N.Y. Sept. 6, 2022) (quashing non-party subpoenas to plaintiff's prior employers for records sought to be used to attack plaintiff's credibility); *Park W. Radiology v. CareCore Nat. LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008) (denying defendants' request discovery of third parties because the requests were "fishing expeditions" in hope of finding information that third parties were engaged in illegal and unethical practices with plaintiff). As explained in *Shih,* "It would obviously be intolerable for the party seeking disclosure to embark on an examination of every statement ever made by a

---

[9] *See id*. In regard to a January 2022 press conference held by Ms. Glavin to undermine the OAG's investigation and the credibility of the complainants, the *New York Times* recognized that the "most vociferous attacks" were made against Ms. Boylan. Ex. 14.

witness in the hope of unearthing a falsehood." *Shih*, 2021 WL 5279395, at \*4. But that's just what Mr. Cuomo seeks here. This Court should reject Mr. Cuomo's efforts to open an impeachment Pandora's box, particularly for a non-party who also is not a witness to the allegations in this case.

Additionally, Request 8, which requests communications about a "personal relationship and/or sexual relationship with Howard Zemsky" is improper under Fed. R. Civ. P. 412(a), which provides that evidence is not admissible to prove that a victim of sexual misconduct "engaged in other sexual behavior" or to prove a victim's "sexual predisposition." *See Zakrzewska v. New Sch.*, 2008 WL 126594, at \*2 (S.D.N.Y. Jan. 7, 2008) ("Courts quite properly are reluctant to permit discovery into such highly intimate matters. Individuals' privacy interests in such circumstances are important and deserving of protection. Moreover, there is a risk that permitting such discovery would deter some individuals from pursuing meritorious claims."); *Macklin v. Mendenhall*, 257 F.R.D. 596, 602 (E.D. Cal. 2009) ("[I]n the context of civil suits for sexual harassment, and absent extraordinary circumstances, inquiry into such areas [i.e., complainant's past sexual behavior] should not be permitted, either in discovery or at trial.") (brackets in original) (citations omitted).[10]

None of the four cases Mr. Cuomo cites justify impeachment discovery, including because Ms. Boylan is neither a party nor a direct witness to the relevant events. *See* Cuomo Mot., ECF 3, at 13-14. Three cases involved third-party subpoenas to attack the credibility of the *plaintiff* regarding the events that gave rise to the litigation. *See Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*, 2009 WL 10705911 (E.D.N.Y. Aug. 3, 2009) (permitting discovery concerning plaintiff's credibility where defendant contested the validity of a life insurance because the plaintiff was a "witness critical to contract formation" between the defendant and the insured); *Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393 (E.D.N.Y. 2013) (allowing very narrow

---

[10] Trooper 1 has objected to Mr. Cuomo's use of subpoenas to get Ms. Boylan's and another non-party complainant's sexual history information; that objection is the subject of a forthcoming motion to quash. *See* ECF 78, 80.

questioning regarding the occurrence of prior disciplinary action, but emphasizing that the court would "not permit a trial-within-a-trial" regarding plaintiff's work performance); *Padilla v. Sacks & Sacks, LLP*, 2021 WL 4429785 (S.D.N.Y. Sept. 27, 2021) (allowing defendants to discover prior complaints made by plaintiff during her employment that "may speak to Plaintiff's motive and/or credibility in filing the instant lawsuit"). The Document Subpoena does not seek prior complaints made by the plaintiff, Trooper 1; rather, Mr. Cuomo seeks discovery on prior complaints against Ms. Boylan who is not a party to this case, has not filed a lawsuit against Mr. Cuomo, and has no connection to the events that comprise the claims asserted by Trooper 1. Mr. Cuomo does not contend (nor could he) that Ms. Boylan, a non-party, had a relationship with Trooper 1 that would make Ms. Boylan a "witness critical" to the claims asserted by Trooper 1. Thus, Mr. Cuomo's reliance on *Ashkenazi*, *Redd*, and *Padilla* is misplaced. Allowing the discovery Mr. Cuomo seeks would permit a "a trial-within-a-trial" exactly what *Redd* explicitly sought to avoid.

The one case Mr. Cuomo cites involving non-party discovery is also inapt. *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215(S.D.N.Y. 1974)—also decided prior to the 2015 amendment to Rule 26(b)(1)—is a decades-old, out-of-district antitrust case in which the Court permitted limited deposition questions of witnesses at an investment firm that invested in the industry at issue, and in which the witnesses had an "obvious financial stake in the outcome of the litigation." *Id.* at 217. The court made clear that its ruling was specific to the narrow case before it, in which this "obvious" motive was established, and the witnesses did "not demonstrate that allowing discovery will cause [them] annoyance, embarrassment, oppression, or undue burden or expense": indeed, the court made clear that its ruling was "not to suggest an unlimited, far-ranging incursion where countervailing facts, not here present, exist." *Id.* at 219.

In sum, none of the cases upon which Mr. Cuomo relies involve similar circumstances nor

support discovery into matters that Mr. Cuomo himself admits would be irrelevant.

### III. Mr. Cuomo's Document Subpoena is Not Proportional and Would Impose an Undue Burden.

Even if the subpoena were brought for a proper purpose *and* sought relevant material (neither of which is the case here), it should be quashed because the discovery requested is not proportional to the needs of this case and would impose an undue burden on a third party.

First, as argued and as Mr. Cuomo concedes, the information requested has no relevance to the Trooper 1 Action and thus the Document Subpoena is inherently disproportional and unduly burdensome. Mr. Cuomo seeks discovery from Ms. Boylan to prove that her allegations against Mr. Cuomo are *irrelevant* to this action between Trooper 1 and Mr. Cuomo. The discovery sought is definitionally not "important to resolving the issues between the parties," as required by Rule 26(b) but instead will likely lead to distracting and wasteful mini-trials reaching issues not before the court. Courts routinely reject such fishing expeditions. *See Alvarado v. GC Dealer Servs. Inc*., 2018 WL 6322188, at *4 (E.D.N.Y. Dec. 3, 2018) (denying motion to compel impeachment discovery that would be distracting and "of limited value, essentially creating a trial within a trial"); *Anwar v. Fairfield Greenwich Ltd*., 297 F.R.D. 223, 227, n.5 (S.D.N.Y. 2013) (denying motion to compel non-party discovery from the SEC where "to prove their defenses related to the SEC, the Defendants likely would have to conduct a trial within a trial").

Second, even if Ms. Boylan's allegations had some relevance to the Trooper 1 Action (which they do not), the parties do not have a strong need for the information based on the significant publicly available information, including Ms. Boylan's prior sworn testimony. Gerchik Decl. ¶ 26; *see* Initial Conference Transcript, Trooper 1 Action (June 6, 2022), ECF 43 at 9 (Trooper 1's Counsel: "[T]his is a unique case . . . mainly because all the parties have come into this case with much more information and much more sworn testimony than any other case I've

ever been involved with."); *McAnneny v. Smith & Nephew, Inc*., 2018 WL 1383400, at *6 (D. Conn. Mar. 19, 2018) (finding interrogatory regarding similar accidents was not proportional to the needs of the case because of the "broad scope and questionable relevance of the information sought" and emphasizing that its conclusion that the interrogatory was not proportionate was "particularly true in light of the publicly available information").

Third, the requests are extremely broad and not even confined to seeking information regarding Ms. Boylan's allegations of sexual harassment against Mr. Cuomo that appear in Trooper 1's Complaint; instead, the requests also make vague and non-particularized requests for documents concerning "personal interactions" with and "other misconduct" by Mr. Cuomo, as well as expansive requests regarding Ms. Boylan's political campaigns, relationships, and workplace conduct and resignation. Many of the requests also seek "any" and "all" documents without a time limitation, and thus would require Ms. Boylan to produce communications that took place years after she was harassed by Mr. Cuomo and publicly disclosed and testified about her allegations.

Fourth, the actual burden on Ms. Boylan to review and produce the documents requested by Cuomo would be significant. "[W]here the party moving to quash is a non-party to the pending litigation, that fact entitles the witness to consideration regarding expense and inconvenience." *Sky Med. Supply Inc. v. SCS Support Claim Servs.*, Inc., 2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017) (internal quotations and citation omitted). Ms. Boylan, at her own expense, has already been forced to have all her electronic devices and her entire set of emails forensically collected by a third-party ESI vendor. Gerchik Decl. ¶ 27. The resulting collection amounts to more than **550,000** searchable documents. *Id.* As Cuomo's subpoena requests are incredibly broad, this will potentially require Ms. Boylan and her counsel to review thousands and thousands of documents, or more. It is unreasonable, unduly burdensome, and not proportional to the needs of the case to compel

Ms. Boylan—a non-party—to have her attorneys spend hundreds of hours reviewing, potentially redacting, and producing documents that, for the reasons set forth throughout, have no relevance to the actual dispute at issue: Trooper 1's allegations against Cuomo.

Moreover, it is important to weigh the burden on this non-party in light of the burden she already has endured as the victim of Mr. Cuomo's sexual harassment and retaliation. Namely, Ms. Boylan already had to provide evidence in connection with two governmental investigations, including providing over four-and-a-half hours of sworn testimony that is publicly available. *See* Ex. 15. Ms. Boylan also endured repeated public attacks by Mr. Cuomo to her credibility and character, at great personal psychic and financial cost. Ms. Boylan should not be required to sustain the additional burden of complying with Mr. Cuomo's oppressive Document Subpoena. Indeed, the Court should not permit this ordeal as the inevitable consequence of her agreeing to cooperate in such investigations or for exercising her right to speak out against her abuser.

The repercussions of imposing this burden on Ms. Boylan extend beyond her. Publicly disclosing allegations of sexual harassment and participating in related investigations takes enormous courage, particularly when such allegations are against someone as powerful as Mr. Cuomo and when such allegations are made in the context of a culture of fear, intimidation, and retribution. Permitting those accused of sexual harassment to weaponize the courts to force their accusers to produce discovery (especially of such a personal nature) in unrelated matters and to endure repeated smearing in proceedings against their will, at extravagant personal cost and invasion of privacy, is not only unjust but risks disincentivizing future reporting.

## **CONCLUSION**

For the foregoing reasons, Mr. Cuomo's subpoena to non-party Lindsey Boylan should be quashed in its entirety, and Mr. Cuomo's motion to compel should be denied.

Dated: June 28, 2023
      New York, New York

Respectfully submitted,

/s/ E. Danya Perry
E. Danya Perry
Rachel Fleder
Perry Law PLLC
157 East 86th Street, 4th Floor
New York, NY 10028
Phone: 646-974-0935
Fax: 646-849-9609
Email: dperry@danyaperrylaw.com

Julie R. F. Gerchik (*pro hac vice motion pending*)
Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Blvd.
Suite 1900
Los Angeles, CA 90067
310-553-3000
Fax: 310-556-2920
Email: jgerchik@glaserweil.com

*Attorneys for Respondent Lindsey Boylan*