# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW M. CUOMO,                                    :
                                                    :
                           Movant,                  :    1:22-mc-03044 (LDH)(TAM)
                                                    :
         - against -                                :
                                                    :
                                                    :
OFFICE OF THE NEW YORK STATE                        :
ATTORNEY GENERAL,                                   :
                                                    :
                           Defendant.               :
-------------------------------------------------------------X

I, SERENA LONGLEY, an attorney admitted to practice before this Court, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1.  I am Deputy General Counsel to the New York State Office of the Attorney General (OAG), Defendant in the above-captioned miscellaneous action and respondent to the nonparty subpoena dated July 7, 2022 (the Subpoena) served by Movant Cuomo in the case entitled *Trooper 1 v. New York State Police, et al.*, No. 22-cv-00893 (LDH) (TAM) (the Trooper 1 Action).

2.  I submit this declaration, based on my personal knowledge and my review of records in the possession of OAG as well as publicly available records, in support of Defendant OAG's Cross-Motion to Quash the Subpoena and Opposition to Movant Cuomo's Motion to Compel.

3.  In March 2021, I was personally involved in OAG's process to appoint and engage private attorneys as Special Deputies and Assistants of OAG to conduct an inquiry into allegations of, and circumstances surrounding, sexual harassment claims made against then-governor Cuomo pursuant to New York Executive Law § 63(8) (the Investigation). I was one of the attorneys at OAG to whom the appointees reported during the Investigation. After the Investigation concluded, I was personally involved in the review and redaction process of witness testimony and exhibits

thereto for public release. Also, after the Investigation concluded, I was personally involved in OAG's cooperation with a number of other government investigations relating to former governor Cuomo, including by providing certain materials from the Investigation, without waiving privilege or confidentiality attaching thereto, that were requested by other government entities.

**New York Executive Law § 63(8) Referral to OAG**

4. By letter dated March 1, 2021, the Office of then-governor Andrew M. Cuomo, made a referral to OAG "pursuant to New York Executive Law § 63(8) for OAG to select an independent law firm to conduct an inquiry into allegations of and circumstances surrounding sexual harassment claims made against the Governor." A true and correct copy of the March 1, 2021 letter (the Referral Letter) is attached hereto as Exhibit 1.

5. The Referral Letter acknowledged "that nothing in this letter is intended to constrain or limit the powers inherent in Executive Law § 63(8)." *Id.*

6. Upon referral, Executive Law § 63(8) provides OAG with the power to conduct an inquiry, and at OAG's discretion, appoint "deputies, officers and other persons" who are not employed by the government, to inquire into matters "concerning the public peace, public safety and public justice" and empowers such appointees to issue and compel subpoenas for testimony and documents in furtherance of a § 63(8) inquiry. N.Y. Exec. Law § 63(8).

7. Executive Law § 63(8) generally requires appointees, if any, to report on a weekly basis to OAG with a duplicate copy to the Office of the Governor. *Id*.

8. However, the Referral Letter granting OAG the power to investigate allegations of sexual harassment and surrounding circumstances against then-governor Cuomo directed that "[d]ue to the nature of the review…the weekly reports contemplated by Executive Law § 63(8) will not be approved by or transmitted to the Executive," meaning that the weekly reports generally

2

required by Executive Law § 63(8) were to be submitted exclusively to OAG for the Investigation. *See* Ex. 1.

9. In a press conference on March 3, 2021, referring to the allegations of sexual harassment against him, Cuomo stated:

> "I ask the people of this State to wait for the facts from the Attorney General's report before forming an opinion. Get the facts please before forming an opinion and the Attorney General is doing that review. I will fully cooperate with it and then you will have the facts and make a decision when you know the facts." A true and correct copy of the Governor's Office March 3, 2021 Email Press Release containing transcription of a portion of the press conference is attached hereto as Exhibit 2. Video footage of the entire press conference is *available at* https://www.c-span.org/video/?509520-1/york-governor-cuomo-apologizes-actions-resign (last accessed Nov. 8, 2022).

10. In that same press conference on March, 3, 2021, in response to questions about whether Cuomo planned to "step aside" and/or resign, Cuomo stated:

- "I am going to cooperate with the Attorney General's investigation." *Id.* at mark 29:52.

- "I am not going to resign." *Id.* at mark 33:32.

- "The facts will come out in the Attorney General's review." *Id.* at mark 35:05.

- "Let the Attorney General do a review and let's get the facts. That's what I said in my statement to New Yorkers…Wait for the facts before you form an opinion…Let the Attorney General's Office actually review the facts." *Id.* at mark 37:32.

11. In a press conference on March 7, 2021, Cuomo stated:

- "So, we have the Attorney General who's doing an independent review. She has all the allegations, anybody can make an allegation to her, and let the Attorney General do her job. She's very good, she's very competent, and that will be due process and then we'll have the facts. That's why Senator Schumer said let the Attorney General do her investigation, Senator Gillibrand said let the Attorney General do her investigation, Congressman Jeffries said let the Attorney General do her investigation, the White House Spokesperson said let the Attorney General do the investigation, because that's democracy. So no, there is no way I resign. Let's do the Attorney General investigation, let's get the findings, and then we'll go from there."

A true and correct copy of the Governor's Office's March 7, 2021 Email Press Release containing transcription of a portion of the press conference is attached hereto as Exhibit 3.

3

12. Beginning on March 8, 2021, pursuant to Executive Law § 63(8) and the Referral Letter, OAG began appointing a team of private attorneys to investigate and report on allegations of, and circumstances surrounding, sexual harassment by Governor Andrew Cuomo (the Investigative Team). The Investigative Team consisted of four Special Deputies and eight Special Assistants from Cleary Gottlieb Steen & Hamilton LLP (Joon Kim, Jennifer Kennedy Park, Abena Mainoo, Rahul Mukhi, Andrew Weaver, Avion Tai, Soo Jee Lee, Lorena Michelen, Ye Eun (Charlotte) Chun, Hyatt Mustefa, Lilianna Rembar, and Nikkisha Z. Scott) and two Special Deputies and two Special Assistants from Vladeck, Raskin & Clark, P.C. (Anne Clark, Yannick Grant, Ezra Cukor, and Emily Miller).

13. During the terms of their appointments, attorneys on the Investigative Team were deemed to be part of OAG. As set forth in their appointment letters, the members of the Investigative Team were limited to using their authority under Executive Law § 63(8) "exclusively for the benefit of the OAG and the People of the State of New York" and were obligated to keep all information obtained in the course of the Investigation confidential notwithstanding their mandate to produce a public report at the close of the Investigation. True and correct copies of Kim and Clark's March 8, 2021 appointment letters are attached hereto as Exhibit 4. The appointment letters for each member of the Investigative Team contained the same substantive authority and direction.

14. Pursuant to and consistent with the Executive Law § 63(8) appointments, OAG retained the law firms associated with the appointees: Cleary Gottlieb Steen & Hamilton LLP and Vladeck, Raskin & Clark, P.C. The firms were engaged "to provide investigation and legal services by assisting the [OAG] in its review of allegations of, and circumstances surrounding, sexual harassment against Governor Andrew Cuomo" and "produce a public report with their findings

4

and conclusions." While as a general matter, the Office of the Governor and OAG could both have an attorney-client relationship with Executive Law § 63(8) appointees (in addition to the attorney-client relationship between OAG and the Office of the Governor), due to the nature of this Executive Law § 63(8) investigation and the governor himself being the subject of the investigation, the engagements established the firms as outside counsel to OAG as the exclusive client and OAG did not act in an attorney-client capacity with respect to the Office of the Governor for purposes of the Investigation. The engagements authorized the firms to utilize any of their resources as they deemed appropriate to carry out the engaged services. True and correct copies of the engagement letters are attached hereto as Exhibit 5.

15. Kim and Clark led an independent investigation beginning on March 8, 2021 into allegations of, and circumstances surrounding, sexual harassment by then-governor Cuomo. The Investigative Team made all substantive decisions regarding how to conduct the investigation, as well as all decisions regarding the analysis and conclusions reached in the Report, independently. *See* Declaration of Ye Eun Charlotte Chun dated November 8, 2022 ("Chun Decl.") ¶ 5.

16. The Investigative Team closed the Investigation with a public report (the Report) and three appendices (containing 111 exhibits) released on August 3, 2021, which concluded "that the Governor, on multiple occasions, engaged in conduct and conversations that were offensive and sexual in nature that constituted sex-based harassment." Report at pg. 142. A true and correct copy of the Report and accompanying appendices are *available at*: https://ag.ny.gov/press-release/2021/independent-investigators-find-governor-cuomo-sexually-harassed-multiple-women (last accessed Nov. 8, 2022). During the course of the Investigation, the Special Deputies interviewed 179 individuals, and took testimony under oath from 41 of them and received over 74,000 documents. Chun Decl. ¶ 3.

5

17. As part of the periodic reporting to OAG required by Executive Law § 63(8), the Investigative Team consulted with OAG on issues relating to OAG's powers, practices and procedures as they arose in the context of the investigation. Examples of such issues ranged from investigative procedures, protocols, timing and techniques to the interpretation and potential application of various laws.

18. During the course of the Investigation, the Investigative Team reported to OAG that Cuomo and the Executive Chamber (part of the office of the Governor) resisted and challenged various aspects of the Investigation, including making what the Investigative Team viewed as unjustified assertions of privilege, questioning the scope of certain requests, and claiming access to investigative material to which the Investigative Team did not believe they had a right to access. Moreover, evidence gathered during the Investigation indicated that Cuomo and members of the Executive Chamber planned from early in the Investigation to try to undermine the Investigation's findings by attacking members of the Investigative Team and the OAG. Based on this information, OAG anticipated that litigation or other judicial proceedings initiated by Cuomo or others aligned with him were likely to result if the Investigation yielded any negative results for Cuomo or the Executive Chamber. *See* Chun Decl. ¶ 4.

19. Counsel for the Executive Chamber and Cuomo were notified during the Investigation that the legal provisions pursuant to which testimony was taken (§ 63(8) and N.Y. Civil Rights Law § 73) do not entitle witnesses to access their testimony and that it is against OAG practice to provide witnesses access to their testimony apart from access granted to the public, if any. Chun Decl. ¶ 4.

**The Special Deputies collected and created voluminous materials replete with privileged, confidential and private information**

20. The material collected by the Investigative Team is voluminous, consisting of information from 179 witnesses and over 74,000 documents. As set forth in the Cleary Declaration, this material contains highly sensitive and confidential information. Chun Decl. ¶ 3, 8. Materials collected and created in connection with the Investigation include the following categories of materials:

- Subpoenas;

- Investigation Documents and Testimony: approximately 74,000 documents collected in response to subpoenas and informal requests and testimony for 41-on-the-record witnesses;

- Attorney Work Product: notes, draft documents, and memoranda, including memoranda memorializing witness interviews and identifying related investigative information and next steps, case management materials, trackers and schedules;

- External Correspondence: communications between the Investigative Team and witnesses and/or their counsel;

- Government Investigator Material: correspondence and document productions between OAG/retained counsel and other governmental entities conducting overlapping investigations; and,

- Internal Correspondence: communications internal to the retained firms, communications internal to OAG employees, and communications between the firms and OAG employees, including weekly reports pursuant to § 63(8).

*See also* Chun Decl. ¶¶ 8, 12.

**OAG shares certain materials collected by Investigative Team with the Assembly Judiciary Committee in connection with open Impeachment Investigation**

21. On August 6, 2021, counsel to the Judiciary Committee of the New York State Assembly (the AJC) requested investigative materials from OAG in connection with the Assembly's open Impeachment Investigation concerning then-governor Cuomo, and on August 7,

7

2021, OAG started providing certain materials collected by the Investigative Team to the AJC subject to the following terms:

> "The OAG, the Judiciary Committee of the New York State Assembly, the New York State Assembly, and Impeachment Counsel (the lawyers of the law firm Davis Polk & Wardell LLP that have been retained by the New York State Assembly to conduct an impeachment investigation into allegations against Governor Andrew Cuomo) (collectively the "New York State Assembly parties") agree that it is in the public interest that the OAG provide the New York State Assembly parties with materials collected by the Independent Investigators in connection with the August 3, 2021 *Report of Investigation Into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* . . . The New York State Assembly parties agree that in maintaining or disclosing any of the provided materials, it will endeavor to do so in a manner that protects any privileges attaching to such materials, and which is in furtherance of our shared duty to protect the public interest. Finally, OAG and the New York State Assembly parties confirm their understanding that by providing these materials or other information, OAG is not waiving confidentiality or privilege with respect to any other materials or information or aspects of OAG investigations."

**OAG's public release of transcripts and exhibits from the Investigation**

22. OAG decided, in furtherance of public interest, to publish witness testimony and related exhibits (all of which were materials collected – not created – by the Investigative Team) from the Investigation in redacted form. OAG limited public release to these materials in redacted form to protect the privacy interests of individual witnesses as well as, relatedly, the integrity and privilege of OAG's investigative protocols and techniques.

23. In anticipation of publishing these materials, on/about August 4, 2021, the Investigative Team started to review for redaction witness testimony and exhibits shown to witnesses during their testimony, which contained confidential and sensitive information of the types described in paragraph 8 of the Chun Declaration. Due to the time and resource intensive nature of the review, OAG anticipated publishing materials on a rolling basis; however, OAG temporarily refrained from publicly releasing additional materials in response to requests from several law enforcement entities as explained more fully below.

8

24. Following the release of the Report, between August 3, 2021 and August 9, 2021, District Attorneys from Albany, New York, Westchester, Nassau, and Oswego counties (the Five DAs) requested OAG's cooperation in providing certain investigative materials to their offices.

25. On/about August 15, 2021, OAG began providing certain requested materials to the Five DAs subject to the following terms:

> "The OAG and District Attorneys for Albany, Nassau, New York, Oswego, and Westchester Counties (collectively the "Five DAs") agree that it is in the public interest that the OAG provide the Five DAs with certain materials collected by the Independent Investigators in connection with the August 3, 2021 *Report of Investigation Into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* . . . The Five DAs agree that in maintaining or disclosing any of the provided materials, they will endeavor to do so in manner that protects any privileges attaching to such materials, and which is in furtherance of our shared duty to protect the public interest, including protecting the integrity of OAG's investigations. Finally, OAG and the Five DAs confirm their understanding that by providing these materials or other information, OAG is not waiving confidentiality or privilege with respect to any other materials or information or aspects of OAG investigations."

26. On/about August 24, 2021, OAG began providing certain requested materials to the Albany County Sherriff's Office subject to the material terms set forth above in paragraph 25.

27. Between August 18 and August 23, 2021, District Attorneys from Nassau, Oswego, Westchester and Albany counties formally requested OAG refrain from publicly releasing underlying evidence from the Investigation while the District Attorneys Offices' review and investigations into former governor Cuomo were in preliminary stages.

28. In response to requests from the District Attorneys from Nassau, Oswego, Westchester and Albany, OAG agreed to temporarily refrain from publicly releasing testimony and exhibits in redacted form.

29. After learning that the Albany District Attorney was in the process of providing certain materials, including testimony and exhibits, from the Investigation to Defendant Cuomo as part of the criminal discovery process, on/about November 10, 2021, OAG, in consultation with

9

other law enforcement entities, including the Albany County District Attorney, determined it was appropriate to proceed with its public release of witness testimony and related exhibits in redacted form as previously planned.

30. The testimony and exhibits collected by the Investigative Team that are available on OAG's website include, in redacted form: testimony transcripts for 41 on-the-record witnesses and video or audio recordings of testimony from 23 of those witnesses as well as approximately 1,000 documents collected by the Investigative Team, which constitute exhibits to the Report or exhibits to on-the-record testimony. True and correct copies of these materials are *available at* https://ag.ny.gov/CuomoIndependentInvestigation (last accessed Nov. 8, 2022).

31. As set forth in the Chun Declaration, for purposes of providing public access to testimony and testimony exhibits from the Investigation, Cleary undertook the review and redaction of transcripts for the 41 on-the-record witnesses, exhibits to each transcript (approximately 1,000 documents of the 74,000 documents collected by the Investigative Team), and video or audio files of the recorded testimony for 23 of the on-the-record witnesses. This process took the Investigative Team over 3,600 hours (at taxpayer expense) to complete. Chun Decl. ¶¶ 8-10.

32. OAG started making testimony and related exhibits publicly available on its website on November 10, 2021 and continued publishing them on a rolling basis as the review and redaction of each item was completed. A true and correct copy of the OAG press release announcing the rolling release of transcripts and exhibits and providing links to the material released is *available at* https://ag.ny.gov/press-release/2021/transcripts-and-exhibits-independent-investigation-sexual-harassment-allegations; *see also* Chun Decl. ¶ 7.

33. Based on my review of the Trooper 1 Amended Complaint (attached hereto as Exhibit 6) and the materials available on OAG's website set forth above in paragraph 32, the quotations in the Amended Complaint appear to be almost entirely attributable to testimony or exhibits on OAG's website. Attached hereto as Exhibit 7 is a chart prepared by OAG reflecting quotations in the Amended Complaint attributable to testimony or exhibits available on OAG's website, as well as two quotations attributable to the Report.

**OAG balances public interest in transparency with public interest in law enforcement privilege and protection of individual privacy**

34. A cornerstone of OAG's civil and criminal investigations is the ability to protect the private, personal and confidential information of witnesses or other private individuals collected in the course of an investigation. While OAG has broad subpoena power, voluntary cooperation from witnesses, complainants, victims, and whistleblowers is essential to OAG investigations. It is extremely common for witnesses to be reluctant to share information with OAG attorneys and investigators out of fear that private information about them will become public resulting in negative consequences for them or their family or out of fear that the information will be shared with the subject of an investigation who will then retaliate against the witness. OAG has a policy of respecting and protecting witness privacy and confidentiality to the greatest extent possible, consistent with conducting a thorough investigation and complying with all applicable legal requirements. This means that OAG protocol does not permit sharing private, personal or confidential information collected in an investigation beyond what is necessary for legitimate law enforcement business or is legally required (for example, certain materials must be disclosed to a defendant in criminal proceedings). OAG also takes witness requests for anonymity very seriously; when a witness's identity is not material to OAG's investigative findings, OAG

11

will honor that witness's request to remain anonymous to the greatest extent permitted by law. OAG regularly assures reluctant witnesses that it will take steps to protect their privacy, confidentiality, and even identities to the greatest extent possible consistent with carrying out OAG's constitutional and statutory functions and to the extent permitted by law.

35. As set forth in the Chun Declaration, the Investigative Team's files are replete with highly sensitive and confidential information pertaining to witnesses as well as their family members and other individuals. Chun Decl. ¶ 8.

36. It is against OAG protocol, and would seriously undermine OAG's future investigative efforts, for OAG to make public, or provide to the subject of a prior investigation, the types of information set forth in paragraph 8 of the Chun Declaration. If OAG does not protect these types of materials from public release, or release to a subject of investigation (including one with a history of publicly releasing materials like Cuomo), OAG jeopardizes its ability to collect complete and sensitive information in future investigations. Releasing this type of information, especially when not necessary for the public to understand the bases for the findings and conclusions of an investigation, would serve to undermine OAG's credibility with complainants, victims, and witnesses of illegal activity whom OAG relies on to voluntarily come forward and cooperate in OAG investigations.

37. In addition, as set forth in paragraph 11 of the Chun Declaration, there are over 100 witnesses whose identities are not otherwise known to the public, including a number of non-public on-the-record witnesses, many of whom expressed credible fears of retaliation and were hesitant to cooperate with the Investigation for this reason. Many witnesses who cooperated with the Investigation requested that their identity and cooperation be protected, and they might not have cooperated as fully had they believed their identities, the substance of their information,

and/or the documents they produced would be provided to the former Governor, former members of the Executive Chamber, or their counsel. It is against OAG protocol and counter to OAG's future investigative efforts to release information from and about these individuals, including their identities, because (1) to the extent not included in the Report or already published investigative materials, this information is not material to the findings or conclusions of the Investigation; (2) exposing the identities of and information provided by these witnesses would contradict assurances provided to these witnesses; (3) these witnesses (and others referenced by them) are likely to suffer negative consequences, including embarrassment, from having their participation made public and known to Cuomo; and (4) OAG reasonably anticipates it will discourage potential future complainants, victims, and witnesses from cooperating with OAG investigations out of concern that their private, personal and sensitive information will become public.

38. OAG has consistently maintained the position that witnesses from the Investigation and their counsel, including complainants and former-governor Cuomo, are not entitled to copies of their testimony. Witnesses may only obtain copies of their testimony in redacted form on OAG's website just like any other member of the public.

**Additional government investigations implicating nonpublic information collected by the Investigative Team may remain open and ongoing**

39. In addition to sharing certain information from the Investigation with the 5 DAs, Albany Sherriff, and the AJC, as set forth above in paragraphs 21, 25, and 26, OAG has provided certain materials from the Investigation in connection with additional government investigations, subject to the same material terms set forth above in paragraph 25 governing the sharing of materials with law enforcement entities. OAG is aware of one or more ongoing investigations, which may not be known to the public, and which relate to nonpublic information collected by the

13

Investigative Team. OAG is prepared to provide additional information about these other investigations in an *ex parte* letter to the Court upon request.

**Only a handful of documents collected by the Investigative Team reference Trooper 1**

40. As set forth in paragraph 13 of the Chun Declaration, the Investigative Team ran searches across all of the documents they received over the course of the Investigation for materials specific to Trooper #1. Those searches identified only four documents that reference Trooper #1. Given the relatively minor burden involved in redacting these four documents, OAG is willing to voluntarily provide these documents to the Movant, as set forth in OAG's Responses and Objections dated August 12, 2022, a true and correct copy of which are attached hereto as Exhibit 8.

**Movant's history of criticizing the Investigation attacking cooperating witnesses, and calling for additional access to OAG documents related to the Investigation**

41. Throughout the Investigation and since, the Investigative Team learned of multiple efforts by Movant's advisors to obtain negative information about Investigative Team members and women who had accused then-governor Cuomo of misconduct. *See* Chun Decl. ¶ 4.

42. By letter to the Chair of the AJC dated September 13, 2021, Movant's counsel attacked the Investigation, Report, Kim and Clark, as well as several of the women who accused Movant of sexual harassment. The letter included a detailed personal attack on Charlotte Bennett's "credibility," based on an anonymous and unverified allegation that she "falsely" accused a fellow student of sexual assault while she was a student at Hamilton College. *See Cuomo v. The New York State Assembly Judiciary Committee*, 1:22-mc-00279 (E.D.N.Y.) (LDH)(TAM) Dkt. No. 16-11.

14

43. Independent of the subpoena he served on OAG in the Trooper 1 Action, Movant has sought access, and/or criticized OAG for not providing additional access, to materials from the Investigation on over a dozen occasions, including the following:

- Attached hereto as Exhibit 9 is a true and correct copy of a letter sent to OAG on August 4, 2021, one day after the issuance of the Report, from counsel to the Executive Chamber (part of the office of the Governor). In the letter, counsel to the Executive Chamber attacks the Report, largely based on purportedly negative information about and attacks on Kim and Clark, and also complains about their client's lack of access to underlying materials from the Investigation.

- On August 6, 2021, at a government press conference challenging the Report, Movant's counsel stated: "We do not have the underlying evidence. That has not been provided to us from that report. We have not had a chance to examine the transcripts or even memos of interview of the 179 people that the Attorney General interviewed . . . What we have asked for and are entitled to is the evidence. We are entitled to get the transcripts, the underlying documents that support that report." Video of the press conference is *available at* https://www.youtube.com/watch?v=FP6_KMVBnNk (last accessed Nov. 8, 2022); *see* video at mark 1:48; 22:50.

- On August 7, 2021, during an appearance on CNN, Movant's counsel called the report "shoddy" and "biased" and stated, "they haven't shared all of their evidence." Video interview *available at* https://www.cnn.com/videos/politics/2021/08/07/rita-glavin-attorney-ny-governor-andrew-cuomo-accusers-bts-nr-vpx.cnn (last accessed Nov. 8, 2022); *see* video at mark 4:10.

- On August 9, 2021, during an appearance on MSNBC, Movant's counsel disputed the Report and stated "the attorney general is not giving the governor or me access to [evidence]. I have asked the Attorney General for access to evidence such as the testimony…it is really important that I get access to it." Video interview *available* at https://www.youtube.com/watch?v=hNgx0fKG3-Q (last accessed Nov. 8, 2022); *see* video at mark 3:40-4:10.

- Also on August 9, 2021 during an appearance on CNN, Movant's counsel criticized the Report and stated "the governor should be allowed the opportunity to see that evidence and do a fulsome submission" to the Assembly in connection with the impeachment inquiry. Video interview available at https://www.facebook.com/cnn/videos/1277181886064430/?extid=SEO---- ((last accessed Nov. 8, 2022); *see* video at mark 1:58-2:04.

- On August 10, 2021, during a government press conference, Movant's counsel criticized Kim, Clark and the Report and stated "the investigators have not provided me, the lawyer for the governor, who is being asked to give a submission to the Assembly, a single transcript to allow him to respond. They haven't even given him his own." Video of the press conference is *available at*

15

- https://www.youtube.com/watch?v=otxfPhSoBkc&t=1s (last accessed Nov. 8, 2022); *see* video at mark 36:38-39:25.

- On August 20, 2021, at a virtual briefing, Movant's counsel stated, "I still haven't been given access to the evidence. There are 79,000 documents that were gathered, there are 179 interviews conducted including 41 transcribed and 138 for which I assume there are memos . . . I have not been given access to any of that material despite having made requests to the Assembly Judiciary Committee and to the Attorney General. I will renew those requests as I attempt to put forward a full submission on the governor's behalf." *See* Gov. Cuomo's outside counsel requests corrections to sexual harassment report released by NY Attorney General (Aug. 20, 2021), *available at* https://www.wgrz.com/article/news/local/gov-cuomos-outside-counsel-requests-corrections-to-sexual-harassment-report-released-by-ny-attorney-general/71-00ef5243-493d-4830-8f71-73e4aeee52e9 (last accessed Nov. 8, 2022); video recording of virtual briefing *available at* https://www.youtube.com/watch?v=UpmviENazuA (*see* mark 3:25-4:00).

- On September 29, 2021, Movant's campaign published a press release, publicly calling on the Attorney General to answer the following question, among others:

    "The Governor requested to record his own interview – why did you refuse that request? And why won't you release the video tape of his own testimony to him or publicly? Why haven't you given the evidence and transcripts that you allegedly used to reach your conclusions over to the Governor and those you named in the report so that they could properly defend themselves?" Cuomo Press Release (Sept. 29, 2021), *available at* https://www.andrewcuomo.com/news/new-yorkers-deserve-answers (last accessed Nov. 8, 2022).

- On October 20, 2021, Movant tweeted a link to his counsel's submission to OAG, attacking Kim and Clark, and several of the women who accused Movant of sexual harassment, and claiming the Investigation and Report were not fair because, among other reasons, Movant was not "provided the materials underlying the Report despite repeated written requests for them, and was therefore deprived of the opportunity to adequately respond defense prior to his resignation." Tweet available at https://twitter.com/andrewcuomo/status/1450866007359332352?s=20&t=TmON1co9ny8QH0aT_L0kaA (last accessed Nov. 8, 2022); Cuomo submission to OAG available at https://www.andrewcuomo.com/sites/default/files/files/documents/2021.10.20SubmissiontoAG.pdf (last accessed (Nov. 8, 2022) (generally and at p. 150.)

- On November 18, 2021, Movant tweeted a link to a letter submitted to OAG by his counsel, which requested OAG "provide [Movant] with immediate access to **all** of the underlying evidence (without redactions) of the Report, including all notes and memoranda concerning the more than 179 interviews your Office conducted, as well as the 74,000 documents your Office collected (as we have previously requested of you on numerous occasions and received no response)." Tweet available at https://twitter.com/andrewcuomo/status/1461444967315001354 (last accessed Nov. 8,

16

- 2022); public link to Movant's counsel's November 18, 2021 letter to OAG available at https://www.andrewcuomo.com/sites/default/files/files/documents/2021-11-18-letter-to-ag-final.pdf (last accessed Nov. 8, 2022).

- Also on November 18, 2021, Movant's counsel held a press conference announcing her November 18, 2021 letter to OAG, and, referring to the Attorney General, stated "She's not given us access as we sit here today to all the evidence… I still don't have all the evidence" while displaying a slide saying: "The Attorney General must immediately release all evidence to Governor Cuomo." Video recording of the press conference is *available at* https://www.audacy.com/1010wins/news/state/cuomo-lawyer-ag-letitia-james-compromised-should-recuse-from-cuomo-probes(last accessed Nov. 8, 2022) at mark 23:48-23:53.

- On December 16, 2021, Movant's counsel held a press conference calling for the evidence underlying the report and stating "The attorney general's office has not responded to my written requests for all the evidentiary materials underlying the report and the fact that we don't have access to the evidence, we don't have access to the evidence underlying that report, that completely handicaps our ability to respond or defend against it." Video recording of the press conference is available at https://vimeo.com/666520727 (last accessed Nov. 8, 2022) at mark 16:53-17:38.

- On January 13, 2022, Movant's counsel held a two-hour-long live-streamed press conference attacking the Report, expressing frustration that her requests for evidence to OAG had been ignored, and stating "I wish we had all of [the AG's evidence]. I wish the attorney general would give me everything, she won't." Video recording if the press conference is https://www.youtube.com/watch?v=QrZVv_XuR18 (last accessed Nov. 8, 2022); *see at* mark 1:12:23-1:12:30.

- On January 13, 2022, Movant's counsel was interviewed on live television by Dan Abrams, where she challenged the Investigation and Report and questioned why OAG had not shared additional documents and interview memos with her. https://www.youtube.com/watch?v=A_6-Wav5frc&t=195s (last accessed Nov. 8, 2022) at mark 8:12- 8:33.

- On February 10, 2022, in a livestreamed press conference, Movant's counsel disputed the Report and challenged the fact that her requests for evidence from OAG had not been met several times, including stating, "She ignored our request and still does today, for all the evidentiary materials underlying the report. Why won't she give me the evidence?" Video recording of the press conference is *available at* https://vimeo.com/687956093 (last accessed Nov. 8, 2022); *see at* mark 5:31-5:39.

- During that same press conference on February 10, 2022, Movant's counsel, announced that Movant would be personally making a complaint to the Attorney Grievance Committee of the State Supreme Court addressing what he believed to be serious ethics concerns regarding the Investigation, the Report and the manner in which transcripts from the Investigation were released publicly. Video recording of the press conference

17

is *available at* https://vimeo.com/687956093 (last accessed Nov. 8, 2022); *see* at mark 32:43-33:50.

- On September 13, 2022, The New York Times published an article headlined, "Cuomo Files Ethics Complaint Against Letitia James," which included a link to a 48-page document at https://www.nytimes.com/2022/09/13/nyregion/andrew-cuomo-letitia-james.html (last accessed Nov. 8, 2022) with subject line "Complaint by Former Governor Andrew M. Cuomo Against Attorney General Letitia James, Joon Kim, Esq., and Anne Clark, Esq." ("Ethics Complaint"). The Ethics Complaint criticizes the Investigation, the Report, Kim, Clark, several of the women who accused Movant of sexual harassment, and complains that OAG has not provided Movant the opportunity to scrutinize all of the evidence underlying the report. *See* Ethics Complaint at pp. 17-38, 41-42. At the time of the New York Times' publication of the Ethics Complaint, OAG, Attorney General Letitia James, Joon Kim, and Anne Clark had not yet received or obtained a copy of the Ethics Complaint linked to in the article. To date, OAG, Attorney General Letitia James, Joon Kim and Anne Clark have not received a copy of the Ethics Complaint; the New York Times has been their sole source for reviewing the Ethics Complaint.

44. To date, OAG has not provided to Movant, or to anyone other than fellow government investigators, materials beyond what has been made publicly available on OAG's website.

**Cuomo's Nonparty Subpoena to OAG**

45. On July 11, 2011, Movant served on OAG the Subpoena dated July 7, 2022. A true and correct copy of the Subpoena is attached hereto as Exhibit 10.

46. OAG timely objected to the Subpoena on July 25, 2022 and, after meeting and conferring, served additional responses and objections on August 12, 2022 and a categorical privilege log on August 15, 2022. Attached hereto as Exhibit 11 is a true and correct copy of OAG's July 25, 2022 Initial Response and Objection. Attached hereto as Exhibit 12 is a categorical privilege log OAG provided to Movant on August 15, 2022.

47. Counsel to the parties met and conferred on August 4, 2022 and August 15, 2022.

48. During a phone call between counsel to the parties on August, 15, 2022, Cuomo's counsel confirmed that the broad language of the Subpoena was intended to call for internal

18

communications, including emails, between members of the Investigative Team concerning witness testimony, interviews, and documents collected in the Investigation.

49. The Subpoena also calls for internal OAG communications predating the March 1, 2021 Referral as well as draft documents and reports from the Investigative Team to OAG. *See* Ex. 10.

50. In an attempt to resolve the Subpoena amicably and reasonably, OAG offered to voluntarily provide Cuomo with documents collected in the Investigation that mention Trooper 1 by name, which are not already publicly available on OAG's website. *See* Ex. 8.

51. Movant then determined the parties had reached an impasse based on (1) his view that he was entitled to materials concerning all 179 witnesses and all 74,000 documents collected regardless of whether they were connected to Trooper 1 and (2) his view that no materials connected to the Investigation, including internal OAG emails, internal notes and communications amongst members of the Investigative Team, and drafts of the Report were protected by any privileges.

Executed on November 8, 2022

/s/Serena Longley
Serena Longley

19