# Exhibit 2

FILED UNDER SEAL

# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNOR ANDREW M. CUOMO,<br><br>                              Movant,<br><br>         v.<br><br>LINDSEY BOYLAN,<br><br>                    Respondent. | Case No. 23-mc-01587 (LDH) (TAM) |
| TROOPER 1,<br><br>                         Plaintiff,<br><br>v.<br><br>NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA, and RICHARD AZZOPARDI,<br><br>                         Defendants. | Case No. 22-cv-00893 (LDH) (TAM) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**FORMER GOVERNOR ANDREW M. CUOMO'S MOTION TO COMPEL**
**LINDSEY BOYLAN'S COMPLIANCE WITH SUBPOENA AND IN OPPOSITION TO**
**LINDSEY BOYLAN'S AND TROOPER 1'S MOTIONS TO QUASH**
**SUBPOENAS CONCERNING LINDSEY BOYLAN**

**GLAVIN PLLC**
Rita M. Glavin
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

**SHER TREMONTE LLP**
Theresa Trzaskoma
Allegra Noonan
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

PROCEDURAL HISTORY................................................................................................. 5

ARGUMENT ..................................................................................................................... 6

I.    TROOPER 1 AND MS. BOYLAN DO NOT HAVE STANDING TO OBJECT
      TO THIRD-PARTY SUBPOENAS ........................................................................ 6

II.   THE SUBPOENAS SEEK RELEVANT INFORMATION BASED ON
      OPERATIVE ALLEGATIONS IN TROOPER 1'S COMPLAINT ................................ 8

III.  THE SUBPOENAS ARE NOT IN FURTHERANCE OF AN IMPROPER
      PURPOSE .......................................................................................................... 16

IV.   THE SUBPOENAS ARE PROPORTIONAL AND DO NOT IMPOSE UNDUE
      BURDEN ON MS. BOYLAN OR ANYONE ELSE ...................................................... 20

CONCLUSION................................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*6340 NB LLC v. Capital One, N.A.,*
   No. 20-CV-02500 (JMA)(JMW), 2022 WL 17832860 (E.D.N.Y. Dec. 21, 2022)..................9

*Barkley v. Olympia Mortgage Co.,*
   No. 04-cv-875 (RJD) (KAM), 2008 WL 11434464 (E.D.N.Y. July 21, 2008)......................18

*Breaking Media, Inc. v. Jowers*,
   No. 21 Misc. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021)..................................15

*Butler v. Craft*,
   No. 1:16-CV-01158, 2017 WL 1429896 (W.D. La. Apr. 19, 2017) ......................................16

*EEOC v. SOL Mexican Grill LLC,*
   No. CV 18-2227, 2019 WL 2896933 (D.D.C., 2019) ...........................................................16

*Empire State Ethanol & Energy, LLC v. BBI Int'l*,
   No. 1:08-CV-623 (GLS/DRH), 2009 WL 790962 (N.D.N.Y. Mar. 20, 2009) ......................18

*Fritz v. LVNV Funding, LLC*,
   587 F. Supp. 3d 1 (E.D.N.Y. 2022) ......................................................................................21

*Gheesling v. Chater*,
   162 F.R.D. 649 (D. Kan. 1995) ............................................................................................16

*Godson v. Eltman, Eltman & Cooper, P.C.*,
   285 F.R.D. 255 (W.D.N.Y. 2012)..........................................................................................15

*Haselhorst v. Wal-Mart Stores, Inc.*,
   163 F.R.D. 10 (D. Kan. 1995) ..............................................................................................16

*Hasemann v. Gerber Prods. Co.*,
   No. 15-cv-2995, 2018 WL 5651210 (E.D.N.Y. Aug. 28, 2018) .............................................9

*Hughes v. Twenty-First Century Fox, Inc.*,
   327 F.R.D. 55 (S.D.N.Y. 2018) ............................................................................................20

*In re Alper Holdings USA, Inc.*,
   398 B.R. 736 (S.D.N.Y. 2008)..............................................................................................15

*In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*,
  313 F.R.D. 32 (E.D. La. 2016) ............................................................. 16

*Ireh v. Nassau Univ. Med. Ctr.*,
  No. CV 06-09(LDW)(AKT), 2008 WL 4283344 (E.D.N.Y. Sep. 17, 2008) ........................... 6

*Johnson v. Riverhead Cent. Sch. Dist.*,
  No. CV 14-7130 (DRH) (AKT), 2016 WL 4507002 (E.D.N.Y. Aug. 26, 2016) ..................... 8

*Lifeguard Licensing Corp. v. Kozak*,
  No. 15 Civ. 8459 (LGS)(JCF), 2016 WL 3144049 (S.D.N.Y. May 23, 2016) ....................... 15

*Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Win Const.*,
  88 F. Supp. 3d 250 (S.D.N.Y. 2015) ....................................................... 8

*McAnneny v. Smith & Nephew, Inc.*,
  No. 3:17CV00012 (AWT), 2018 WL 1383400 (D. Conn. Mar. 19, 2018) ............................ 22

*McGowan v. JPMorgan Chase Bank, N.A.*,
  No. 18 Civ. 8680 (PAC) (GWG), 2020 WL 1974109 (S.D.N.Y. Apr. 24, 2020) ................... 16

*Miller v. Arab Bank, PLC*,
  Nos. 1:18-CV-2192 (HG)(PK), 1:18-CV-4670 (HG)(PK),
  2023 WL 2731681 (E.D.N.Y. Mar. 31, 2023) .............................................. 9

*Mills v. Steuben Foods, Inc.*,
  No. 19-CV-1178, 2023 WL 179579 (W.D.N.Y. Jan. 13, 2023) .............................. 16

*Muniu v. Amboy Neighborhood Ctr., Inc.*,
  No. 98CV2211FBJMA, 2001 WL 370226 (E.D.N.Y. Apr. 11, 2001) ........................... 19

*New York Stock Exch., Inc. v. Sloan*,
  No. 71CV2912, 1976 WL 169086 (S.D.N.Y. Oct. 21, 1976) ................................ 16

*Obiajulu v. City of Rochester, Dep't of Law*,
  166 F.R.D. 293 (W.D.N.Y. 1996) .......................................................... 16

*Park West Radiology v. CareCore Nat'l LLC*,
  547 F. Supp. 2d 320 (S.D.N.Y. 2008) .................................................... 19

*Perry v. The Margolin & Weinreb Law Grp. LLP*,
  No. 14-3511 (JS)(AKT), 2015 WL 4094352 (E.D.N.Y. July 7, 2015) ...................... 9

*Sali v. Zwanger & Pesiri Radiology Grp., LLP*,
  No. 19 CV 275 (FB) (CLP), 2022 WL 1085508 (E.D.N.Y. Jan. 10, 2022) ................. 6

*Shih v. Petal Card, Inc.*,
  No. 18-CV-5494 (JFK) (BCM), 2021 WL 5279395 (S.D.N.Y. Nov. 12, 2021) ............... 19

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
    No. CV 12-6383 (JFB) (AKT), 2016 WL 4703656 (E.D.N.Y. Sep. 7, 2016)............................ 9

*Sollitto v. Shulkin,*
    No. 15-CV-5913 (MKB) (VMS), 2017 WL 1403218 (E.D.N.Y. Apr. 19, 2017) .................. 16

*Tucker v. Interstate Home Loan Ctrs., Inc.*,
    20-CV-01906 (JMA)(JMW), 2020 WL 4079580 (E.D.N.Y. Sept. 6, 2022)............................ 19

*United States v. Figueroa*,
    548 F.3d 222 (2d Cir. 2008) ................................................................................................ 19

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    No. 12 Civ. 6811(CM)(JCF), 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ................... 6, 7, 22

**Rules**

Fed. R. Civ. P. 26(b) ............................................................................................................... 8

Fed. R. Evid. 412 ............................................................................................................ 7, 19, 20

Fed. R. Evid. 608 ................................................................................................................ 18, 19

**Other Authorities**

*Discovery as Regulation*,
    119 Mich. L. Rev. 71 (2020) .............................................................................................. 17

iv

Governor Cuomo"[1] submits this memorandum of law: (i) in further support of his motion to compel Ms. Boylan's subpoena responses[2] ("Motion to Compel" or "Boylan ECF No. 3"); (ii) in response to Ms. Boylan's opposition to the Motion to Compel and her cross-motion to quash ("Opposition" or "Boylan ECF No. 17"); (iii) and in opposition to the motions to quash filed by Boylan and Trooper 1[3] ("Boylan Motion to Quash" or "T1 ECF No. 87" and "Trooper 1 Motion to Quash" or "T1 ECF No. 82-1") regarding subpoenas served on ESD, the Executive Chamber, Howard Zemsky ("Zemsky"), and Elizabeth Fine ("Fine") (the "Additional Nonparty Subpoenas" and, together with the Boylan Subpoena, the "Boylan-Related Subpoenas"). For the reasons set forth below, the Court should grant Governor Cuomo's Motion to Compel and deny the pending Motions to Quash with respect to the Boylan-Related Subpoenas.

## <u>INTRODUCTION</u>

Governor Cuomo did not draft or file Trooper 1's Complaint and he did not inject Lindsey Boylan into this litigation. Trooper 1 did that herself. Now, as Governor Cuomo seeks to fully challenge Trooper 1's allegations, Ms. Boylan and Trooper 1 are trying to block Governor Cuomo from defending himself. It is improper and unfair. Governor Cuomo has a fundamental right to take full discovery on issues raised by Trooper 1, including with respect to Ms. Boylan's credibility and motives.

For her part, Ms. Boylan broadly seeks to quash all discovery related to her. She argues that it is "invasive, harassing, and entirely irrelevant," T1 ECF No. 87 at 3-4, and asserts that it is motivated by "political gamesmanship and personal animus," Boylan ECF No. 17 at 3. Ms. Boylan

---

[1] For ease of reference, we use terms reflected on the attached Appendix of Defined Terms.

[2] This briefing can be found on the Boylan Miscellaneous Action docket. 23-mc-01587 (LDH) (E.D.N.Y.) (also "Boylan ECF"), Boylan ECF Nos. 3 and 19 respectively.

[3] This briefing can be found on the Trooper 1 Action docket. 22-cv-893(LDH)(TAM) (E.D.N.Y.) (also "T1 ECF"), T1 ECF Nos. 82 and 87, respectively.

is wrong. As reflected in Governor Cuomo's opening brief, Ms. Boylan's effort to portray herself as an inconsequential bystander is contrary to Trooper 1's Complaint, to publicly available facts, and to Ms. Boylan's own statements. Using the machinery of her campaign, Ms. Boylan created a public firestorm, recruited other complainants to further her political goals, and shielded her own allegations from any meaningful scrutiny. She continues to advance this agenda, all while attempting to stifle Governor Cuomo's rights to take discovery on Trooper 1's allegations. Truthfully, the political gamesmanship and personal animus are Ms. Boylan's, and have been from the start. And even if that were not so, Trooper 1, not Governor Cuomo, chose to involve Ms. Boylan in this litigation, so neither can credibly say discovery relevant to issues raised in the Complaint are, in fact, irrelevant.

The connection between Trooper 1's Complaint and the OAG Report is undeniable. Trooper 1 copied and pasted entire sections of the OAG Report into her complaint. Thus, Ms. Boylan's role in connection with the facts and conclusions in the OAG Report is fair game in discovery. Governor Cuomo does not seek discovery from Ms. Boylan as part of a battle with the OAG; he seeks it because Trooper 1 is attempting to build her case on the flawed foundation of the OAG Report. As such, it is relevant that Ms. Boylan provoked other women to come forward with complaints—***including other women referenced in Trooper 1's Complaint***—and that she used the cultural moment of the #MeToo movement, personal flattery, and even threats to try to topple Governor Cuomo. This has been borne out by the limited discovery Governor Cuomo has obtained so far. Ms. Boylan was not, as she suggests, an unwitting participant in the events that led to Trooper 1's lawsuit. Rather, she was the central instigator. Time and again, including as recently as a few months ago, Ms. Boylan deliberately put herself at the center of allegations against Governor Cuomo and deliberately communicated with others about her and their

allegations. Ms. Boylan sent numerous private messages to former colleagues and relentlessly urged them to come forward in support of her attacks on Governor Cuomo, pressuring at least one other woman (and likely more) to make false accusations against Governor Cuomo based on nothing more than rank speculation, to exaggerate wildly about the Executive Chamber environment, and to recklessly present unsubstantiated office gossip as confirmed fact. This is the ground upon which Trooper 1 brings her claims.

We believe discovery will confirm that Ms. Boylan recruited other women because she well knew that her own claims would not stand up to meaningful scrutiny, especially if the actual circumstances of her departure from ESD were uncovered. So she (and another like-minded woman who stood to benefit professionally from making false sexual harassment allegations against Governor Cuomo) manufactured a wave of complaints.

Ms. Boylan's defiance against the subpoena issued to her has been near absolute as she seeks to avoid a reckoning for her role in giving rise to Trooper 1's lawsuit. Likewise, though Trooper 1 injected Ms. Boylan into the litigation and placed her credibility at issue by relying on Ms. Boylan's allegations and the OAG's Report, Trooper 1 now moves to quash certain subpoenas seeking information that weighs heavily on Ms. Boylan's credibility and therefore on the allegations in the Complaint, such as Ms. Boylan's prior relationship with her boss at ESD. Nothing in Ms. Boylan's papers, or in Trooper 1's papers, provides any legitimate objection to the Boylan-Related Subpoenas.

***First***, Ms. Boylan broadly argues that the Boylan-Related Subpoenas seek irrelevant material. She is wrong. As detailed in Governor Cuomo's opening brief, the Boylan-Related Subpoenas demand materials directly responsive to the Boylan-related allegations. Compl. ¶¶ 103-116. Because Trooper 1 continues to pursue these allegations—and because this Court has not

3

ruled that the allegations are irrelevant and should be stricken—Governor Cuomo is entitled to take discovery into their veracity and Ms. Boylan's credibility. Likewise, Governor Cuomo is entitled to seek discovery concerning Ms. Boylan's role in provoking and pressuring other women, including those in Trooper 1's Complaint, to come forward. In this regard, it bears emphasizing that the OAG looked into the exact same issues in the course of investigating Ms. Boylan's allegations and subpoenaed almost the exact same materials, including, among other things, Ms. Boylan's communications with other complainants and the circumstances of Ms. Boylan's departure from ESD. To avoid this uncomfortable fact, Ms. Boylan and Trooper 1 contend that, even if the information is relevant, Ms. Boylan's privacy interests outweigh the need for this discovery. This argument is particularly baseless. After extensive publicization of these issues, Ms. Boylan cannot now claim an impregnable privacy interest in materials at the heart of Trooper 1's allegations.

*Second*, Ms. Boylan contends that Governor Cuomo is using the Boylan-Related Subpoenas for the "improper purpose" of harassing her and re-litigating the OAG Report. This is nothing more than a convenient excuse. Taking civil discovery from a material witness directly relevant to allegations concerning that witness does not constitute harassment.[4]

*Third*, Ms. Boylan baselessly asserts that the Boylan-Related Subpoenas are overly broad, not proportional, and/or unduly burdensome. Ms. Boylan offers nothing to back up her arguments. She does not, for example, provide any information regarding the effort she would have to undertake to comply with the subpoena directed to her. Nor does she offer any reason to believe

---

[4] The reliability of the OAG Report is, in fact, directly at issue insofar as Trooper 1 took the OAG's accusations against Governor Cuomo and repackaged them into a federal lawsuit and indicated that she intends to rely directly on the OAG Report to prove her claims. Under these circumstances, Governor Cuomo is entitled to demonstrate that OAG Report's conclusions that he engaged in a pattern of harassment are not only false but are also based on a shoddy and biased investigation. Moreover, the notion in Trooper 1's Complaint that the OAG Investigation reflected a fair and "exhaustive" fact-finding exercise is demonstrably untrue, as discussed below in Section III.

that other nonparties would be unduly burdened by complying with the subpoenas to them. Ms. Boylan also fails to establish that the relevance of the materials requested is so marginal that the requisite burden of production is unjustified; she does not show how the Requests are so broad that they should be quashed; and she points to no public source where the requested information can be found. The fact is Governor Cuomo's subpoenas are narrowly tailored to issues of relevance to Trooper 1's allegations and are well within the bounds of permissible discovery.

As much as Ms. Boylan claims that the Boylan-Related Subpoenas are a retaliatory lash against her for making public allegations, they are nothing more than routine discovery. So long as Trooper 1's allegations about Ms. Boylan remain in the case, the Boylan-Related Subpoenas should be enforced.

## PROCEDURAL HISTORY

After serving the Boylan Subpoena,[5] Governor Cuomo noticed the ESD Subpoena, the Fine Subpoena, and the Zemsky Subpoena on all Parties on May 10 and 11, 2023. Declaration of Theresa Trzaskoma dated July 19, 2023 ("Trzaskoma Decl.") ¶ 3; Boylan ECF No. 18-7; Boylan ECF No. 18-8; Boylan ECF No. 18-9.[6] Trooper 1 objected to each notice and instructed Governor Cuomo's counsel not to serve these subpoenas. Trzaskoma Decl. ¶ 3. Consequently, the Parties met and conferred on May 15, 2023, where Trooper 1's counsel reiterated her objections and stated that Court intervention would be necessary to resolve them. Trzaskoma Decl. ¶ 4. In light of this representation, the Parties filed a joint letter to the Court on June 5, 2023 outlining the dispute. T1

---

[5] The procedural history of the Boylan Subpoena up through the filing of Governor Cuomo's Motion to Compel can be found in Boylan ECF No. 3 at 2-4.

[6] The fourth Additional Nonparty Subpoena—the subpoena to the Executive Chamber—was noticed on June 20, 2023, and also garnered an objection from Trooper 1. Trzaskoma Decl. ¶ 9; Boylan ECF No. 18-11.

ECF No. 78 at 2-3. The Court granted Trooper 1 leave to file a discovery motion on the topics outlined in the letter and requested a proposed briefing schedule.

During a June 7, 2023 meet and confer, Trooper 1's counsel informed Governor Cuomo's counsel that Ms. Boylan also intended to submit briefs on the issues raised in the joint letter. Trzaskoma Decl. ¶ 7. Indeed, on June 12, 2023, Ms. Boylan requested permission from the Court to be heard. T1 ECF No. 79. The following day, the Parties submitted a joint letter proposing a briefing schedule, which included Ms. Boylan, T1 ECF No. 80, which the Court then adopted.

Ms. Boylan's opposition to Governor Cuomo's motion to compel Ms. Boylan's compliance with the Boylan Subpoena (and cross-motion to quash that subpoena) was filed on the miscellaneous action docket on June 28, 2023. Boylan ECF No. 17. Both Trooper 1's and Ms. Boylan's motions to quash the Boylan-Related Subpoenas were filed in the Trooper 1 Action on June 30, 2023. T1 No. ECF 82; T1 No. ECF 87. This brief responds to all three.

## ARGUMENT

### I.   TROOPER 1 AND MS. BOYLAN DO NOT HAVE STANDING TO OBJECT TO THIRD-PARTY SUBPOENAS

In this Circuit, the law is clear: a party lacks standing to move to quash or modify a subpoena directed at a nonparty unless the party seeks to protect a personal privilege or right. *See Sali v. Zwanger & Pesiri Radiology Grp., LLP,* No. 19 CV 275 (FB) (CLP), 2022 WL 1085508, at *17 (E.D.N.Y. Jan. 10, 2022); *Ireh v. Nassau Univ. Med. Ctr.*, No. CV 06-09(LDW)(AKT), 2008 WL 4283344, at *3 (E.D.N.Y. Sep. 17, 2008). "A party lacks standing to challenge, on grounds of relevance on burden, a subpoena served on a non-party." *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811(CM)(JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (collecting cases). The moving party bears the burden to establish standing. *See id.*

For her part, Trooper 1 moves to quash, at least in part, eight nonparty subpoenas, including the subpoena issued to Charlotte Bennett,[7] the Boylan Subpoena, the Additional Nonparty Subpoenas, and several other subpoenas that Ms. Boylan has not yet even moved to quash, arguing that these subpoenas run afoul of FRE 412. T1 ECF No. 82-1 at 2-4. Substantively, however, Trooper 1 fails to assert any personal privacy or privilege interest associated with her motion to quash the Boylan-Related Subpoenas.[8] Therefore, Trooper 1's motion to quash and for a protective order must fail.

Similarly, nearly all of Ms. Boylan's objections to the Additional Nonparty Subpoenas boil down to relevance and burden arguments that she does not have standing to raise. *See US Bank Nat'l Ass'n*, 2012 WL 5395249, at *2. With respect to documents concerning Ms. Boylan's employment history and documents concerning Ms. Boylan's prior allegations,[9] Ms. Boylan exclusively raises relevance and burden arguments. T1 ECF No. 87 at 8-11, 13-15. And with respect to documents concerning Ms. Boylan's relationship with Howard Zemsky, Ms. Boylan also raises relevance and burden arguments. T1 ECF No. 87 at 12-13. The Federal Rules of Civil Procedure do not allow Ms. Boylan to challenge subpoenas to others on burden or relevance grounds, however, and Governor Cuomo respectfully submits that the Court should not consider Ms. Boylan's improper arguments.[10]

---

[7] Trooper 1's and Charlotte Bennett's motions to quash subpoenas issued to Ms. Bennett and Hamilton College are addressed in a separate brief filed today in the Trooper 1 Action.

[8] The brief addressing Trooper 1's and Charlotte Bennett's motions to quash subpoenas issued to Ms. Bennett and Hamilton College more fully addresses Trooper 1's lack of standing at pages 6-8.

[9] What is more, Ms. Boylan's motion does not even attempt to describe how documents concerning Ms. Boylan's prior allegations against Governor Cuomo, which have been the subject of extensive public reporting, could possibly implicate any privacy interest. *See* T1 ECF No. 87 at 8 n.10. On this basis, Ms. Boylan lacks standing to challenge the Requests for any such materials.

[10] Ms. Boylan's only other argument—that information concerning her relationship with Mr. Zemsky is not discoverable under FRE 412—is the only one that she has standing to pursue, and that argument is addressed on the merits below.

## II.   THE SUBPOENAS SEEK RELEVANT INFORMATION BASED ON OPERATIVE ALLEGATIONS IN TROOPER 1'S COMPLAINT

As demonstrated in Governor Cuomo's opening brief, the Boylan-related information is directly relevant to Trooper 1's claim. In opposition, Ms. Boylan asserts that the Boylan-Related Subpoenas seek "exclusively irrelevant material." Boylan ECF No. 17 at 10; *accord* T1 ECF No. 87 at 7. In support, Ms. Boylan makes three points, none of which has any merit.

*First*, Ms. Boylan argues that any materials requested by the Boylan-Related Subpoenas are "completely irrelevant" because "Ms. Boylan is not even a party to this case." T1 ECF No. 87 at 12. This argument has no basis. Ms. Boylan is a significant part of Trooper 1's Complaint, and thus she is plainly relevant. In addition, Ms. Boylan acknowledged in her testimony to the OAG that she was connected, either directly or indirectly, with one woman in the PSU who she thought might come forward against Governor Cuomo and presumably that was Trooper 1. Trzaskoma Decl. Ex. 5 at 226. But even if there were only marginal relevance to the information sought by the subpoenas, the law still authorizes such discovery. In this regard, the purported relevance standards Ms. Boylan seeks to apply are too stringent and are not the law. "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Johnson v. Riverhead Cent. Sch. Dist.*, No. CV 14-7130 (DRH) (AKT), 2016 WL 4507002, at *8 (E.D.N.Y. Aug. 26, 2016). The Advisory Committee Notes to FRCP 26 acknowledge that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Fed. R. Civ. P. 26(b) advisory committee's note to 1946 amendment; *see also Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Win Const.*, 88

F. Supp. 3d 250, 270 (S.D.N.Y. 2015) (same). Given the broad ambit of civil discovery, courts routinely compel production of materials that sit even on the outer limits of relevance.[11]

In arguing against relevance, Ms. Boylan puts the cart before the horse. She conflates the relevance standard for purposes of discovery with the relevance standard applicable to admission of evidence. Because "[d]iscovery is, of course, broader than what is admissible or what may be admitted at trial," courts may conclude that materials are relevant for purposes of discovery while reserving a ruling "on the admissibility or *even relevance* at trial" of those same materials. *6340 NB LLC v. Capital One, N.A.*, No. 20-CV-02500 (JMA)(JMW), 2022 WL 17832860, at *2 n.2 (E.D.N.Y. Dec. 21, 2022) (emphasis added) (finding requested deposition topic relevant for purposes of discovery but reserving ruling on whether that topic would be relevant at trial). For this reason, the relevance standard "is applied more liberally during discovery than at trial." *Miller v. Arab Bank, PLC*, Nos. 1:18-CV-2192 (HG)(PK), 1:18-CV-4670 (HG)(PK), 2023 WL 2731681, at *3 (E.D.N.Y. Mar. 31, 2023). While the Court may ultimately conclude that Ms. Boylan's allegations (and materials connected thereto) are not admissible to prove any of the elements of Trooper 1's hostile work environment claims or retaliation claims at trial, Boylan ECF No. 17 at 17-18, information about those allegations is still within the bounds of information that is discoverable because Trooper 1 pleaded them as such.

The baseless nature of Ms. Boylan's relevance arguments is reflected in the fact that the OAG and Governor Cuomo requested many of the same categories of materials from Ms. Boylan and others, and both explore similar issues of motive. *Compare* Trzaskoma Decl. Ex. 1 at 7-8, *with*

---

[11] *See, e.g.*, *Hasemann v. Gerber Prods. Co.*, No. 15-cv-2995, 2018 WL 5651210, at *1 (E.D.N.Y. Aug. 28, 2018) (compelling production of materials that were "marginally relevant"); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. CV 12-6383 (JFB) (AKT), 2016 WL 4703656, at *17 (E.D.N.Y. Sep. 7, 2016) (compelling response to interrogatory that was "marginally relevant"); *Perry v. The Margolin & Weinreb Law Grp. LLP*, No. 14-3511 (JS)(AKT), 2015 WL 4094352, at *4 (E.D.N.Y. July 7, 2015) (compelling production of materials that were "marginally relevant").

Boylan ECF No. 18-5 at 5-7. The OAG Subpoena requested all documents related to complaints concerning the Governor and investigations thereof, Trzaskoma Decl. Ex. 1 at 7; as do the Boylan-Related Subpoenas, Boylan ECF No. 18-5 at 5-6. The OAG Subpoena requested all documents concerning Ms. Boylan's communications with or about other complainants, Trzaskoma Decl. Ex. 1 at 7; as do the Boylan-Related Subpoenas, Boylan ECF No. 18-5 at 5-6. The OAG Subpoena requested all documents concerning Ms. Boylan's employment history at the Executive Chamber as well as all communications between Ms. Boylan and members of the Executive Chamber, Trzaskoma Decl. Ex. 1 at 7; as do the Boylan-Related Subpoenas, Boylan ECF No. 18-5 at 5-6. And the OAG Subpoena requested all documents concerning Ms. Boylan's communications with the public and the media, Trzaskoma Decl. Ex. 1 at 7; as do the Boylan-Related Subpoenas, Boylan ECF No. 18-5 at 5-6. It is not surprising that the OAG also requested the same information from Ms. Boylan given its clear relevance to test the veracity and credibility of Ms. Boylan's allegations.

Indeed, Ms. Boylan's public statements both before *and after* her allegations suggest multiple ulterior motives to accuse Governor Cuomo, including personal animus toward him and his senior staff members. Ms. Boylan harbored a grudge toward Governor Cuomo's closest women advisors and staffers—at one point referring to them as mean girls. Trzaskoma Decl. ¶ 14. After she went public with her allegations, Ms. Boylan's criticisms remained unquestionably harsh: several times throughout 2021, Ms. Boylan tweeted at Governor Cuomo with a picture of Jabba the Hutt (from Star Wars) holding Princess Leia. Trzaskoma Decl. ¶¶ 15-18. Just a few months ago, Ms. Boylan called co-defendant Melissa DeRosa (former Secretary to the Governor) "trash"—"[l]iterally trash." Trzaskoma Decl. ¶ 19. Apart from the bare contentions that "discovery sought for the purpose of impeachment is improper," T1 ECF No. 87 at 13, and that Ms. Boylan "has no narrative to offer with respect to Trooper 1's allegations," Boylan ECF No. 17 at 20, Ms.

Boylan's papers do not address the plain animus in these public statements. Governor Cuomo is entitled to explore this issue given that Trooper 1 seeks to rely on the OAG Report as part of her proof in this case.

Ms. Boylan's statements further confirm that she personally and politically benefited from her accusations against Governor Cuomo. She used those allegations to marshal political attention, mitigate adverse information about her employment history, and meet fundraising goals. On January 12, 2021—less than a month after she levied her allegations—Ms. Boylan posted to Facebook announcing that she "blew" her Manhattan Borough President campaign fundraising goal "out of the water." Trzaskoma Decl. ¶ 20. Ms. Boylan's statements also suggest that she knew—from the very beginning—how important correlating statements of others would be to maintain political and public interest. Right before making her sexual harassment allegations, Ms. Boylan asserted that she was "getting all these messages" from people that she "wo[uldn't] be sharing," but that proved Governor Cuomo was "one of the biggest abusers of all time." Trzaskoma Decl. ¶ 21. By mid-March, Ms. Boylan was the focus of news stories with high-profile journalists and websites. Trzaskoma Decl. ¶¶ 22-26 (including NBC, Gothamist, the New Yorker, AP News, and Good Day New York). Many of her campaign statements from then on incorporated her allegations against Governor Cuomo, arguing that her fight against Governor Cuomo made her a good candidate for office. Trzaskoma Decl. ¶¶ 27-28.

Moreover, documents produced by other complainants who Governor Cuomo subpoenaed have verified Ms. Boylan's central role. For example, documents produced by Kaitlin—one of the other complainants whose allegations have been incorporated into Trooper 1's Complaint at Paragraphs 131 to 139—include several communications with Ms. Boylan. One set of texts, dating from December 14, 2020 to February 17, 2021, demonstrates that Ms. Boylan's campaign team

11

was in contact with Kaitlin, and that both Ms. Boylan and her campaign team asked Kaitlin to help with preparing public statements. Trzaskoma Decl. Ex. 2 at KM0235-KM0247. Another set of texts, dated March 4, 2021, shows that Ms. Boylan sent Kaitlin a screenshot of an email from Ms. Boylan to two former female colleagues who supported Governor Cuomo, calling them "sad, depressing, and soulless people," and telling them it must be "depressing to be [them]." Trzaskoma Decl. Ex. 2 at KM0188.[12] Yet a third set of texts, dated March 14, 2021, reflect Ms. Boylan urging Kaitlin to connect with Ronan Farrow for a story he was writing about the allegations against Governor Cuomo. Trzaskoma Decl. Ex. 2 at KM0133-KM0134. Because Trooper 1 relies on Ms. Boylan to bolster her claims, Ms. Boylan's motives, credibility, and tactics are all relevant to Trooper 1's claims.

Similarly, the recent deposition of another complainant, Ana Liss-Jackson, further confirms Ms. Boylan's role in agitating against Governor Cuomo and pressuring others to come forward. Ms. Liss-Jackson, whose allegations have been incorporated into Trooper 1's Complaint at Paragraphs 124 to 130, shed light on Ms. Boylan's recruitment efforts. Ms. Liss-Jackson admitted during her deposition that Governor Cuomo did not sexually harass her, Trzaskoma Decl. Ex. 3 at 18:2-6, 19:17-20, 88:10-19, 177:10-16, 204:21-23, 295:17-22, and that she did not witness Governor Cuomo sexually harass anyone else, Trzaskoma Decl. Ex. 3 at 95:3-15, 193:8-19. But when Ms. Boylan, who did not have a prior relationship with Ms. Liss-Jackson, reached out to Ms. Liss-Jackson in March 2021, Ms. Boylan led Ms. Liss-Jackson "to believe that there was a bigger story brewing" and urged her to "perhaps consider lending [her] own experience to what was being discussed in the public arena in the interest of blowing a whistle on what was a toxic or hostile workplace environment." Trzaskoma Decl. Ex. 3 at 191:4-192:5. Ms. Liss-Jackson admitted that

---

[12] Ms. Boylan also pilloried this former colleague on Twitter for daring to dispute her story. Trzaskoma Decl. ¶ 29.

"Ms. Boylan may have been contacting [her] because she was hoping to find other people who were willing to talk to the press." Trzaskoma Decl. Ex. 3 at 310:4-8. To be sure, Ms. Boylan's efforts to whip up anti-Cuomo sentiment found their mark in Ms. Liss-Jackson.

Succumbing to Ms. Boylan's pitch, Ms. Liss-Jackson—who at the time was pregnant, vulnerable, and isolated after months of COVID—came forward not because she had been sexually harassed by Governor Cuomo, but because she wanted to be part of Ms. Boylan's "crusade" and to "bolster some of the cases that were being made by other women that had different experiences." Trzaskoma Decl. Ex. 3 at 161:17-162:14. Over the next few months, Ms. Liss-Jackson gave repeated interviews to high-profile media outlets, describing her allegations to the Wall Street Journal, Trzaskoma Decl. ¶ 30, New York Magazine, Trzaskoma Decl. ¶ 31, and the Brian Lehrer Show, Trzaskoma Decl. ¶ 32. She accused the entire Executive Chamber of "offensive conduct" to CNN, Trzaskoma Decl. ¶ 33; and eventually reacted to Governor Cuomo's resignation on Rochester local news, Trzaskoma Decl. ¶ 34. Ms. Liss-Jackson acknowledged that in these public interviews she largely peddled in "speculation," "assumption," and the "gossip mill" and did so because she felt compelled by the "social justice type of a mission" to support other women and to bolster Ms. Boylan. Trzaskoma Decl. Ex. 3 at 144:22-23, 297:15-16, 318:12-13, 334:9.

Almost immediately, Ms. Liss-Jackson realized that her statements were being reported as sexual harassment allegations and felt misrepresented by the media. *See* Trzaskoma Decl. Ex. 3 at 203:3-205:1. Ms. Boylan, however, continued stoking the fire to ensure Ms. Liss-Jackson stayed the course, plying Ms. Liss-Jackson with untrue negative information about Governor Cuomo. During one communication, for example, Ms. Boylan falsely told Ms. Liss-Jackson that Governor Cuomo had multiple extramarital affairs with female staffers and conveyed to Ms. Liss-Jackson that she, Ms. Boylan, had personal knowledge of the same. Trzaskoma Decl. Ex. 3 at 264:13-

266:16. Ms. Boylan continued her smear campaign as recently as April of this year—after Governor Cuomo had issued nonparty subpoenas to Ms. Boylan and Ms. Liss-Jackson—making vile and hateful (and deeply misogynistic) comments about Ms. DeRosa. Trzaskoma Decl. Ex. 4. In short, Ms. Liss-Jackson testified unambiguously that Ms. Boylan was the "centerpiece" of the allegations against Governor Cuomo and that Ms. Boylan was *the* reason she made allegations herself: "if not for her . . . reaching out to me, I don't think I would have become embroiled in it." Trzaskoma Decl. Ex. 3 at 288:21-289:3.

Considering these statements and the ones described in Governor Cuomo's Motion to Compel, Ms. Boylan's privacy objections are risible. Her very first tweets—kicking off the cascade of allegations against Governor Cuomo—claimed that his purported abuse was the reason she resigned employment at ESD. *See* Boylan ECF No. 3 at 7-8. Her allegations (and their relationship with her political campaign), her communications with other complainants, and her experience with the Executive Chamber as a workplace are all not just public but strategically so, shoved into the limelight with the help of high-profile media outlets. Fairness does not permit Ms. Boylan to thrust these issues into the public sphere for others like Trooper 1 to rely on, but then shut down any inquiry into them. And if Ms. Boylan has a gripe about that the need for such inquiry, that gripe is with Trooper 1 not Governor Cuomo. These materials are relevant to this case, and Governor Cuomo has a right to obtain them.

**Second**, Ms. Boylan argues that the subpoenaed information is irrelevant because Governor Cuomo has not yet asserted an affirmative defense or "accident defense." Boylan ECF No. 17 at 12-13. This is not a basis to object to the subpoenas. Even if it were, Governor Cuomo has not even had an opportunity to answer, much less raise affirmative defenses. Further, Ms. Boylan is

acting as a stalking horse for Trooper 1 by anticipating evidentiary arguments that Trooper 1 might eventually raise, while conveniently ignoring how Trooper 1 has intentionally framed her claims.

As for the legal argument, none of the cases cited by Ms. Boylan are on point; instead, they all involve discovery material that "ha[d] no bearing whatsoever on the merits of the [u]nderlying [s]uit." *Breaking Media, Inc. v. Jowers*, No. 21 Misc. 194 (KPF), 2021 WL 1299108, at *6 (S.D.N.Y. Apr. 7, 2021); *see also In re Alper Holdings USA, Inc.*, 398 B.R. 736, 754 (S.D.N.Y. 2008) (bankruptcy judge did not err in declining to permit claimants to pursue discovery where claimants "failed . . . to allege any facts that, if proved, would allow [claimants] to recover"). Moreover, Ms. Boylan appears to conflate affirmative defenses with defenses. Inquiry into the complaint's allegations is plainly allowed at any point in discovery, even before an answer is filed with affirmative defenses. *See Lifeguard Licensing Corp. v. Kozak*, No. 15 Civ. 8459 (LGS)(JCF), 2016 WL 3144049, at *4 (S.D.N.Y. May 23, 2016) (specifically limiting its denial of discovery to requests regarding unpled *affirmative* defenses). Thus, to deny the truth of Trooper 1's allegations, including as to Ms. Boylan, Governor Cuomo need not first plead an affirmative defense; indeed, such an affirmative defense would not be permitted. *See Godson v. Eltman, Eltman & Cooper, P.C.*, 285 F.R.D. 255, 260 (W.D.N.Y. Sep. 11, 2012).

***Third***, relying on inapposite "at issue" case law, Ms. Boylan argues that the inclusion of her public allegations in Trooper 1's Complaint is immaterial. She contends that Governor Cuomo (rather than Trooper 1) must independently prove the relevance of those allegations in order to seek discovery on them. Boylan ECF No. 17 at 16. This makes no sense. Trooper 1 drafted her Complaint, not Governor Cuomo; Trooper 1 included Ms. Boylan's allegations, not Governor Cuomo; and Trooper 1 made the Boylan allegations a relevant subject of inquiry for purposes of discovery, not Governor Cuomo. Boylan ECF No. 3 at 11-12. Ms. Boylan, for all her bluster, cites

no case refuting the notion that a defendant can always seek discovery into a complaint's allegations.[13]

**Fourth**, Ms. Boylan argues that materials relating to her employment *or*, as she mislabels them, her "personnel files," T1 ECF No. 87 at 9, are not directly relevant to the Trooper 1 Action. To be clear, Governor Cuomo does not seek Ms. Boylan's personnel files in their entirety.[14] Rather, he seeks information concerning complaints lodged against her and the circumstances regarding her departure from state government. Ms. Boylan put those circumstances and her credibility directly at issue when she claimed publicly that she resigned from ESD because of Governor Cuomo. *See* Boylan ECF No. 3 at 9-10. Inquiry into Ms. Boylan's employment circumstances, and the circumstances surrounding her resignation, is therefore entirely warranted and proper.

## III.   THE SUBPOENAS ARE NOT IN FURTHERANCE OF AN IMPROPER PURPOSE

Ms. Boylan next argues that the Subpoenas actually further a surreptitious purpose, to "relitigate the OAG Investigation and further harass and intimidate" her. Boylan ECF No. 17 at 18-23; *accord* T1 ECF No. 87 at 1-2. But Governor Cuomo serves these Subpoenas for purposes

---

[13] The one case she does cite in support—*McGowan v. JPMorgan Chase Bank, N.A.*, No. 18 Civ. 8680 (PAC) (GWG), 2020 WL 1974109 (S.D.N.Y. Apr. 24, 2020)—is wholly inapposite and did not even concern whether a party could take discovery concerning allegations in a complaint. *Id.* at \*7 (explaining that the issue was whether a defendant's denial in an answer could trigger broad discovery into a privileged area).

[14] *Compare Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995) (denying "blanket request for personnel files"); *Mills v. Steuben Foods, Inc.*, No. 19-CV-1178, 2023 WL 179579, at \*8 (W.D.N.Y. Jan. 13, 2023) (denying request for "'complete' personnel files"); *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. 32, 34, 39 (E.D. La. 2016) (denying request for entire custodial files); *Butler v. Craft*, No. 1:16-CV-01158, 2017 WL 1429896, at \*1, 6 (W.D. La. Apr. 19, 2017) (denying request for "entire" personnel file); *see also Sollitto v. Shulkin*, No. 15-CV-5913 (MKB) (VMS), 2017 WL 1403218, at \*3 n.4 (E.D.N.Y. Apr. 19, 2017) (denying interrogatory request for which defendant had already produced responsive documents); *Gheesling v. Chater*, 162 F.R.D. 649, 650-51 (D. Kan. 1995) (granting interrogatory request); *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) (granting discovery into relevant personnel files); *EEOC v. SOL Mexican Grill LLC*, No. CV 18-2227 (CKK), 2019 WL 2896933, at \*5-6 (denying discovery into entire work histories where defendants could use immigration status to harass witnesses); *New York Stock Exch., Inc. v. Sloan*, No. 71CV2912, 1976 WL 169086, at \*5 (S.D.N.Y. Oct. 21, 1976) (denying discovery because materials sought were irrelevant).

of use in this case, to oppose Trooper 1's allegations, which by necessity involves challenging the claims of other complainants that Trooper 1 included in her Complaint, like Ms. Boylan. Ms. Boylan's arguments are baseless for three reasons.

*First*, Ms. Boylan argues that Governor Cuomo issued the Subpoenas for the purpose of "re-litigating" the OAG Report, contends that this purpose is "improper," and further suggests that Governor Cuomo already had a chance to litigate the merits of her claims during the OAG Investigation. *See* Boylan ECF No. 17 at 18-19. Ms. Boylan is incorrect. A fundamental tenet of due process under the Federal Rules of Civil Procedure is that parties have a full opportunity to obtain documents, take testimony from witnesses, and cross-examine accusers. *See* Diego A. Zambrano, *Discovery as Regulation*, 119 Mich. L. Rev. 71, 81 (2020) ("Discovery has become an integral part of the American concept of due process—so much so that some argue discovery is of a constitutional foundation."). Governor Cuomo <u>never</u> had a chance to litigate Ms. Boylan's allegations but has a fundamental right to do so because Trooper 1 put them at issue in this lawsuit.

*Second*, Ms. Boylan also argues that Governor Cuomo served the Subpoenas in order to use the discovery publicly or in other proceedings, including to undermine the OAG Report in the public forum. *See* Boylan ECF No. 17 at 1-3, 18-20; *see also* T1 ECF No. 87 at 1-2. Even if this were true, which it is not, it would not be a basis for Ms. Boylan to resist compliance with a valid subpoena. If anything, it is an issue for Trooper 1 to raise. That said, there is nothing improper about a party discussing publicly nonconfidential information they obtain through discovery. This is particularly true here, where Ms. Boylan routinely uses public media and the press to advance her campaign against Governor Cuomo. Indeed, in recent months, Ms. Boylan has made repeated public statements, some of them very hateful, against Governor Cuomo and his former staff members. Trzaskoma Decl. ¶ 35 (asserting that Governor Cuomo's "super power is having no

shame whatsoever"); Trzaskoma Decl. ¶ 36 (calling Governor Cuomo "[t]otally self absorbed," "devoid of values" and "devoid of basic ethics"); Trzaskoma Decl. ¶ 19 (calling Melissa DeRosa "trash"). She has also sought to litigate the enforceability of the Boylan-Related Subpoenas in the public eye—contributing to stories in the New York Post, the Wall Street Journal, CBS News, and the Daily Mail, among others—to make news of her noncompliance. Trzaskoma Decl. ¶¶ 37-40. There is no gag order in this case preventing the parties from publicly discussing the merits of Trooper 1's allegations, nor should there be. *See Empire State Ethanol & Energy, LLC v. BBI Int'l*, No. 1:08-CV-623 (GLS/DRH), 2009 WL 790962, at *11 (N.D.N.Y. Mar. 20, 2009) (noting that gag orders are "the most serious and the least tolerable infringement on First Amendment rights" and are "presumptively unconstitutional"). Ms. Boylan is effectively asking this Court to prevent Governor Cuomo from defending himself against Trooper 1's claims. Again, this is not Ms. Boylan's fight. If Ms. Boylan truly believes something is confidential, her remedy is to designate it so under the protective order, not to try to prevent discovery across the board. *See* T1 ECF No. 68 at 1.

*Third*, Ms. Boylan argues that certain Federal Rules of Evidence prohibit Governor Cuomo from taking discovery on Ms. Boylan's prior relationship with her then-boss. Each of these arguments is wrong.

Ms. Boylan contends, for example, that FRE 608, which governs the admissibility of evidence generally supporting or attacking a witness's reputation for truthfulness, limits Governor Cuomo's ability to discover information regarding Ms. Boylan's credibility. Boylan ECF No. 17 at 20-21. But FRE 608 is not a discovery rule, it is an evidentiary rule. *See Barkley v. Olympia Mortgage Co.*, No. 04-cv-875 (RJD) (KAM), 2008 WL 11434464, at *5 n.5 (E.D.N.Y. July 21, 2008). Ms. Boylan again seeks to have the Court address issues that do not concern Ms. Boylan.

18

Admissibility is not Ms. Boylan's fight, and the Court should not consider Ms. Boylan's opinion on what is and what is not admissible.

Further, even if FRE 608 were applicable, it would not bar the discovery requested here. Governor Cuomo does not request the materials at issue to attack Ms. Boylan's general "character for truthfulness." Rather, Governor Cuomo seeks evidence going directly to Ms. Boylan's credibility regarding her specific allegations against Governor Cuomo. If Ms. Boylan was, as we believe, biased against Governor Cuomo or if she had other motivations to falsely accuse Governor Cuomo of sexual harassment, using such information to impeach her testimony would not even fall under FRE 608. *See United States v. Figueroa*, 548 F.3d 222, 229-30 (2d Cir. 2008) (overturning exclusion of questioning under FRE 608 where "purpose of the proposed line of cross-examination was not to show the witness's 'character for truthfulness or untruthfulness,'" but instead "to impeach the witness for bias"). None of the cases Ms. Boylan cites is to the contrary. *See Shih v. Petal Card, Inc.*, No. 18-CV-5494 (JFK) (BCM), 2021 WL 5279395, at *5 (S.D.N.Y. Nov. 12, 2021) (rejecting discovery going toward witness's "propensity for falsehoods"); *Tucker v. Interstate Home Loan Ctrs., Inc.*, No. 20-CV-01906 (JMA)(JMW), 2020 WL 4079580, at *4 n.5 (E.D.N.Y. Sept. 6, 2022) (rejecting discovery going towards witness's "character for truthfulness"); *see also Park West Radiology v. CareCore Nat'l LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. Apr. 17, 2008) (not involving FRE 608 at all).

Similarly, Ms. Boylan and Trooper 1 wrongly argue that FRE 412 bars discovery of materials related to Ms. Boylan's personal relationship with her then-boss at ESD. Boylan ECF No. 17 at 21-23; T1 ECF No. 87 at 11-13; T1 ECF No. 82-1 at 4. Like FRE 608, FRE 412 is not a discovery rule, it is an evidentiary rule. *See Muniu v. Amboy Neighborhood Ctr., Inc.*, No. 98CV2211FBJMA, 2001 WL 370226, at *1 (E.D.N.Y. Apr. 11, 2001). Even if FRE 412 has some

19

bearing on the discovery process, its limits do not apply to the discovery Governor Cuomo seeks related to Ms. Boylan. As courts in this circuit have noted, discovery of information potentially subject to FRE 412 should be permitted where the evidence sought to be discovered would be relevant to the facts and theories of the particular case and cannot be obtained except through discovery. *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 58 (S.D.N.Y. 2018). Because the materials at issue are not publicly available and cannot be obtained outside the discovery process, the question again turns on relevance—as long as the materials are relevant under the current facts and theories of the case, they can be discovered under FRE 412. They are.[15] As explained in Governor Cuomo's Motion to Compel, the Subpoenas related to Ms. Boylan's relationship with Howard Zemsky go directly to the credibility of Ms. Boylan's allegations, including her allegations of Governor Cuomo's alleged harassment, her allegations concerning her resignation from state employment, and her threat to destroy Mr. Zemsky's life via a self-deleting text message when he did not corroborate an allegation Ms. Boylan made against Governor Cuomo. *See* Boylan ECF No. 3 at 9-11.

## IV.    THE SUBPOENAS ARE PROPORTIONAL AND DO NOT IMPOSE UNDUE BURDEN ON MS. BOYLAN OR ANYONE ELSE

Ms. Boylan also argues that, should the Court find the Boylan-Related Subpoenas relevant and proper, they should still be quashed or modified because they are overly broad or unduly burdensome. Boylan ECF No. 17 at 23-25, T1 ECF No. 87 at 11, 13-14. With respect to the Additional Nonparty Subpoenas, for example, Ms. Boylan (without standing or basis) argues that

---

[15] Ms. Boylan's stated concerns about her privacy interests do not provide a basis to resist compliance given that the operative protective order allows Ms. Boylan to designated nonpublic, personally sensitive information as confidential. *See generally* T1 ECF No. 68. We note, however, that Ms. Boylan arguably waived any right to privacy concerning her departure from ESD when she went public with allegations that she left the Executive Chamber/ESD because Governor Cuomo sexually harassed her. The public is certainly entitled to know if those statements were false.

they are overly broad but fails to identify any burden and merely reprises her relevance arguments. With respect to the Boylan Subpoena, Ms. Boylan has not identified with requisite particularity any burden, much less the sort of burden that would outweigh Governor Cuomo's need to discover these materials.

Though Ms. Boylan submitted a declaration from counsel, it contains only conclusory statements about the volume of potentially relevant documents (more than 550,000). Boylan ECF No. 18 ¶ 27. It does not offer any estimate as to the length of time it would take to gather responsive documents and it does not describe any potential challenges beyond unspecified attorney review. Boylan ECF No. 18 ¶ 27. Further, Ms. Boylan acknowledges that the documents are searchable, meaning that Ms. Boylan could readily locate responsive documents, as nearly all subpoena respondents do, by using search terms or other means. In *Fritz v. LVNV Funding, LLC*, 587 F. Supp. 3d 1 (E.D.N.Y. 2022), the court rejected burden arguments where the subpoena responded failed to describe "with specificity" the "challenges" of compliance, including "how long it would take to locate" the materials or "what the process would be" to search for them. *Id.* at 5-6. Ms. Boylan's motion is similarly lacking. What is more, Ms. Boylan's counsel never even made any representations about these issues during the meet and confer process: they never disclosed the number of potentially responsive documents in Ms. Boylan's possession, and they never engaged in a good-faith discussion regarding search terms or easy exclusion of non-responsive documents.

Ms. Boylan's other burden arguments also fall short. Ms. Boylan is wrong, for example, that publicly available information obviates the need for the Boylan-Related Subpoenas. Boylan ECF No. 17 at 23-24. Public sources do not include the information that Governor Cuomo is seeking, and instead lead to some of the questions the subpoenas are designed to answer. For example, the public knows that Ms. Boylan allegedly resigned in 2018 because of purported sexual

21

harassment—Governor Cuomo's subpoenas are designed to find out why. The public knows that Ms. Boylan was communicating with other complainants before and after she made her first allegations—Governor Cuomo's subpoenas are designed to find out to what extent and to what ends. And the public knows that Howard Zemsky changed his testimony to the OAG during the course of the OAG Investigation to corroborate one of Ms. Boylan's allegations (after Ms. Boylan threatened him)—Governor Cuomo's subpoenas are designed to find out under what circumstances. This is not a case like the one Ms. Boylan cites where the public information is identical to the material sought by the subpoena. *McAnneny v. Smith & Nephew, Inc.*, No. 3:17CV00012 (AWT), 2018 WL 1383400, at *6 (D. Conn. Mar. 19, 2018). The public information here is inadequate on its own.[16]

Ms. Boylan's breadth objections are also misplaced. Boylan ECF No. 17 at 24. Despite Ms. Boylan's best efforts to paint them otherwise, the Requests *are* confined to information about Ms. Boylan's harassment allegations—specifically, information regarding whether and to what extent her allegations are true and/or motivated by bias. It may well be true that the Requests hit on "thousands and thousands of documents, or more," Boylan ECF No. 17 at 24—but the volume of documents involved does not negate their relevance. *See US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811(CM)(JCF), 2012 WL 5395249, at *3 (S.D.N.Y. Nov. 5, 2012) (denying motion to quash subpoena for documents "numbering in the thousands" where the materials requested were "relevant, even if much of it is only marginally so").

---

[16] Ms. Boylan's position that the public record is sufficient is untenable considering that neither Governor Cuomo nor any other subject of the OAG Investigation has had a full and fair opportunity to test the statements of witnesses against them. The adversarial process of civil litigation requires that parties have the right to do so. While Ms. Boylan may not wish to be part of Trooper 1's litigation, she has no right to prevent Governor Cuomo from defending himself in this case.

Likewise, Ms. Boylan's participation in the OAG and AJC Investigations, *see* Boylan ECF No. 17 at 25, is no reason to refuse compliance—in fact, it shows precisely why the Boylan-Related Subpoenas are not unduly burdensome. As demonstrated above, the OAG requested nearly all the same information that Governor Cuomo requests here. When it came to the OAG subpoena, Ms. Boylan complied without issue. But instead of similarly complying with Governor Cuomo's Subpoena, Ms. Boylan has worked with various publications—including the New York Post, the Wall Street Journal, CBS News, and the Daily Mail, among others—to make news about the subpoenas and her noncompliance. Trzaskoma Decl. ¶¶ 37-40. Ms. Boylan's attempt to characterize these subpoenas (both in public media and before this Court) as retaliation for coming forward with her allegations is completely unfounded. So long as Trooper 1 continues to represent that she will rely on Ms. Boylan's allegations to prove her own case, Governor Cuomo is entitled to conduct discovery to refute them, and this Court should not permit Ms. Boylan (or Trooper 1) to stand in his way.

## CONCLUSION

For the foregoing reasons, Governor Cuomo respectfully requests that the Court compel the production of the materials sought in his subpoena to Ms. Boylan, and deny Ms. Boylan's and Trooper 1's motions to quash the Boylan-Related Subpoenas.

Dated: New York, New York
     July 19, 2023

Respectfully submitted,

*/s/ Theresa Trzaskoma*

Theresa Trzaskoma
Allegra Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita Glavin
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for former Governor*
*Andrew M. Cuomo*

## APPENDIX OF DEFINED TERMS

| TERM | DEFINITION |
|---|---|
| **AG James or AG** | Attorney General Leticia James |
| **AJC** | New York State Assembly Judiciary Committee |
| **AJC Investigation** | Impeachment investigation conducted by AJC into allegations of sexual harassment by Governor Cuomo |
| **AJC Report** | *Impeachment Investigation Report to Judiciary Committee Chair Charles Lavine and the New York State Assembly Judiciary Committee* (Nov. 22, 2021), available at https://nyassembly.gov/write/upload/postings/2021/pdfs/20211122_99809a.pdf |
| **Complaint or Compl.** | Second Amended Complaint in *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (E.D.N.Y.), ECF 71 |
| **Chamber or Executive Chamber** | New York State Executive Chamber |
| **EEOC** | United States Equal Employment Opportunity Commission |
| **ESD** | Empire State Development |
| **FRCP** | Federal Rule(s) of Civil Procedure |
| **FRE** | Federal Rule(s) of Evidence |
| **Governor Cuomo** | Former Governor of New York State Andrew M. Cuomo |

| **JCOPE** | New York State Joint Commission on Public Ethics |
|---|---|
| **NYSP** | New York State Police |
| **OAG** | Office of the New York State Attorney General |
| **OAG Investigation** | Investigation by OAG into allegations of sexual harassment by Governor Cuomo pursuant to New York Executive Law § 63(8) |
| **OAG Report** | *The OAG's Report of Investigation into Allegations of Sexual Harassment by Governor Cuomo* (Aug. 3, 2021), available at https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf |
| **Trooper 1 Action** | *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (E.D.N.Y.) |