# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
        -----------------------------:
        CHARLOTTE BENNETT,            : Case No.: 22-cv-7846
                         Plaintiff,   :
             v.                       :
        ANDREW M. CUOMO, et al.,      : New York, New York
                        Defendants.   : January 4, 2024
        -----------------------------:
```

                TRANSCRIPT OF STATUS CONFERENCE HEARING
                 BEFORE THE HONORABLE SARAH L. CAVE
                    UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | EISENBERG & SCHNELL LLP<br>BY: Laura S. Schnell, Esq.<br>233 Broadway<br>New York, NY 10279 |
| For Defendant:<br>Andrew M. Cuomo | SHER TREMONTE<br>BY:  Theresa Trzaskoma, Esq.<br>90 Broad Street<br>New York, New York 10004 |
| For Defendant:<br>Andrew M. Cuomo | GLAVIN PLLC<br>BY:  Rita M. Glavin, Esq.<br>     Leo Korman, Esq.<br>156 West 56th Street - Ste #2004<br>New York, NY 10019 |
| For Defendant:<br>Melissa DeRosa | MORVILLO PLLC<br>BY:  Gregory R. Morvillo, Esq.<br>     Sarah Sulkowski, Esq.<br>     Anthony Grupposo, Esq.<br>1740 Broadway - 15th Floor<br>New York, NY 10019 |
| For Defendant:<br>Jill DesRosiers | DEBEVOISE & PLIMPTON LLP<br>BY:  Soren Schwab, Esq.<br>     Leah Rosenberg, Esq.<br>66 Hudson Boulevard<br>New York, NY 10001 |

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

        AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                      APPEARANCES (Continued)

 2

 3    For Defendant:        ORRICK, HERRINGTON & SUTCLIFFE LLP
      Judith Mogul         BY:  Michael Delikat, Esq.
 4                               Brianna Messina, Esq.
                           51 West 52nd Street
 5                         New York, NY 10019

 6

 7    For Defendant:        PERRY LAW
      Lindsey Boylan       BY:  E. Danya Perry, Esq.
 8                               Krista Oehlke, Esq.
                                 Julie Gerchik, Esq.
 9                         157 East 86th Street
                           New York, New York 10028
10

11    For Defendant:        NYC LAW DEPARTMENT
      NY Attorney          BY:  Serena Longley, Esq.
12    General                    Michael Jaffe, Esq.
                                 James Cooney, Esq.
13                         100 Church Street
                           New York, New York 10007
14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good afternoon.  This is

2    Magistrate Judge Cave.  We're here for a discovery

3    conference in Bennett versus Cuomo; Case Number:

4    22-cv-7846.

5          May I have the appearances, starting with

6    the plaintiff, please.

7          Do we have plaintiff's counsel on the line?

8    Please state your appearance.

9          MS. SCHNELL:  Sorry, Your Honor.  Laura

10   Schnell for plaintiff, Charlotte Bennett.

11         THE COURT:  Okay.  Good afternoon.

12         Counsel for Mr. Cuomo?

13         MS. TRZASKOMA:  Good afternoon, Your Honor.

14   Theresa Trzaskoma from Sher Tremonte on behalf of

15   Former Governor Cuomo.  I'm in my office, joined by

16   my colleague, Allegra Noonan and my co-counsel, Rita

17   Glavin of Glavin PLLC is also here.

18         THE COURT:  Thank you.

19         For Ms. DeRosa?  Counsel for Ms. DeRosa?

20         Do we have counsel for Ms. DeRosa on the

21   line?  If so, please state your appearance.

22         MR. MORVILLO:  Good afternoon, Your Honor.

23   This is Gregory Morvillo.  I'm sorry, I was on mute.

24   Sarah Sulkowski and Anthony Gruppuso are also on the

25   call.  Ms. Sulkowski will be taking the lead for Ms.

1  DeRosa today.

2          THE COURT:  Okay.  Thank you.

3          Ms. DesRosiers?

4          MR. SCHWAB:  Hello.  You've got Soren

5  Schwab of Debevoise & Plimpton, on behalf of

6  defendant, Jill DesRosiers.  And I'm joined on the

7  line by my colleague, Leah Rosenberg.

8          THE COURT:  I'm sorry, who was the other

9  person?

10         MR. SCHWAB:  Leah Rosenberg.

11         THE COURT:  Okay.  Thank you.

12         For Ms. Mogul?  Counsel for Ms. Mogul?

13         MS. MESSINA:  This is Brianna Messina from

14  Orrick Herrington & Sutcliffe.  And I believe Mike

15  Delikat will be joining as well.

16         THE COURT:  Okay.  Thank you.

17         Counsel for Ms. Boylan?

18         MS. PERRY:  Good afternoon, Your Honor.

19  This is Danya Perry.  I am joined by my colleague,

20  Krista Oehlke and by my co-counsel, Julie Gerchik.

21         THE COURT:  Okay.  Good afternoon.

22         And for the Attorney General's Office?

23         MS. LONGLEY:  Hi.  Good afternoon,

24  Your Honor.  This is Serena Longley from the

25  Attorney General's Office.  I'm also joined by my

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1    colleagues on the phone, Michael Jaffe and James
2    Cooney.  We may have another colleague join, but
3    he's currently not on.
4               THE COURT:  Okay.  Thank you.
5               Is there anyone else who's joined who
6    wishes to state their appearance?
7               MR. DELIKAT:  Yes, Your Honor.  It's Mike
8    Delikat, and I'm going to stand up for --
9               THE COURT:  I'm sorry, sir.  I can't hear
10   any of what you're saying.  Your line is breaking
11   up.
12              MR. DELIKAT:  Is that better?
13              THE COURT:  Slightly.
14              MR. DELIKAT:  Mike Delikat.  And --
15              THE COURT:  I'm sorry.  I'm not hearing.  I
16   think you said "Mr. Delikat," but it's very
17   difficult to hear you, sir.
18              MR. DELIKAT:  I'll call on a landline.
19              THE COURT:  If you could, please.  Thank
20   you.
21              We'll wait for him to rejoin.  In the
22   meantime, anyone else?
23              Okay.  Thank you.  We'll begin once we have
24   Mr. Delikat rejoin us.
25              Was that Mr. Delikat who just rejoined?
```

1              MR. DELIKAT:  Yes.  I'm back in on a

2    landline, Your Honor, for Defendant Mogul, and I'm

3    joined by my colleague, Brianna Messina.

4              THE COURT:  Okay.  Thank you very much.

5    All right.

6              Well, we're here today because Mr. Cuomo

7    requested a conference with respect to his subpoenas

8    to Ms. Boylan and the Attorney General's Office.  I

9    did just first want to say, though, that the Court

10   received a barrage of filings from the parties and

11   the non-parties over the last 24 hours, including as

12   recently as 19 minutes before the conference, which

13   is very much unappreciated.  Some of the filings

14   were the transcripts, which the Court had to request

15   because there were transcripts from the proceedings

16   in front of Judge Merkl that the parties referred to

17   or were otherwise relevant to this and the parties

18   neglected to provide them.  And then, otherwise,

19   last minute requests to appear, which the Court has

20   granted, and then an additional submission of

21   documents that I was somehow expected to review in

22   the 19 minutes before this conference began.  That's

23   unappreciated.  It's disappointing, given the

24   quality of the federal practitioners who are

25   appearing on this call, and the Court does not

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    countenance it.

2          Going forward, we will put additional

3    restrictions on the deadlines for the parties to

4    comply with before conferences, but we will not

5    countenance chaos, and the parties should be aware

6    of that and should comport themselves accordingly.

7          Now, I'd like to begin with the subpoena to

8    Ms. Boylan, but what I would like to start with on

9    that issue, though, is the question of the status of

10   Ms. Bennett's production of documents; specifically,

11   her communications with Ms. Boylan to date.

12         So, Ms. Schnell, could I ask you to start

13   with that, please.

14         MS. SCHNELL:  I believe we have produced

15   those documents, Your Honor.

16         THE COURT:  Okay.  So there are no

17   remaining communications between Ms. Bennett and

18   Ms. Boylan that remain to be produced?

19         MS. SCHNELL:  Not that I'm aware of.  I

20   will double-check, but I am pretty confident of

21   that.

22         THE COURT:  Okay.  And are there any other

23   documents that Ms. Bennett has that are somehow

24   communications or other correspondence relating to

25   Ms. Boylan?

```
 1              MS. SCHNELL:  No.

 2              THE COURT:  All right.  Thank you.  Okay.

 3         Would Mr. Cuomo's counsel like to start,

 4    specifically, now that you do have documents that

 5    Ms. Bennett has produced, or communications that Ms.

 6    Bennett has produced with respect to Ms. Boylan, who

 7    is obviously not a party to this case, why anything

 8    further from Ms. Boylan is relevant and necessary?

 9              MS. TRZASKOMA:  Good afternoon, Your Honor.

10    Theresa Trzaskoma, and I will start by apologizing

11    for any chaos.  That is certainly not our intention,

12    and we appreciate a no-chaos rule and will abide by

13    it.  I think, you know, the last minute -- the very

14    last-minute filing was simply to put before

15    Your Honor, not expecting Your Honor to have an

16    opportunity to review it before this conference, but

17    so that you would have it available afterwards.

18              But we have received from Ms. Bennett

19    certain communications with Ms. Boylan which confirm

20    what we believed, which is that Ms. Bennett and

21    Ms. Boylan were in communication.  We thought it was

22    at least as early as January of 2021, but we now

23    know that it was a month earlier, in early December,

24    right around the time that Ms. Boylan first made

25    public allegations against Governor Cuomo.
```

```
 1          We know from those communications that they
 2     were coordinating with each other, with others, with
 3     PR consultants, with Ms. Boylan's campaign staff,
 4     with reporters.  And, you know, our view -- and we
 5     don't know whether Ms. Bennett retained everything
 6     that Ms. Boylan retained.
 7          For example, we believe that they may have
 8     been communicating on self-deleting -- you know,
 9     apart from what we got, which are communications
10     across a variety of platforms, like Instagram,
11     Twitter, other forms of communication.  We think
12     that they were -- they may have been communicating
13     on encrypted apps, like Confide and Signal, that are
14     self-deleting.  I don't know.
15          It appears, perhaps, Ms. Bennett didn't
16     retain any of that, if it existed.  I don't know if
17     it exists with Ms. Boylan.  I know it appears, for
18     example, from the discovery that we've seen, that
19     Ms. Boylan was or is writing a book.  We believe
20     that she likely retained -- she probably kept notes
21     of her calls.
22          For example, we know that there was a
23     call -- at least one, probably many more -- calls
24     between Ms. Bennett and Ms. Boylan.  I don't know if
25     Ms. Boylan took notes of those calls, if she
```

1    conveyed to other third parties, including the

2    reporters, the PR folks, other complainants,

3    information that she was getting from Ms. Bennett or

4    information she was conveying to Ms. Bennett.

5           So, in short, I don't have any confidence

6    that the entire universe of their communications you

7    know, has been provided to us.  And Ms. Boylan is a

8    non-party, but she is a highly relevant witness for

9    purposes of discovery.  I will note that she --

10   Ms. Boylan was identified in both our initial

11   disclosures and in Ms. Bennett's initial

12   disclosures.

13          I know that Ms. Boylan is relying on a

14   letter that Ms. Bennett's counsel sent saying that

15   they do not intend at this time to call Ms. Boylan

16   as a witness at trial.  I don't think that has any

17   bearing on whether we're entitled to take discovery

18   from Ms. Boylan.  But I would note that Governor

19   Cuomo may well call Ms. Boylan as a witness at

20   trial, and, you know, in large part because it's

21   hard to understand -- you know, almost impossible to

22   understand the circumstances of Ms. Bennett's coming

23   forward with her public allegations against the

24   governor without understanding what was going on

25   with Ms. Boylan.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              And there are other -- you know, I'm happy
 2    to address the relevance issues, but just in terms
 3    of the question that Your Honor posed, which is, why
 4    do we need additional discovery, document discovery
 5    from Ms. Boylan, I think there is likely a treasure
 6    trove there, and we're entitled to it.
 7              THE COURT:  Well, I'd just like to
 8    understand, with respect to Mr. Cuomo's subpoena to
 9    Ms. Boylan, though.  I'm just pulling it up here.
10    It's pretty broad.  You know, there are 19 different
11    requests here, and they don't just relate to
12    Ms. Bennett.  Number 1 and number 17 do, but there's
13    a lot here as to Ms. Boylan, who is not a party to
14    this case.  And although there's a reference, two
15    references in paragraphs 5 and 125 to her
16    announcement of her allegations against Mr. Cuomo.
17    She's otherwise -- those are not described in
18    detail.  So I'm just -- I'm struggling with why
19    anything other than her communications with
20    Ms. Bennett, which you may have some, but admittedly
21    maybe not all, of why there's anything else here
22    that's relevant in that regard.
23              MS. TRZASKOMA:  Yeah, I mean, I think this
24    goes to Governor Cuomo's -- it, in part -- so it
25    goes to two things, Your Honor.  One, it goes to
```

1   what I would say is Ms. Bennett's credibility and

2   her motivations in coming forward.  And so, you

3   know, Ms. Bennett -- or Ms. Boylan was making

4   allegations, and Ms. Bennett was coordinating with

5   her.

6            And as we discussed on the call relating to

7   Hamilton College, we do think that there is a theme

8   with Ms. Bennett, which is that she made supporting

9   victims of sexual harassment and sexual assault,

10  kind of, her personal brand.  And I'm not saying

11  that lightly.  I'm saying that based on a résumé

12  that I have seen, and on, you know, her e-mails to

13  others.

14           And I think, you know, we're entitled to

15  explore what motivated Ms. Bennett to come forward,

16  which were Ms. Boylan's allegations.  At some point,

17  information started to come out that Ms. Boylan was

18  unreliable and untruthful.  And Ms. Boylan -- I

19  mean, Ms. Bennett, nevertheless, continued to stand

20  shoulder to shoulder with Ms. Boylan.  And I think

21  that is very important information relevant to Ms.

22  Bennett's motivations and her credibility.  And, you

23  know, we believe that Ms. Bennett embellished her

24  allegations in order to support Ms. Boylan and

25  continued to do so even after it became clear that

1    Ms. Boylan had not been truthful.

2           And so it's all those circumstances around

3    what was happening in late 2020, in the beginning of

4    2021, where, you know, they are all -- where

5    Ms. Bennett and Ms. Boylan are communicating with

6    reporters, they're communicating with PR folks, and

7    they're communicating with other complainants to

8    recruit others to come forward.  And the fact that

9    Ms. Boylan was not truthful, had ulterior motives,

10   and, you know, either hoodwinked Ms. Bennett or

11   manipulated her is an important part of Governor

12   Cuomo's defense.

13          THE COURT:  Right.  But all of that is

14   going to be in their communications with each other.

15   There's not going to be a mini trial in this case

16   about Ms. Boylan.  She's not a party to this case.

17   And Mr. Cuomo doesn't have any claims against

18   Ms. Boylan in this case.  So going for the --

19          MS. TRZASKOMA:  Well, I --

20          THE COURT:  -- throat of the truth or

21   falsity of what Ms. Boylan was alleging, even if

22   what Ms. Boylan was alleging was false, and I have

23   no finding on that one way or the other, that

24   doesn't mean that what Ms. Bennett said was true or

25   false.  Those two things are totally independent of

1    each other.

2         MS. TRZASKOMA:  Well, I'm not proposing a

3    mini trial, certainly, Your Honor, but what I am

4    proposing -- what we are seeking is, you know, under

5    the broad ambit of what's discoverable, we are

6    seeking information about the reliability of

7    Ms. Boylan's own allegations and the fact that

8    Ms. Bennett willingly jumped on that bandwagon

9    and -- and so, you know, Your Honor -- I mean, they

10   coordinated with each other.  And the fact that

11   Ms. Bennett was coordinating with a person who was

12   not being truthful is, you know -- and who was doing

13   so -- Ms. Boylan was doing so for the purpose of,

14   you know, furthering her political campaign is

15   just -- it's really all part of the atmosphere of

16   what prompted Ms. Bennett to come forward.

17         And it's not a mini trial.  It is, as I

18   said, like, you know, it's very relevant to what

19   Ms. Bennett was doing.  And, you know, to the point

20   of -- I don't think this is all in their

21   communications necessarily.  I think there's going

22   to be a lot of information about the nature and

23   reach and scope of their joint effort to coordinate,

24   recruit and encourage others is absolutely going to

25   be part of what's in Ms. Boylan's documents and not

1    necessarily part of what's in Ms. Bennett's.

2             THE COURT:  I appreciate that, but there

3    has to be a tie to Ms. Bennett and her claim.  And

4    what Ms. Boylan -- that Ms. Boylan may have

5    encouraged some other complainant to do something

6    independent of Ms. Bennett, that doesn't have

7    anything to do with this case.  That's not relevant.

8             MS. TRZASKOMA:  Well, I guess I -- I mean,

9    I hear that, but I vehemently disagree because I

10   think -- you know, for example, part of what we

11   think was motivating Ms. Bennett is that Ms. Boylan

12   was running for political office at the time this

13   all came out.  Ms. Bennett may have been looking for

14   a job.  I don't know.  Maybe she wanted to work with

15   Ms. Boylan.

16            We have -- you know, part of the

17   information that we submitted to the Court is a

18   calendar invite between -- in December of 2020

19   between Ms. Bennett, Ms. Boylan and Ms. Boylan's

20   campaign manager, or who we believe is Ms. Boylan's

21   campaign manager.

22            And I do think that Governor Cuomo's

23   defense -- we don't want a mini trial, but we are

24   entitled to explore whether Ms. Boylan's allegations

25   were true or not and what Ms. Bennett knew or didn't

```
 1    know about that.  And I think, you know -- and
 2    just --
 3              THE COURT:  When is --
 4              MS. TRZASKOMA:  -- there's a very big
 5    difference between -- yeah.  Sorry.
 6              THE COURT:  When is Ms. Bennett's
 7    deposition?
 8              MS. TRZASKOMA:  I'm sorry?
 9              THE COURT:  When is Ms. Bennett's
10    deposition?
11              MS. TRZASKOMA:  We have not scheduled it.
12    Ms. Bennett has not completed her production of
13    documents.  On a call last week, I think, they were
14    not able -- Ms. Schnell was not able to tell us when
15    that would be completed.  But we -- you know, but we
16    do want and are entitled to this non-party discovery
17    in advance of that deposition so that we have, you
18    know, as much information as we can get about what
19    was going on so that we are able to intelligently
20    and fully and capably question her on these issues.
21              THE COURT:  Right.  But why do you need it
22    before Ms. Bennett's deposition?  I mean, Ms. Boylan
23    is a non-party, so necessarily the burden on her
24    should be minimized as much as possible.  She's not
25    required to carry the load for Ms. Bennett.  You
```

```
 1    guys have to do your work.  The defendants have to
 2    do their work as to Ms. Bennett and bring out -- if
 3    there are things that Ms. Bennett says about
 4    Ms. Boylan, then you have a much stronger case -- or
 5    much stronger argument why a further discovery from
 6    Ms. Boylan might be relevant, but you're inverting
 7    it in a way that's unfair to somebody who's a
 8    non-party.
 9              MS. TRZASKOMA:  I don't think we are,
10    Your Honor.  And I would note that plaintiff has
11    already taken non-party discovery, and Your Honor
12    has enforced non-party discovery without her having
13    taken a single deposition.  So I don't -- I think,
14    you know, this is a normal discovery practice, which
15    is to gather as much information as possible about
16    the topics that you're going to depose a witness or,
17    you know, a party on, and to have that all available
18    to us.  And I don't think Rule 26 put -- imposes a
19    particular order on us.  And it's --
20              THE COURT:  I wasn't saying that it did.
21    But in terms of somebody who has come forward and
22    objected, in part, on the grounds of burden, it
23    makes sense to --
24              MS. TRZASKOMA:  Well --
25              THE COURT:  -- pursue the information from
```

1    the parties first, and then see what's left and

2    what's needed from the non-parties.

3             MS. TRZASKOMA:  Well, it's hard -- I mean,

4    part of this issue, Your Honor, is we have no idea

5    what Ms. Boylan has or what the burden is on her.

6    And I would say, you know, she has made this burden

7    argument without actually meeting her burden to show

8    it's some undue burden.

9             And, frankly, if she says, I have a million

10   communications with Ms. Bennett, and it's going to

11   require -- or with Ms. Bennett and about

12   Ms. Bennett, and it's going to take me a lot of time

13   to gather and produce them, that makes me want them

14   all the more.  But I don't understand why she

15   cannot, for example, run simple search terms through

16   her communications and turn those over to us in

17   advance of our having to take Ms. Bennett's

18   deposition.  And, likewise, I don't know why

19   Ms. Boylan cannot sit for a day-long deposition in

20   this matter.

21             THE COURT:  All right.

22             MS. TRZASKOMA:  And --

23             THE COURT:  Go ahead.  Finish your

24   statement, and then I want to hear from Ms. Boylan's

25   counsel.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          MS. TRZASKOMA:  Yeah.  Again, just to go

2     back to the disclosures, both parties have

3     identified her as a witness with relevant

4     information, and under those circumstances, and

5     under all the circumstances here, you know, the

6     subpoena is proper and it should be enforced.

7          THE COURT:  Thank you.  All right.

8          Ms. Perry, do you or one of your colleagues

9     want to address the points that Ms. Trzaskoma has

10    made?

11         MS. PERRY:  Yes.  Thank you, Your Honor.

12    This is Danya Perry.

13         So just to, I guess, take the last point

14    made by Ms. Trzaskoma first, it's not the case that

15    both parties have identified her as a witness.  As

16    Your Honor is aware, Ms. Katz, on behalf of the

17    plaintiff, has said they do not anticipate calling

18    Ms. Boylan as a witness.  And it's certainly the

19    case that Mr. Cuomo does not want Ms. Boylan in this

20    case.

21         He has said in the Trooper 1 case that he

22    does not believe Ms. Boylan has relevant

23    information, as much as he's been hounding her with

24    subpoenas -- I believe we're up to 15.  I may have

25    lost count -- in the other case, what he's trying to

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    do, and he said the quiet part out loud in that case

2    is relitigate the Attorney General's investigation

3    and prove himself, essentially, to be innocent.

4            In this case -- and he's also said another

5    quiet part out loud in that case, which is that he

6    does not -- you know, he had said in that case that

7    if Ms. Boylan had not been all over the complaint,

8    he would not be subpoenaing her.

9            Well, she really does not feature

10   prominently in this case.  And, again, the plaintiff

11   has said that they're willing to take her out of the

12   case.  But, nevertheless, he wants her in this case,

13   and it really is so that, as Ms. Trzaskoma just

14   said, they can impeach her.  But there's no real

15   reason to impeach her.  And it really is the

16   convoluted explanation that we just heard, was -- I

17   mean, in their letter they said it was to impeach

18   Ms. Boylan.  They actually said that.  And now,

19   under Your Honor's questioning, it was, well, it was

20   more indirect.  It was to impeach Ms. Boylan to

21   somehow indirectly impeach Ms. Bennett.

22           That really is a bridge too far.  It really

23   is to get campaign records and records about sexual

24   history and personnel records to somehow impeach

25   Ms. Boylan, which somehow would impugn Ms. Bennett

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    really, really is going too far afield.

2            But if we had been able to have a

3    productive meet and confer, I think we -- and

4    they've been willing to narrow the subpoena in some

5    ways -- I think we probably could have gotten to a

6    place where I do agree with Your Honor that

7    arguably, at least, requests number 1 and 17 are the

8    only requests that are moderately theoretically

9    relevant.  Of course, they're overbroad because they

10   request all communications and all documents.

11           And I think, though, if the parties could

12   sit down and, you know, come to discussions, perhaps

13   communications that involve just sexual harassment

14   allegations against Mr. Cuomo, not all

15   communications with Ms. Bennett, perhaps there

16   are -- I don't know this, but perhaps there are

17   documents that would be relevant that have not been

18   produced.  And so we would be willing -- as

19   Ms. Trzaskoma just said, we would be willing to run

20   limited searches for that.  And I do agree it's

21   potentially relevant.  I --

22           THE COURT:  But can I interrupt -- can I

23   interrupt you for a second?

24           MS. PERRY:  Of course.

25           THE COURT:  Has Ms. Boylan done a search of

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    her communications to know what the universe is of

2    her communications with Ms. Bennett, what the volume

3    is?

4              MS. PERRY:  Not just with Ms. Bennett.  We

5    have -- in the other case, we had run a search and

6    there's a large volume of documents.  I think we're

7    at about 500,000 that have been potentially relevant

8    in that case.

9              THE COURT:  Okay.

10             MS. PERRY:  And the subpoena in this case

11   is largely duplicative of that one, but I think if

12   the parties can come to terms, obviously, it would

13   be a much, much smaller universe of documents, and I

14   think that could be somewhat reasonable.

15             It is the case that Ms. Bennett and

16   Ms. Boylan are -- have become friendly, and they

17   talk about a lot of other things.  I just reviewed

18   the communications that we got minutes before the

19   conference, and there are just a lot of, you know,

20   heart emojis, I think, and likes and that kind of

21   thing.  So there are a lot of things I think would

22   be nonresponsive if we can just talk about, you

23   know, sexual allegations -- sexual misconduct

24   allegations.  So I would like to think that

25   reasonable people can come to terms.

```
 1              THE COURT:  Do you know when Ms. Boylan and

 2     Ms. Bennett began communicating about the

 3     allegations against Mr. Cuomo?

 4              MS. PERRY:  Yes.  I'm glad you asked,

 5     Your Honor, because I did want to come to that

 6     because Mr. Cuomo's papers -- the letter motion

 7     requesting this conference says at least twice, and

 8     it has been a theory of the case, that Ms. Boylan is

 9     the provocateur in this case, that she induced other

10     people, including Ms. Bennett to the point here to

11     come forward; that she was the person that created

12     this domino effect.

13              And with regard specifically to

14     Ms. Bennett -- and from what I've seen in the

15     seconds that I had to look at these communications,

16     Ms. Bennett, it seems, from the complaint, came

17     forward with her sexual harassment allegations in

18     the spring or summer of 2020.  She did not know

19     Ms. Boylan at the time.  They had never met.  They

20     knew nothing about each other.  They were

21     completely, you know, parallel, had their own

22     independent, traumatic sexual harassment experiences

23     with the then-governor, and did not know each other,

24     had not spoken until Ms. Boylan came forward in

25     December of 2020.  This is my understanding with
```

1    public tweets.

2             And then it was Ms. Bennett, as I

3    understand it, who came forward and reached out to

4    Ms. Boylan.  This is my understanding.  And, again,

5    I have an imperfect understanding, and I just saw

6    these records.

7             THE COURT:  You're not under oath.

8             MS. PERRY:  Thank you, Your Honor.

9             And so I think that's an inaccurate

10   rendition of the facts here, to say that Ms. Boylan

11   was the instigator here who created, you know, this

12   whole domino effect that took the governor down.

13            But, in any event, I think that, you know,

14   these -- I believe it's 19 categories of

15   documents -- really has nothing whatsoever to do

16   with the facts in this case -- I'm sorry, 17

17   categories of documents -- other than, as I

18   mentioned, you know, the communications and the

19   documents that go specifically to communications

20   with the plaintiff in this case and to her lawsuit.

21            And so I certainly would be willing to sit

22   down with Ms. Glavin and Ms. Trzaskoma and see if we

23   can work out reasonable search terms.  I would like

24   to think that we can and wouldn't have to burden the

25   Court with that.

```
1              THE COURT:  Okay.  Thank you.
2              I do want to give Ms. Trzaskoma a chance to
3    respond, but I should hear from Ms. Sulkowski next
4    on behalf of Ms. DeRosa.
5              MS. SULKOWSKI:  Thank you, Your Honor.
6    Sarah Sulkowski.
7              Your Honor, we agree with Governor Cuomo's
8    counsel, that it's clear that Ms. Boylan was the
9    instigator of the process that led to the filing of
10   this complaint.  And importantly, the plaintiff, in
11   re-tweeting Ms. Boylan's initial allegations against
12   the governor, said expressly that these allegations
13   are emblematic of what the executive chamber under
14   Governor Cuomo was like, and, it appears, tailored
15   her own accusations to match those.
16             And so evidence that Ms. Boylan's
17   allegations were false and that she had -- her
18   credibility is at issue and that she had a motive to
19   lie, or perhaps multiple motives to lie, would go
20   directly to plaintiff's own credibility and the
21   credibility of her allegations.  I don't think that
22   should be overlooked.
23             Again, you know, plaintiff's initial
24   disclosures named Ms. Boylan, not as a witness, but
25   as an individual likely to have discoverable
```

1    information relevant to this action.  And those

2    initial disclosures have not been revised or

3    corrected.  They're still extant, as well as

4    Ms. DeRosa's and Governor Cuomo's initial

5    disclosures, all of which identify Ms. Boylan as

6    having discoverable information.

7         THE COURT:  All right.  Well, it's

8    basically undisputed, and there's evidence now

9    before the Court that she had communications with

10   Ms. Bennett about her allegations concerning

11   Governor Cuomo.  So I don't think there's any

12   dispute that the initial disclosures are correct in

13   including Ms. Boylan, but I think you're placing a

14   lot more weight on that than is warranted.

15        MS. SULKOWSKI:  Well, the concept of

16   relevant information under Rule 26 is broad for a

17   reason:  Because parties should be able to explore,

18   you know, what a plaintiff -- particularly what a

19   plaintiff herself denominates as relevant

20   information.

21        I know the Court doesn't have Ms. DeRosa's

22   document subpoena in front of it.  I apologize for

23   that, but we didn't want to submit it at the last

24   minute.  But it does seek categories of documents

25   extremely similar to those sought by Governor Cuomo;

1   for example, communications with or about Ms. DeRosa

2   and Governor Cuomo during the relevant period.

3        These, even if not directly with plaintiff,

4   go to the working environment in the executive

5   chamber, which is a core part of the allegations of

6   both women and, thus, to plaintiff's claims and

7   Ms. DeRosa's defense for those claims.

8        Communications concerning investigations of

9   allegations against Governor Cuomo -- you know,

10  again, if Ms. Boylan was orchestrating a campaign

11  against the governor, as we believe she was, these

12  communications may reveal that, and that would go to

13  Ms. Bennett's credibility as well.

14       THE COURT:  How?

15       MS. SULKOWSKI:  Well, again, if Ms. Boylan

16  persuaded Ms. Bennett to join her, or if

17  Ms. Bennett, on her own conformed to what we think

18  is her pattern of behavior, which is to see a woman

19  alleging sexual harassment or assault and to try to

20  buttress her claims with her own allegations,

21  perhaps by exaggerating things she experienced that

22  were de minimus, you know, the -- Ms. Boylan's

23  communications evidencing that orchestrated campaign

24  or the falseness of her own allegations that

25  Ms. Bennett then tailored her own to match would be

1    highly relevant.

2          THE COURT:  Then all falls into the two

3    that we've been talking about, that Ms. Boylan's

4    counsel just said she was willing to work with you

5    about, which is the communications between

6    Ms. Bennett and Ms. Boylan.

7          MS. SULKOWSKI:  Respectfully --

8          THE COURT:  Yet that doesn't get you to all

9    of her communications with anybody else in the

10   governor's office about other complainants, for

11   example.

12         MS. SULKOWSKI:  We think those would be

13   relevant because, again, if Ms. Boylan's

14   allegations, which Ms. Bennett has referred to as

15   emblematic, as indicative of what it was like in the

16   executive chamber, before she ever aired her own, if

17   those are false and her communications with others

18   demonstrate that they're false or they're

19   exaggerated or they're trumped up, that's relevant

20   to what plaintiff subsequently did and why she did

21   it.

22         I would like to mention at this point that,

23   you know, we had a meet and confer with Ms. Boylan's

24   counsel.  They said they would take our requests

25   under consideration.  They later came back to us and

```
1    reiterated that they would not produce anything to
2    us.  And I would note that I believe
3    Governor Cuomo's counsel has received a de minimus,
4    you know, 25 pages.  We haven't even received that.
5    We've received nothing.  And they've told us we will
6    receive nothing.  I appreciate their expressed
7    willingness today to reconsider that position, but I
8    don't think we should be forced to go back into a
9    meet and confer with counsel who could have made
10   these offers long ago without getting a ruling and
11   potentially, quite likely, have to be back before
12   the Court in short order.
13            THE COURT:  Well, it's not shocking to me
14   that this group is not able to reach agreement among
15   themselves without Court intervention.  So you're
16   here now, and I'm going to give you guidelines for
17   how you're going to meet and confer and what the
18   scope is going to be.  But let me hear from Ms.
19   Trzaskoma again.  In particular, if you could
20   address, you know, if the date range were to begin
21   in December 2020, for example, you know, tell me why
22   that's not sufficient.
23            MS. TRZASKOMA:  Oh, that for us, is
24   sufficient.  That is when -- I mean, we didn't know
25   when -- so, you know, as Ms. Perry said -- I think
```

1    she said that they didn't know each other, that

2    Ms. Bennett and Ms. Boylan didn't know each other

3    before then or, you know, may not have been

4    communicating.

5            But, in any event, it's really about the --

6    it's really about that time frame.  We now know

7    that's basically when they started communicating, so

8    we're -- so, you know, we thought that the request

9    was not overly broad because it would be naturally

10   limited in time by the -- you know, when they were

11   communicating.

12           But I -- you know, I wanted -- I appreciate

13   Ms. Sulkowski's comments because I think they mirror

14   ours, which is -- so Ms. Bennett had complaints.  As

15   I understand it, those -- the nature of her

16   complaints changed significantly and dramatically

17   after she started communicating with Ms. Boylan and

18   after -- she never said previously -- and I know --

19   she's going to disagree, I'm sure.  It's not what

20   her complaint reflects, but I believe it's what the

21   evidence will reflect -- that she did not previously

22   complain that she was sexually harassed.  And that

23   changed after she started speaking with Ms. Boylan.

24           And, you know, for Governor Cuomo's defense

25   of this case, I do not -- he is going to rely on

1    Ms. Boylan and the fact that she was out in public
2    making false accusations and using those false
3    accusations to recruit others to embellish their own
4    claims.  And that is his defense.  And I appreciate
5    that Ms. Boylan doesn't like it, Ms. Bennett doesn't
6    like it, a lot of the other complainants don't like
7    it, but that is his defense.
8            And just to Ms. Perry's point about the
9    issues in Trooper 1, as Your Honor knows, that
10   complaint is very different than this complaint; but
11   they both share a reliance on the Attorney General's
12   report.  The Attorney General's report is part of
13   Ms. Bennett's complaint, just as it is Trooper 1's.
14   They have slightly different consequences.  But
15   Ms. Bennett's entire retaliation claim has to do
16   with statements that were made on Governor Cuomo's
17   behalf after the AG report came out.  And you cannot
18   understand the purpose of those statements and the
19   defense of him without understanding that the AG
20   report and investigation were deeply flawed, were
21   full of inaccuracies, and contained, you know,
22   allegations, credited allegations, including
23   Ms. Boylan's.
24           So, you know, to try to disentangle -- and
25   in Trooper 1, Judge Merkl, you know, I think

1    approached that case -- and you can see it,
2    Your Honor, I think, in the transcripts, which,
3    again, I apologize for not providing to Your Honor
4    earlier.  I think you can see it there, that
5    Judge Merkl was hoping that case would get whittled
6    down, but it is as broad as it ever was.
7            And, you know, so to say that we wanted to
8    relitigate the Attorney General's report, yeah,
9    because it is front and center in that case, and it
10   is inevitably, unless the retaliation claims get
11   dismissed, it is going to be part of this case.
12           So it's not -- it is chopping us off at the
13   knees to say there can be a lawsuit that complains
14   about a defendant's reaction to a public report and,
15   you know, about statements that were made about how
16   unreliable it was and not for -- for Governor Cuomo
17   not to be able to explain to a jury why he believed
18   that and why it is true that it's unreliable.
19           So, you know, I think, and I appreciate
20   that Your Honor is going to give some guidance, but
21   I don't think that it is appropriate to say that
22   we're getting only the communications directly
23   between Ms. Bennett and Ms. Boylan because I do
24   think that Ms. Boylan was communicating with a lot
25   of other people around Ms. Bennett and Ms. Bennett's

1    allegations, and we were entitled to that as well.

2            THE COURT:  Okay.  Thank you.

3            MS. TRZASKOMA:  And the final thing I would

4    say is I know that there is this letter, as I

5    mentioned, that, you know, Ms. Bennett is not going

6    to call Ms. Boylan as a trial witness.  But in her

7    initial disclosures, she says she is going to rely

8    on Ms. Boylan's and Trooper 1's allegations.  And if

9    Ms. Bennett is going to rely -- even if not calling

10   her as a trial witness, if she is planning to rely

11   in any way, shape, or form on Ms. Bennett's

12   allegations, we are entitled to full discovery about

13   those allegations.

14           THE COURT:  Okay.  Thank you.

15           Ms. Schnell, can you speak to that last

16   point about the suggestion that Ms. Bennett may be

17   relying on Trooper 1's or Ms. Boylan's allegations

18   to support her?

19           MS. SCHNELL:  No.  If you look -- we don't.

20   If you look at the complaint, we do not -- unlike

21   the Trooper 1 complaint, which if you looked at it,

22   Your Honor, it includes lengthy sections on each of

23   the women who made complaints about Governor Cuomo.

24   Ms. Bennett's complaint does not.  Ms. Bennett's

25   complaint stands on whether she was sexually

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    harassed by Mr. Cuomo, not whether any of these

2    other women were.

3              THE COURT:  Okay.  Thank you.

4              Ms. Perry, any points that you want to

5    respond to before we try to have a more focused

6    discussion of the scope guidance that I'm going to

7    give you?  And let me just say before you do that,

8    Ms. Longley, I appreciate that you've been waiting

9    here for 45 minutes.  We will get to you very

10   shortly.

11             Go ahead, Ms. Perry.  Any points you want

12   to make in response to what either Ms. DeRosa's or

13   Mr. Cuomo's counsel said?

14             MS. PERRY:  I don't think I do, Your Honor.

15   Ordinarily, I do, but it's almost impossible to

16   respond to because there's nothing focused there.

17   They're basically just saying -- I mean, they have

18   said very explicitly, we want to relitigate the

19   entirety of the AG's report and that wasn't fair to

20   the governor, and, therefore, we get to take

21   incredibly broad, incredibly damaging, incredibly

22   burdensome, not particularly relevant discovery of a

23   non-party.  And how can I really even respond to

24   that?

25             You know, I've made my points.  If Your

1    Honor is even considering it, I certainly would

2    request some process and the opportunity to brief

3    that, but it just seems to me so outlandish and so

4    beyond the pale that it's hard to respond to at this

5    point any more than that.

6           THE COURT:  Okay.  Well, before we end

7    up -- I'm hoping to avoid any motion practice

8    altogether, so that's why I want to give you

9    guidance about what I want you to meet and confer

10   about, and hope that we can come to a resolution

11   through that process without there having to be

12   motion practice as to the other request.

13          So what the -- what I think the scope

14   should be, focusing on request number 1, which is

15   communications with Ms. Bennett about any

16   allegations of sexual harassment or misconduct by

17   Governor Cuomo, and number 17, which is

18   non-privileged communications concerning this

19   lawsuit -- this lawsuit or Ms. Bennett's lawsuit

20   against New York State, which, obviously, is not

21   before me, but I think the parties should focus on

22   those two requests.

23          To Ms. Trzaskoma's point, is not limited to

24   just communications between Ms. Bennett and

25   Ms. Boylan, but if Ms. Boylan had any communications

1    about Ms. Bennett or Ms. Bennett's allegations with

2    someone else, then the search terms should -- that

3    the parties agree on should capture those

4    communications as well.

5          And then the time period would be from

6    December 2020.  I don't know the exact date in

7    December, but the parties should have that.

8    December 2020 through, I believe it's September 14,

9    2022, which is the date Ms. Bennett filed her

10    complaint in this case, and that was the same

11    limitation that we put on the non-party subpoena to

12    Mr. Cuomo's sister back in November.

13          So let me just first ask Ms. Perry if those

14    scope limitations need any clarification.

15          MS. PERRY:  No.  I think that's clear,

16    Your Honor.  Thank you.

17          THE COURT:  Okay.  Ms. Trzaskoma?

18          MS. TRZASKOMA:  I think we would just want

19    to make sure that it's through the date of the

20    subpoena, so from December 2020 through the date of

21    the subpoena.  And I appreciate Your Honor's

22    clarification of that.

23          THE COURT:  Why?  Why past the date that

24    the complaint was filed?

25          MS. TRZASKOMA:  Because I believe they -- I

1    mean, look, I don't know if there's a representation
2    that they did not communicate about Ms. Bennett's
3    lawsuit or allegations after the lawsuit was filed.
4    Then there should be no issue.  But if there were
5    communications about the lawsuit afterwards, that's,
6    you know, also relevant.
7                MS. PERRY:  Your Honor, why don't we look
8    at that and --
9                THE COURT:  Yes.  Why don't you see what
10   the volume is.
11               MS. PERRY:  -- something we can talk about.
12   Yes.
13               THE COURT:  Maybe you can do a -- yeah,
14   Ms. Perry, maybe you can do a cutoff at the date of
15   the complaint and then afterwards and see what the
16   volume is after.  I'm trying to be consistent with
17   respect to the non-parties, and I'm also, again,
18   mindful of the burden on Ms. Boylan, so, hence, the
19   desire to -- I mean, that already is an almost
20   two-year time period that we're imposing on her.
21               So, for now I'm going to limit it to the
22   same cutoff date of September 14, 2022 as we imposed
23   with respect to Ms. Cuomo, but the parties can meet
24   and confer about that.  If there are, you know, two
25   things in January 2023 or something, then it's

                AMM TRANSCRIPTION SERVICE - 631.334.1445

1    presumably not very burdensome, but a -- well, for

2    now, the cutoff date will be September 14, 2022.

3           Okay.  With that guidance -- I'm sorry.

4    Ms. Sulkowski, did you want any clarification or

5    comment on the proposed scope limitation?

6           MS. SULKOWSKI:  No.  That's clear,

7    Your Honor.  Thank you.

8           THE COURT:  Okay.

9           All right.  I appreciate the parties'

10   willingness to meet and confer about that.  And at

11   the end of this conference, we'll talk about a date

12   by which I'll want a report back from you on that.

13          Any other issues with respect to the

14   subpoena to Ms. Boylan at this time?

15          MS. TRZASKOMA:  Your Honor, this is Theresa

16   Trzaskoma.

17          Not with respect to the subpoena to

18   Ms. Boylan or directly, but just to what Ms. Schnell

19   represented to the Court in terms of Ms. Bennett not

20   relying on Ms. Boylan's allegations.  And, you know,

21   I just want to clarify that she -- that what I

22   understood Ms. Schnell to be saying is that she was

23   relying solely on -- Ms. Bennett was going to rely

24   solely on her own allegations, and that she was not

25   going to rely on the allegations of Ms. Boylan or

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    anyone else, to include, for example, Trooper 1, in

2    connection with establishing her claim.

3            And so it would be helpful to get clarity

4    on that because that's not what the -- you know,

5    that's not what's in the complaint and it's not

6    what's in their initial disclosures.  And so I --

7    you know, I want to make sure, as we're going

8    forward with discovery, that we have a clear

9    understanding of what this is going to look like as

10   we go forward.

11           THE COURT:  Well, I mean, you can get a

12   transcript of this conference, and you'll have

13   Ms. Schnell's words.

14           But, Ms. Schnell, if there's anything you

15   want to elaborate on or clarify, you're welcome to.

16           MS. SCHNELL:  You know, if you look at the

17   complaint, we certainly reference the fact that

18   Lindsey Boylan came forward and made a blog post.

19   And that is a fact that, then, Charlotte came --

20   Ms. Bennett came forward as well.

21           So are we not going to refer to that fact

22   in terms of the chronology of what happened here?

23   But we are not going to call her, we are not going

24   to try to prove that Governor Cuomo sexually

25   harassed her at all.

          AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MS. TRZASKOMA:  Your Honor, this is --
 2     again, this is Theresa Trzaskoma.
 3              This is exactly my concern, is that if
 4     Ms. Bennett is going to get up and say Ms. Boylan
 5     made allegations against Governor Cuomo and I
 6     decided to come forward too, we're entitled to show
 7     that these other allegations are not true.
 8              THE COURT:  But Ms. Bennett is not saying
 9     that what Ms. Boylan alleged is true.  She's saying
10     that she said it.  And all of this -- that's all a
11     question for Judge Broderick, if and when any of
12     these claims get to trial, what the scope of the
13     evidence will be that is actually before the jury.
14     So --
15              MS. TRZASKOMA:  Well, I -- I think that it
16     is --
17              THE COURT:  I'm not going to --
18              MS. TRZASKOMA:  I just want to make a
19     record that Governor Cuomo is being denied discovery
20     into that point because I do not -- because it is
21     extremely prejudicial if this is supposed to be a
22     case solely about Ms. Bennett and Ms. Bennett gets
23     in the side door someone else's -- the fact that
24     someone else made an allegation, which the jury,
25     inevitably, without -- you know, without our ability
```

1    to say that that allegation turned out to be totally

2    fabricated and hogwash, you know, and to prove it,

3    to back it up, I think that's just -- that's exactly

4    the point, that this -- you know, we're not even

5    going to be in a position to move in limine properly

6    if we cannot show the incredible prejudice that

7    would result.

8              I mean, just imagine the motion in limine,

9    which is, you know, without the benefit of being

10   able to establish through discovery that Ms. Boylan,

11   you know, fabricated, lied, threatened witnesses

12   and, you know, lied about the circumstances under

13   which she left EFD.

14             You know, her initial allegation is that

15   she left because Governor Cuomo harassed her, and

16   that's not true.  That's the allegation that

17   Charlotte Bennett is going to be referring to.

18             THE COURT:  Okay.  But it is not correct

19   for you, your statement, Ms. Trzaskoma, that

20   Mr. Cuomo is being denied discovery.  I just ordered

21   that he's being allowed to get discovery and I

22   circumscribed the scope of it.  So don't distort the

23   record and don't put words in my mouth.  If --

24             MS. TRZASKOMA:  Well, I -- so I -- Your

25   Honor --

         AMM TRANSCRIPTION SERVICE - 631.334.1445

1          THE COURT:  Ms. Bennett does not need to

2    even mention Ms. Boylan.  The question is whether

3    what she alleged Mr. Cuomo did, whether that

4    happened or not.  The only thing that matters is

5    what Ms. Bennett says about that.

6          MS. TRZASKOMA:  I --

7          THE COURT:  So I realize that the

8    allegation is in the complaint that Ms. Boylan said

9    something first, but it's not relevant to whether

10   what Ms. Bennett is alleging is true or not; and

11   continually trying to shove that door open is not

12   going to work.

13         MS. TRZASKOMA:  No.  Your Honor, I am not

14   trying -- I would like the door to be slammed firmly

15   shut, and Ms. Schnell has left the door wide open.

16   And I apologize for overstating that the Court is

17   not denying us discovery, but has limited the

18   discovery such that we, Governor Cuomo is not going

19   to be in a position to be able to establish, you

20   know, in the event that Ms. Bennett gets up and says

21   Ms. -- I saw this tweet from Ms. Boylan, she said

22   this happened to her, and we have to be able to meet

23   that.  And I don't have any -- you know, we're

24   not -- this is still early discovery.  I don't have

25   a crystal ball.  I can't foresee the future, but

                AMM TRANSCRIPTION SERVICE - 631.334.1445

1    I -- you know, I think it -- to allow Ms. Bennett

2    even to make that statement or even to contemplate

3    that she's going to be able to make -- or try to

4    make that statement without giving Governor Cuomo

5    discovery into that issue is very problematic.

6             THE COURT:  Well, at this time, I have not

7    been persuaded that requests 2 through 16 and 18 and

8    19 are relevant and proportionate to the needs of

9    this case.  So at this time, based on the record

10   before me, the only request to which Ms. Boylan is

11   going to be required to respond, and the parties

12   have been given guidance about how to meet and

13   confer about a scope for that response, are numbers

14   1 and 17.

15            If something changes and Mr. Cuomo thinks

16   that he has good cause to have me broaden the scope

17   of what I have permitted as to Ms. Boylan, you can

18   come back and show me that.  That's always the case.

19   But in -- for now, you have this transcript.  And if

20   something changes and you have good reason to come

21   back to me and show me that something more is

22   warranted, you can do so.  But we need to move on.

23            MS. TRZASKOMA:  I appreciate that,

24   Your Honor.

25            THE COURT:  We need to move on to the

            AMM TRANSCRIPTION SERVICE - 631.334.1445

1  Attorney General folks who have been very, very

2  patient.

3        So do you want to address -- to start with

4  that, Ms. Trzaskoma, the issues with respect to the

5  AG and, in particular, their suggestion that we stay

6  that while Judge Merkl is completing her

7  consideration of the motion for reconsideration?

8        MS. TRZASKOMA:  So as I -- so I don't think

9  that there's any reason for this Court to defer to

10  what is happening in the Trooper 1 action.  And as I

11  understand it, I don't -- that motion for

12  reconsideration was fairly limited to the July 2023

13  order on our motion to compel, which has -- you

14  know, is no longer relevant because what we're

15  talking about and what Judge Merkl is considering

16  now with respect to the documents from the AG's

17  Office is a completely different universe of

18  materials, much narrower.

19        And, you know, so I don't actually know

20  that Judge Merkl is considering the motion for

21  reconsideration, but the issues that the AG has

22  raised in any event, were never decided by

23  Judge Merkl's July 2023 order.  They are presenting

24  in this case in a completely different way, and I

25  think that we should move on to briefing those

1    issues.  They are, you know, complicated issues.

2    The Attorney General has claimed, you know,

3    sovereign immunity from any subpoena and has also --

4            THE COURT:  Let's just -- let's back way

5    up, though.

6            MS. TRZASKOMA:  Yes.

7            THE COURT:  Have there been any discussions

8    about what the AG may be willing to produce to you?

9            MS. TRZASKOMA:  Our understanding is the AG

10   is willing to produce nothing to us.

11           THE COURT:  All right.

12           Ms. Longley, is that the case?  Or is there

13   some universe -- and I know you had lengthy

14   discussions with Judge Merkl in the Trooper 1 case

15   about what narrow range of materials that the AG was

16   willing to explore.

17           To the extent that I'm right about that, is

18   there any universe of documents with respect to

19   Ms. Bennett; and you've just heard the lengthy

20   discussion about how we're trying to focus non-party

21   discovery on Ms. Bennett's allegations here.  Is

22   there anything that the AG has that it would be

23   willing to consider providing?

24           MS. LONGLEY:  Hi.  Yes, Your Honor.  Our

25   office is always willing to consider anything

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   reasonable and proportional and relevant to the case

2   if it will resolve the subpoena and not require us

3   to engage, continually engage in this burdensome

4   litigation.  We were willing to try that in

5   Trooper 1.  Unfortunately, it did not result in

6   resolving the subpoena.

7        We are -- you know, we -- I would say, as a

8   general matter we would -- we were open to a similar

9   approach to the Bennett subpoena; however, when we

10  said, are there any path forward where we give you

11  non-privileged materials that are tailored to the

12  complaint and the legal claims in the Bennett case,

13  the answer was, we want the interview memos, and

14  they will not agree to any resolution that doesn't

15  include interview memos.  And given the extensive

16  litigation we've had with them on multiple fronts,

17  we're not willing to give it piecemeal and just give

18  them some materials if it's not going to resolve the

19  subpoena.

20       So in Trooper 1, we did voluntarily give

21  them in an act of good faith -- in an opening act of

22  good faith, we said, here, we'll look at documents

23  that were collected by the investigators that

24  reference Trooper 1 by name.  And we believe you

25  could get these materials under the FOIL statute,

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    which is the way the State has waived sovereign
2    immunity in the context of -- you know, as it would
3    relate to this case.
4          So we offered that.  We thought it was
5    reasonable.  It didn't go -- you know, it didn't go
6    as we would have liked it to go.  So I think in this
7    case, you know, we would be willing to do that if
8    Defendant Cuomo would agree that that would resolve
9    the subpoena and he wouldn't move to compel
10   compliance and seek our privileged material.
11         THE COURT:  So, Ms. Trzaskoma, is the
12   interview memo do or die?
13         MS. TRZASKOMA:  Yeah, that's what we're
14   seeking, Your Honor.  And we don't agree that they
15   are privileged.  And we don't agree that the
16   Attorney General's Office enjoys sovereign immunity
17   from federal subpoena.
18         And I don't -- you know, what we got in
19   Trooper 1 were four documents with Trooper 1's name
20   on them.  They were, like, telephone records or
21   something.  And, you know, it's not it -- it's not
22   the material that we're looking for.  We're looking
23   for prior statements by witnesses with information
24   relevant to Ms. Bennett's claims.
25         And so I don't think there's any point in

1    delaying.  I think, you know, we need to move on
2    with briefing this.  And we just vehemently disagree
3    on the law here.
4             THE COURT:  Okay.  But how is Judge Merkl's
5    ruling -- she quashed your subpoena in --
6             MS. TRZASKOMA:  She did not quash it.
7             THE COURT:  Well, she denied your motion to
8    compel, I guess, so --
9             MS. TRZASKOMA:  She did.  She found it was
10   too broad, and it has since been narrowed.  And she
11   now then directed the Attorney General's Office to
12   provide a privilege log of the interview memos,
13   which the AG's Office did.  Judge Merkl then
14   directed the AG's Office to provide her with those
15   interview memos for in camera review, which the
16   Attorney General did in late -- or, like, mid- to
17   late December.
18            I don't know how Judge Merkl -- what
19   Judge Merkl's plan is, but I don't think it involves
20   resolving the objections that the Attorney General's
21   Office has -- is asserting here, and including, you
22   know, sovereign immunity, so -- and the universe of
23   documents is different.  And --
24            THE COURT:  But it's the interview memo.
25   It's the same thing you're asking for here.  Why --

AMM TRANSCRIPTION SERVICE - 631.334.1445

1           MS. TRZASKOMA:  Well, it's a different
2    universe of interview memo.
3           It's a different universe of interview
4    memos.  I mean, look, our dispute with the Attorney
5    General has been going on for more than a year in
6    front of -- in the Trooper 1 action.  And, you know,
7    I don't know what to say, except I think -- I don't
8    think -- I think we have an independent lawsuit
9    here.  It is related, but it is not the same.  And
10   Judge Merkl, you know, she has indicated, as you
11   probably saw in the prior transcript, that she would
12   need additional briefing on the sovereign immunity
13   issue.  And that hasn't --
14          THE COURT:  Okay.  But why should we
15   be briefing it twice?
16          MS. LONGLEY:  Your Honor --
17          MS. TRZASKOMA:  We haven't briefed it.
18          MS. LONGLEY:  This is Serena from the AG's
19   Office.
20          I'd like to just jump in, if I can, to say
21   that the materials and the briefing that are at
22   issue right now and that Judge Merkl ordered a
23   privilege log and in camera review of are the exact
24   same category of materials that Cuomo is seeking in
25   the Bennett case.  And those two categories are

```
 1    unredacted transcripts and interview memos.
 2            And we have raised the same objections in
 3    both cases to those categories of documents.  And
 4    it, you know, I can't predict 100 percent when Judge
 5    Merkl will rule, but based on her asking for in
 6    camera review, it appears that she is at least
 7    considering ruling on the privilege issue of the
 8    interview memos and the unredacted transcript.
 9            And it is our position that -- again, not
10    knowing the exact scope of her ruling, that it could
11    have some preclusive effect on Defendant Cuomo in
12    this case, and that it makes sense, given our
13    non-party status, given the state of affairs in the
14    Bennett case and where it is, you know, in
15    discovery, that it's appropriate to wait and see
16    what Judge Merkl does, and see if there is any
17    preclusive effect or narrowing or limiting of the
18    issues before we have to go through the burden as a
19    non-party of litigating the same objections with
20    Defendant Cuomo in the Southern District.
21            THE COURT:  Okay.  Thank you.
22            Ms. Trzaskoma?
23            MS. TRZASKOMA:  May I just be heard briefly
24    on that, Your Honor, because I don't -- because it's
25    not -- I don't think that's entirely accurate.
```

```
 1              THE COURT:  Yes.  Go ahead.

 2              MS. TRZASKOMA:  So --

 3              THE COURT:  I mean, you don't know whether

 4    it's accurate or not.  I mean -- go ahead.

 5              MS. TRZASKOMA:  Yeah.

 6              Well, so Ms. Longley is correct that the

 7    types of documents we are seeking in both cases,

 8    interview memos, unredacted transcripts, that's the

 9    same.  What's different are the, you know, the, kind

10    of, like, the buckets of those.

11              So in the Trooper 1 action, for example, we

12    narrowed our request to all of the interview memos

13    involving any current or former member of the New

14    York State Police and any interview memo of any of

15    the ten other claimants who are in Trooper 1's

16    complaint.

17              And, arguably, most of that material is not

18    relevant to Ms. Bennett's claim, particularly if

19    she's not planning to rely on Trooper 1.

20              THE COURT:  What are you seeking -- which

21    memos are you seeking here?

22              MS. TRZASKOMA:  And here, we're seeking

23    memos of executive chamber employees, current and

24    former who were interviewed, since that relates to

25    the environment, the work environment at the
```

1    Executive Chamber, and any interview memos or

2    unredacted transcripts that mention Ms. Bennett.

3            THE COURT:  With that narrowing,

4    Ms. Longley, does it change anything about the

5    Attorney General's position?

6            MS. LONGLEY:  No, Your Honor, it doesn't.

7            And I will say that we heard earlier

8    Ms. Trzaskoma talk about that, yes, what she wants

9    to do here is re-litigate the OAG report.  And I'll

10   just say this was an OAG investigation into sexual

11   harassment by the governor in the Executive Chamber.

12   And so by saying we're only seeking interview memos

13   of current or former executive chamber employees,

14   that doesn't really narrow things very much at all.

15   It's almost all of the witnesses.

16           So it may look on paper like a narrowing.

17   It's not a meaningful narrowing.  And it really goes

18   to, again, what we heard before is that -- and this

19   is exactly what Cuomo argued in Trooper 1

20   unsuccessfully, which is that he wants to

21   re-litigate the OAG report.

22           And if I can go to this concept that was

23   brought up about retaliation, I just want to put on

24   the record that whether or not -- you know,

25   retaliation as a legal matter, does not depend on

1    the validity of the underlying complaint.  So it

2    doesn't depend on whether there was sexual

3    harassment or not, it doesn't depend on if the

4    investigation was thorough.

5         You know, Defendant Cuomo wants to pursue

6    those things for his own political rehabilitation.

7    It's not about the actual legal claim for

8    retaliation, which is just did the person engage in

9    protected activity; and then was there, you know, a

10   retaliatory act in response to engaging in the

11   protected activity.  You don't need to re-litigate

12   the OAG report in order to deal with the retaliation

13   claim as a matter of law.

14        So I think we're getting far afield, and

15   we're talking also about, you know, the scope and

16   the relevance of certain interview memos here as

17   opposed to Trooper 1, but I don't want to lose sight

18   of the fact that we've also asserted a sovereign

19   immunity defense in both cases; the briefing of that

20   is fully submitted.

21        You know, Judge Merkl may want more

22   briefing.  But if she gets to that, I believe it

23   would happen before anything would happen in the

24   Bennett case.  Again, I think it makes sense to see

25   how things play out in the Eastern District, where

1    we're litigating the exact same issues, the exact

2    same sovereign immunity defense.  Relevance also

3    came up.

4         So everything is really still on the table

5    there.  They've sought reconsideration of

6    Judge Merkl's denial of their motion to compel,

7    which she denied on relevance and burden grounds and

8    proportionality, but she hasn't reached the other

9    issues.  She may reach them.  It seems like she is

10   going to reach at least some of them.

11        And really what Defendant Cuomo is trying

12   to do here is get another do-over.  And he even

13   indicated that in the last conference before

14   Judge Merkl, where we brought up the fact that he's

15   now subpoenaing our lawyers who were deputized to

16   carry out a government investigation under Executive

17   Law 63(8).  And he has a novel theory that he can --

18   you know, if he can't get the materials from us

19   because of sovereign immunity, he can just subpoena

20   our deputized lawyers to get the materials that way.

21   And --

22             THE COURT:  We don't need to get into that

23   today.

24             MS. LONGLEY:  Okay.

25             THE COURT:  That's not before me.

```
 1              But what if the subpoena were limited to
 2   interview memos, the interview memos for Ms.
 3   Bennett's interview and any interview memos that
 4   reference Ms. Bennett, as well as any documents that
 5   the AG received in connection with Ms. Bennett's
 6   allegations, whether from her or from somebody else?
 7              What if it were limited that way; would the
 8   AG still stand on the sovereign immunity objection?
 9              MS. LONGLEY:  Yes, Your Honor.  I think
10   because you're going to any interview memos.
11              And, I'm sorry, I didn't catch the second
12   category.  You said plaintiff's interview memo.  And
13   then who were the other -- what were the other
14   interview memos?
15              THE COURT:  The interview memos that
16   discussed -- just the portions of any interview
17   memos that discussed Ms. Bennett.
18              MS. LONGLEY:  Yeah, so we have asserted
19   privilege -- in addition to sovereign immunity,
20   we've asserted privilege over the entirety of the
21   interview memos.  Plaintiff doesn't have her own
22   interview memo.  Nobody has their interview memo.
23   And there's a reason for that.
24              THE COURT:  That's the review that
25   Judge Merkl is doing, though.  We're not having two
```

1    magistrate judges do two privilege reviews.  It's

2    bad enough that one of us has to do it.  And I feel

3    badly that it's Judge Merkl bearing the brunt of it.

4    So, you know we're not going to -- I don't want to

5    risk conflicting privilege decisions either.

6              MS. LONGLEY:  Which is why it makes sense

7    to wait for her to rule on it before, you know, the

8    same thing gets submitted to Your Honor.

9              And I will say that the privilege issues

10   are really important to this office because there's

11   attorney-client privilege in there.  There's

12   attorney work product.  But the biggest thing is

13   probably law enforcement privilege on those

14   documents.  And the documents are full of

15   information about people that's not public,

16   cooperating witnesses.

17             And as we mentioned briefly in our letter,

18   I think it's in footnote 1, which has even been

19   borne out more recently, there has been from the

20   beginning, there were credible fears by cooperating

21   witnesses of retaliation that has been -- there's

22   been a lot in the press.  There's a lot in our

23   briefing in Trooper 1.

24             Just last week, the First Department

25   reinstated a retaliation claim brought by a former

1    executive chamber employee who claimed -- alleged
2    that he was fired because he spoke to the OAG
3    investigators and corroborated sexual harassment by
4    Governor Cuomo.  And that was just reinstated.  And
5    this is why, like, you know, it is very important to
6    our office not to be disclosing to the very person
7    who they're -- who they have credible fears of
8    retaliation exactly what they said.  And it's really
9    not germane to Ms. Bennett's lawsuit here.  It's not
10   relevant, it's not proportional, and there are real
11   privacy interests, privilege interests, sovereign
12   immunity interests.
13          So I think if you weigh -- if you look at
14   the big picture and all the interests on either
15   side, there really is not a compelling case to --
16   for us to consider providing them voluntarily.
17          THE COURT:  Okay.  All right.
18          Let's circle back to the timing with
19   respect to Ms. Boylan because it's going to
20   influence the timing with respect to the AG
21   subpoena.
22          Is two weeks enough time for the parties to
23   meet and confer and be prepared to report to me
24   whether they've been able to reach an agreement with
25   respect to the search terms that Ms. Boylan will

1    implement?

2          Ms. Perry, is that achievable by

3    January 18th?

4          MS. PERRY:  I'm sorry, Your Honor.  I was

5    on mute.  By the 18th?  Was that for me?

6          THE COURT:  Yeah.  Well, the question is

7    for you, and it's --

8          MS. PERRY:  Yes.

9          THE COURT:  -- whether two weeks is enough

10   time for you to meet and confer with Ms. Trzaskoma

11   and Ms. DeRosa's counsel about the search terms that

12   Ms. Boylan would implement using the guidance that I

13   gave earlier?

14         MS. PERRY:  Yes, Your Honor.  That's more

15   than enough time.

16         THE COURT:  And what I would be doing is

17   asking the parties to report to me then as to

18   whether they've been able to reach an agreement or

19   if there's still a dispute.  If there's still a

20   dispute, then we'll have another conference.  And

21   then, I guess, why don't we in an abundance of

22   caution, I'll give you a date for another conference

23   the week after that.

24         How is -- you're on the west coast, right,

25   Ms. Perry?

```
 1              MS. PERRY:  No, Your Honor.  I'm in
 2   New York.
 3              THE COURT:  Oh, okay.  10 a.m. on Monday,
 4   January 22nd for a conference.
 5              MR. MORVILLO:  Your Honor?
 6              THE COURT:  Yes?
 7              MR. MORVILLO:  This is Greg Morvillo.
 8              Mr. Gruppuso and I are in a Rule 104
 9   hearing that day in New Jersey on the 22nd, 23rd and
10   24th.
11              THE COURT:  Okay.  How about 3 o'clock on
12   the 25th?
13              MS. TRZASKOMA:  That's good for me.
14              MR. MORVILLO:  That works.
15              THE COURT:  All right.
16              MS. PERRY:  Actually --
17              THE COURT:  Who is that a problem for?
18              MS. PERRY:  Yeah, I'm going to be out of
19   town for a board meeting.
20              THE COURT:  How about the next day at
21   3 o'clock; Friday the 26th.
22              MS. PERRY:  I'll still be at the board
23   meeting, but I could step out.
24              THE COURT:  Okay.  All right.
25              So 3 p.m. on the 26th, then we'll speak.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1    And what else, since we're not meeting until
2    Friday --
3            MS. TRZASKOMA:  Your Honor, this is
4    Ms. Trzaskoma.  I am not available on the 26th at 3.
5    I could do earlier that day.
6            THE COURT:  I'm committed on another case
7    earlier that day.  How about the 29th?
8            MS. TRZASKOMA:  The afternoon of the 29th
9    works.
10           THE COURT:  Okay.
11           Anybody else have a problem with the
12   afternoon of the 29th?
13           MS. PERRY:  I do not.
14           THE COURT:  Okay.  All right.  2 o'clock on
15   the 29th.
16           Ms. Longley, I'll get back to you, but --
17   because I will want to by that time see where things
18   have come out with respect to Judge Merkl.  And
19   we'll make a decision at that point whether we will
20   have to do motion practice and, if so, what the
21   scope will be.
22           MS. LONGLEY:  Okay, Your Honor.  Sorry.  So
23   are you asking about my availability on that day?
24           THE COURT:  Yes.
25           MS. LONGLEY:  Okay.  Sorry.  Could you --
```

1    do you remind repeating the day?

2              THE COURT:  Yes.  It's Monday, January

3    29th, at 2 p.m.

4              MS. LONGLEY:  That should work.

5              THE COURT:  Okay.  Great.

6              All right.  So we'll ask the parties to

7    meet and confer between now and then.  And by

8    January -- since we're not meeting until the 29th,

9    I'll give you until the 24th to provide me with a

10   joint status letter with respect to the parties

11   meeting and conferring and hopefully reaching an

12   agreement with respect to Ms. Boylan.  And then

13   we'll plan to discuss at that point whether any

14   developments in the Trooper 1 case have occurred

15   and, if so, how that will impact the scope of any

16   briefing that we would need here with respect to the

17   subpoena to the Attorney General; okay?

18             MS. TRZASKOMA:  Okay.  Your Honor, this is

19   Theresa Trzaskoma.

20             Sorry.  I appreciate the Court's patience.

21   I just have two issues that I want -- two points I

22   want to make in response to Ms. Longley because --

23   so the record is clear.

24             THE COURT:  Okay.

25             MS. TRZASKOMA:  First of all, we do have

                AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    Ms. Bennett's interview memo, which Governor Cuomo
 2    received in the context of discovery in a criminal
 3    investigation, in a criminal case that was
 4    dismissed.
 5            THE COURT:  Okay.
 6            MS. TRZASKOMA:  It's redacted, as I
 7    understand all of the interview memos are, for
 8    information that arguably is -- contains some sort
 9    of attorney impressions.
10            And the second -- so I just want to raise
11    that because I think it's not the case that, you
12    know, those interview memos have been kept in a
13    lockbox because they're privileged.
14            And the second issue is that the privilege
15    review that Judge Merkl is doing, there is -- I
16    think there is actually very little overlap between
17    what Judge Merkl is reviewing right now and what
18    Your Honor would be reviewing.  I mean, the
19    privilege log, which I'm -- which the Attorney
20    General's Office produced, the vast majority of the
21    interview memos are from troopers or former troopers
22    and other complainants, so --
23            THE COURT:  Right, but she's reviewing for
24    the same privileges, though.  So that's the point --
25    that's my point about not having to do -- make two
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1  magistrate judges do two privilege reviews.

2          I understand there may be different

3  documents, but she's reviewing for the same

4  assertions of privilege, of attorney-client work

5  product and law enforcement.  So it's the same.

6  It's the same nature that she's considering.  I

7  realize it may be a different memo, you know, a

8  different name on the memo, but it's the same

9  privileges.

10          MS. TRZASKOMA:  Well, I guess this goes --

11  yeah, I mean, it may be that there's some

12  combination of privilege and relevance.  I don't

13  know what her review is encompassing, but I just --

14  I wanted to make clear that there -- that it's a

15  different universe of materials in this case, and

16  also that the interview -- many -- not many -- a

17  handful of interview memos including Ms. Bennett's,

18  have been disclosed, and we have them, so ...

19          THE COURT:  See, that will go to weight.

20  That will go to -- if there is a privilege, whether

21  there's a waiver, which would be addressed in the

22  context of any briefing if we have to do that, so --

23          MS. TRZASKOMA:  Okay.  Thank you,

24  Your Honor.

25          THE COURT:  Yes.

1          MS. LONGLEY:  Your Honor?

2          THE COURT:  Yes?

3          MS. LONGLEY:  It's Serena Longley from the

4    AG's office.  Can I just, you know, comment on the

5    interview memos that Cuomo has?

6          He got them through criminal discovery.  He

7    did not get them from us.  And I look forward to --

8    you know, we can certainly brief the Court if this

9    gets to Your Honor about why the privilege has not

10   been waived on that, but it hasn't, and, you know,

11   he got those in the context of criminal discovery in

12   New York State Criminal Court, which is very

13   different standard than is in place here in the

14   civil court.

15         THE COURT:  I understand.  I'm not making

16   any ruling, and nobody should construe anything that

17   I've said here today, things that are not before me

18   and issues that have not been briefed, we're not

19   making a finding on those.  So that's the reason for

20   deferring this and having, hopefully, a clearer

21   discussion about that.

22         Again, I'm just really trying to minimize

23   the number of issues that have to be briefed because

24   at a -- it does seem -- from what I understand, and

25   I've read most, if not all, of what's been presented

1    to Judge Merkl, obviously, not the documents

2    themselves, but I've read the transcripts of all of

3    her discussions with all of you, and a lot of the

4    issues are overlapping, and it's burdensome for the

5    parties, and it's burdensome for two courts to have

6    to resolve the same issue in multiple places,

7    multiple times.  So that's why I'm trying to

8    streamline this, so that if we do have briefing,

9    it's going to be on a quick turnaround.

10           I mean, the other issue that we haven't

11   talked about, but we'll have to talk about on the

12   29th, is that the fact discovery cutoff is the end

13   of February.  Clearly, we're not going to make that.

14   So we're going to have to assess -- the parties

15   should be prepared to discuss at that conference,

16   you know, what's still remaining and, you know,

17   what, if any, additional time is going to be needed.

18   So we don't have to get to that today, but, you

19   know, it's out there.  All right.

20           Ms. Schnell, for Ms. Bennett, anything else

21   you would like to raise today while we're assembled?

22           MS. SCHNELL:  No, Your Honor, other than we

23   have been unsuccessful in seeking deposition dates

24   from the defendants.  And if that has not been

25   resolved by the 29th, we would like to address that

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    at that conference, Your Honor.

2              THE COURT:  Well, what we'll do is we'll

3    let anybody who has something to say, you need to

4    get a letter to me by January 24th at 5 p.m.  And

5    that's your deadline.  I'm not taking -- nobody is

6    going to be able to raise any issues or pop up or

7    throw something else at me after 5 o'clock on

8    January 24th, so ...

9              MS. SCHNELL:  Absolutely, Your Honor.

10   That's --

11             THE COURT:  If you want to have it be

12   heard -- if you want me consider it at the January

13   29th conference, that's the deadline.

14             MS. SCHNELL:  We will absolutely abide by

15   that, Your Honor.  Not a problem.

16             THE COURT:  Okay.  Thank you.

17             Ms. Trzaskoma, anything else you would like

18   to cover today?

19             MS. TRZASKOMA:  No, Your Honor.  Thank you.

20             THE COURT:  All right.  Thank you.

21             Ms. Sulkowski?

22             MS. SULKOWSKI:  Nothing, Your Honor.  Thank

23   you.

24             THE COURT:  And Ms. Longley?

25             MS. LONGLEY:  Yes.  One thing, Your Honor.

```
 1              In the event there are any developments in

 2    the Trooper 1 case, as it relates to the subpoena to

 3    the Attorney General's Office, would you like us to

 4    provide a, you know, update by letter to the Court

 5    whenever that happens?

 6              THE COURT:  Yes, I do.  It doesn't have to

 7    be immediate, but you can --

 8              MS. LONGLEY:  Yeah.

 9              THE COURT:  -- do it in your January 24th

10    letter.

11              MS. LONGLEY:  Okay.  And in the unlikely

12    event there's a ruling between the 24th and the

13    29th, I would think Your Honor would want us to

14    write anyways to let you know.

15              THE COURT:  You can certainly let me know

16    before then.  Just not after then.

17              MS. LONGLEY:  Okay.  Thanks.

18              THE COURT:  All right.  Either of the other

19    defendants, Ms. DesRosiers or Ms. Mogul, anything

20    else you want to raise?

21              It's nothing or either that they're on

22    mute.  Okay.

23              MR. DELIKAT:  No, Your Honor, for Defendant

24    Mogul.

25              THE COURT:  Okay.  Thank you.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          And for Ms. DesRosiers?

2          MR. SCHWAB:  Nothing to add, Your Honor.

3          THE COURT:  Okay.  All right.

4          Thank you very much, everyone.  You'll see

5    a post-conference order from us.  And we'll be

6    adjourned.

7          Thank you.  Have a good afternoon.

8

9                         0o0

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    C E R T I F I C A T E
 3
 4        I, Adrienne M. Mignano, certify that the
 5   foregoing transcript of proceedings in the case of
 6   Bennett v. Cuomo, et al; Docket #22CV7846 was
 7   prepared using digital transcription software and is
 8   a true and accurate record of the proceedings.
 9
10
11   Signature   Adrienne M. Mignano
                  _____
12                ADRIENNE M. MIGNANO, RPR
13
14   Date:       January 6, 2024
15
16
17
18
19
20
21
22
23
24
25
```

AMM TRANSCRIPTION SERVICE - 631.334.1445