February 13, 2024

**VIA ECF**

Hon. LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM);
*Cuomo v. Boylan*, 23-mc-1587 (LDH) (TAM)

Dear Judge DeArcy Hall:

We represent nonparty Lindsey Boylan in the above-referenced matters and write in opposition to Defendant Andrew Cuomo's appeal (ECF No. 232 ("Def. App.")), of Magistrate Judge Merkl's January 16, 2024 discovery order (ECF No. 218 ("Boylan Order")). In his appeal, Mr. Cuomo seeks to have this Court overturn Judge Merkl's well-considered order limiting the scope of the eight wildly intrusive document subpoenas[1] issued to and about Ms. Boylan—a nonparty in this case who has never met or even communicated with Trooper 1. None of the subpoenas calls for a single document relating to Trooper 1—*because there are none*. Mr. Cuomo's appeal is a last-ditch attempt to seek irrelevant, disproportionate, and burdensome discovery from a nonparty, and it does not point to a *single* error of law committed by Magistrate Judge Merkl. For the reasons set forth below, Mr. Cuomo's request should be denied, and the Boylan Order affirmed.

*Factual Background*

Mr. Cuomo has been remarkably candid about exactly why he seeks discovery from and about nonparty Ms. Boylan: retaliation against her, and rehabilitation for himself.

After Ms. Boylan and other complainants bravely came forward with public accusations of sexual harassment against the then-Governor, the New York State Office of the Attorney General (the "OAG") and the New York State Assembly Judiciary Committee (the "AJC") appointed top-

---

[1] The Boylan Order addressed three groupings of subpoenas: (1) Mr. Cuomo's document subpoena issued to Ms. Boylan that was the subject of her motion to quash filed on June 28, 2023; (2) four additional nonparty subpoenas seeking information about Ms. Boylan that was the subject of her second motion to quash filed on June 30, 2023, including subpoenas issued to (i) the Empire State Development Corporation ("ESD"), where Ms. Boylan served as Vice President for Business Development and then Chief of Staff to Howard Zemsky; (ii) the Executive Chamber, where Ms. Boylan served as Deputy Secretary for Economic Development and Special Advisor to Mr. Cuomo; (iii) Howard Zemsky, Ms. Boylan's prior supervisor and the Chair and Chief Executive Officer of ESD; and (iv) Elizabeth Fine, the former General Counsel of ESD; and (3) three further subpoenas discussed at the January 11, 2024 hearing, including subpoenas noticed to (a) "Lindsey for New York," Ms. Boylan's Congressional campaign entity; (b) Cade Leebron, the former finance director of Ms. Boylan's Congressional campaign; and (c) Verizon, seeking extensive data about Ms. Boylan's personal cellphone records. In total, the Boylan Order addressed eight subpoenas. However, at last count, between this case and a companion case, *Bennett v. Cuomo et al*, No. 22-cv-07846 (VSB) (SLC) (S.D.N.Y.), Mr. Cuomo has issued *no fewer than 25 nonparty subpoenas* to and related to Ms. Boylan, seeking such things as her personal cellphone records, information about her purported sexual history, material relating to her political campaigns, and personnel records—all from a *nonparty* who has never communicated with the Plaintiff in the case. This is pure harassment, and it is outrageous.

tier independent law firms to investigate those allegations. Both investigations found significant evidence that Mr. Cuomo engaged in a pattern of sexual harassment and retaliation,[2] and Mr. Cuomo ultimately resigned in disgrace. However, as Mr. Cuomo's counsel openly has admitted in this matter: "*He can't move on*." ECF No. 88-1 (emphasis added). Rather than accept the facts and the results of the government investigations, Mr. Cuomo has publicly sought to relitigate them and to "go out and re-create [those investigations]."[3] Mr. Cuomo has long viewed Ms. Boylan—the first woman to publicly make harassment allegations against him—as his chief antagonist. After Ms. Boylan first surfaced her accusations, Mr. Cuomo and his enablers engaged in a brutal campaign to retaliate against her, including by unlawfully releasing her personnel records to the press; writing a disparaging draft op-ed that was widely shared with current and former Executive Chamber employees and members of the press; and unleashing his spokespersons and counsel to accuse Ms. Boylan of anything they could throw at her—including deceitfulness, bullying, and adultery. Mr. Cuomo transparently is now attempting to use this lawsuit as a vehicle to do the same.

But this is the wrong forum for that: Mr. Cuomo's previous sexual harassment of nonparty Ms. Boylan is of *no relevance* to the claims brought against him by Trooper 1 in this action. Ms. Boylan has no direct information about this case: she is not a percipient witness to Mr. Cuomo's harassment of or retaliation against Trooper 1; she did not work in the same environment as Trooper 1; and she has never even spoken with Trooper 1. It is perhaps unfortunate for Mr. Cuomo that he is unable to "move on." But, as much as Mr. Cuomo would like to place Ms. Boylan in his crosshairs and at the center of this action, Ms. Boylan did not bring it (or any action), and she does not have relevant information regarding the claims in this action or any (as yet unasserted) defenses.

### *Mr. Cuomo's Improper Subpoenas to Ms. Boylan*

In April 2023, Mr. Cuomo served two subpoenas on Ms. Boylan: a subpoena for deposition (which has not yet been litigated) and a document subpoena. The Boylan document subpoena sought improper discovery about Ms. Boylan including: (1) documents related to Ms. Boylan's political campaigns [Requests 9-10, 15]; documents related to Ms. Boylan's employment and resignation from New York State employment [Requests 12-14]; communications with Howard Zemsky about their personal and/or purported sexual relationship or about Mr. Cuomo [Request 8]; documents concerning the OAG and AJC investigations [Requests 2-3]; communications with media outlets or journalists regarding Ms. Boylan's allegations against Mr. Cuomo [Request 4]; communications with Karen Hinton and current or former Executive Chamber employees, including other complainants, concerning Mr. Cuomo [Requests 5, 7]; documents concerning Ms. Boylan's February 2021 Medium essay [Request 6]; communications, videos, images, or photographs with/of Mr. Cuomo and documents concerning Ms. Boylan's videos, images,

---

[2] Both investigations concluded that Mr. Cuomo sexually harassed a number of current and former New York State employees, including Ms. Boylan. *See* https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf; and https://nyassembly.gov/Press/?sec=story&story=99809. A third government investigation, this one conducted by the U.S. Department of Justice, has now reached the same conclusion. *See* https://www.justice.gov/opa/pr/justice-department-secures-settlement-agreement-state-new-york-executive-chamber-resolve.

[3] Feb. 7, 2023 Hearing Tr., ECF No. 25 at 95:1-9, *Cuomo v. Office of the N.Y. State Att'y Gen.*, No. 22-mc-03044 (LDH) (TAM) (E.D.N.Y.).

photographs, and personal interactions with/of Mr. Cuomo and her allegations of sexual harassment or other misconduct against Mr. Cuomo [Request 1, 11, 16].

*Mr. Cuomo's Improper Third-Party Subpoenas Seeking Information about Ms. Boylan*

Beginning in May 2023, Mr. Cuomo launched a barrage of additional third-party subpoenas to various individuals and entities seeking personal information about Ms. Boylan—without making any pretense of tying the requests to Trooper 1's claims. Not a single request so much as mentioned Trooper 1 or sought any information about her—again, because Ms. Boylan has no such information. *See* supra note 1 (listing subpoenas noticed to "Lindsey for New York," Cade Leebron, the Executive Chamber, ESD, Howard Zemsky, and Elizabeth Fine).

*Procedural Background*

In June 2023, Mr. Cuomo moved to compel compliance with the subpoenas at issue, and Ms. Boylan cross-moved to quash them. *See Cuomo v. Boylan*, ECF Nos. 1 & 17. At conferences held over a total of some six hours on September 26, 2023 and January 11, 2024, Magistrate Judge Merkl addressed the discovery motions, at great length and with painstaking consideration. *See* ECF Nos. 232-2 & 232-3. On January 16, Judge Merkl granted in part and denied in part Mr. Cuomo's motion to compel and Ms. Boylan's motion to quash, *see* Boylan Order, which had the effect of significantly limiting the scope of all the document subpoenas issued to and about Ms. Boylan.[4]

*The Issues Under Appeal*

"[A] party seeking to overturn a discovery ruling by a magistrate judge generally bears a heavy burden." *Mental Disability L. Clinic v. Hogan*, 739 F. Supp. 2d 201, 203–04 (E.D.N.Y. 2010) (citations and internal quotation marks omitted and alterations accepted). A district court may only set aside a magistrate judge's order on a nondispositive issue if it is "clearly erroneous" or "contrary to law." *See* Fed. R. Civ. P. 72(a). "This standard is highly deferential and only permits reversal where the magistrate abused his discretion." *Mental Disability L. Clinic*, 739 F. Supp. 2d at 203. Under this standard, the question is whether the magistrate judge "fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure," *see Weiner v. McKeefery*, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014), or, in entering a finding of fact, rendered a decision that leaves this Court "with the definite and firm conviction that a mistake has been committed," *see United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004).

Mr. Cuomo raises three issues on appeal, none of which clears this high standard of review.

*First*, Mr. Cuomo argues that the Boylan Order erred in quashing "certain requests on the

---

[4] In parallel, in the Southern District of New York, Magistrate Judge Cave recently issued an order largely granting Ms. Boylan's motions to quash Mr. Cuomo's equally expansive document subpoenas issued to or about Ms. Boylan. *See Bennett v. Cuomo et al*, No. 22-cv-07846 (VSB) (SLC) (S.D.N.Y.), at ECF No. 164. On January 24, Mr. Cuomo moved for reconsideration of that order based on additional discovery. *See id.* at ECF No. 172. Judge Cave swiftly denied Mr. Cuomo's request. *Id.* at ECF No. 182. This appeal and the motion for reconsideration in the *Bennett* matter is typical of Mr. Cuomo's defense, which is at New York taxpayers' expense. As of October 2023, an incomplete tally of Mr. Cuomo's legal fees cost New York payers at least $20 million. *See* Taxpayers on Hook for At Least $20M from Cuomo Investigations (Oct. 17, 2023), https://www.timesunion.com/state/article/taxpayers-hook-least-20m-cuomo-investigations-18429319.php. Meanwhile, the survivors of his harassment and retaliation are being bled dry by these proceedings—none more so than Ms. Boylan, who is neither a plaintiff nor a defendant in any lawsuit but is being treated as such. The price for nonparties—who are simply trying to preserve their right to be free from these harassing, improper, invasive, and burdensome blizzard of subpoenas—should not be so dear.

grounds of burden," Def. App. at 3, later clarifying that "[t]o the extent that the Boylan Order's rulings rest fully or principally on burden, they are contrary to law." *Id.* at 4. Yet, they do not. The Boylan Order—and Magistrate Judge Merkl's extensive comments made during the conferences in this matter—makes perfectly clear that each of the rulings in question *also* are based on her findings that the requests are not relevant[5] and are disproportionate to the needs of the case.[6] *See, e.g.*, Boylan Order at 5-15 (finding that Cuomo has not established "sufficient relevance and proportionality" as to Boylan Document Requests 2-6, 8-10, 12-15; ESDC Requests 4-10; Executive Chamber Requests 5, 7-14; all Howard Zemsky Requests except Request 6; all Elizabeth Fine Documents Requests; all Lindsey for New York Requests except Request 2; the Verizon Subpoena; and Cade Leebron Document Requests 1 and 3).

However, even if the subpoenas at issue sought relevant and proportionate information (which, as the lower court held, they do not), Mr. Cuomo misapplies the law. Rule 45 requires a court to "quash or modify" a subpoena that, *inter alia*, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "[W]here the party moving to quash is a non-party to the pending litigation, that fact entitles the witness to consideration regarding expense and inconvenience." *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017) (internal quotations and citation omitted).

Here, despite Cuomo's assertions to the contrary, *see* Def. App. at 3-4, Ms. Boylan has amply demonstrated significant burden. *See Cuomo v. Boylan*, ECF No. 17, at 30-31. Indeed, in her Cross Motion to Quash, Ms. Boylan supported her assertion of undue burden with the affidavit of her attorney, which gave an estimate of the number of documents involved (at least 550,000 documents), described the time that would be incurred in order to comply with Mr. Cuomo's requests (hundreds of hours), and explained the burden that Ms. Boylan has already had to undertake at her own personal expense. *See* Gerchik Declaration, *Cuomo v. Boylan*, ECF No. 18 at ¶¶ 26-27.[7] Further, such an undertaking would be even more burdensome now: in the intervening

---

[5] For example, at the January 11 discovery conference, Judge Merkl at various points expressed her concern that many of Mr. Cuomo's requests sought irrelevant documents. *See, e.g.*, Jan. 11 Tr., ECF No. 232-3, at 18:12-14 ("[W]e are going to be putting limits on each category that I find relevant, and ***I'm not going to find most [of] them relevant***.") (emphasis added); *id.* at 22:13-15 ("To the extent that the news media is calling her off the hook and she's not answering some of those calls, which I suspect did happen, ***it's irrelevant, isn't it?***") (emphasis added); *id.* at 32:20-21 ("[S]ome of these categories are so, so afield from the issues in this case[.]"); *id.* at 49:5-8 ("[T]here's been a lot of talk about this Medium essay … How on earth are documents including drafts and communications regarding it relevant and proportional?") (emphasis added).

[6] Judge Merkl also observed at the conference that many of Mr. Cuomo's requests were disproportionate. *See, e.g.*, Jan. 11 Tr., ECF No. 232-3 at 44:10-18 ("[T]he part of this issue that I think we really need to keep in mind is the proportionality concern. … Because at the end of the day, [Ms. Boylan] is a non-party witness who … chose not to file a lawsuit against Governor Cuomo because she did not want to walk into this circus and this type of situation and yet, she's being pulled here not even as a sideshow but in center stage … And that is not proportionate to the needs of this case."); *id.* at 45:1-2 ("The proportionality point is serious because you have insane amounts of cross-examination [material] based upon your motion papers."); *id.* at 106:23-24 ("I don't think I'm going to be directing [Ms. Boylan's] counsel to do this; it's not proportionate."); *id.* at 115:21-24 ("I agree with Ms. Perry that all phone records for a three year period is very, very broad and not proportional given [Ms. Boylan's] status as a non-party.").

[7] "[C]ourts assess whether a subpoena presents an undue burden by weigh[ing] the burden to the subpoenaed party against the value of the information to the serving party and by evaluating that information's relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Bhatt v. Lalit Patel Physician P.C.*, 2020 WL 13048694 at *1-2 (E.D.N.Y. Oct. 19, 2020) (citations omitted). As we have extensively briefed, because all of the factors in *Bhatt* indicate that Mr. Cuomo's various document requests present an undue burden, *see, e.g., Cuomo v. Boylan*, ECF No. 17 at 29-31, that is an additional reason why the Boylan Order should be affirmed.

time since the lower court's order, the parties have met and conferred regarding the document requests and Ms. Boylan is in the process of producing responsive documents. Any reversal of the Boylan Order would be highly prejudicial to Ms. Boylan. Among other things, it would force her to re-review documents previously determined to be non-responsive and to develop and employ new search terms to identify additional documents for review. This in turn would likely require the review of thousands of additional documents concerning topics that the Court has already properly determined are not relevant to the issues in the case.

**_Second_**, Mr. Cuomo tries to argue that "none of the challenged requests were proportional without really explaining why." Def. App. at 4. But Magistrate Judge Merkl *does* explain why. As she stated in the Boylan Order, "in considering the proportionality of the discovery requests made of her and regarding [Ms. Boylan]," the Court [took] special notice of the fact that Ms. Boylan is not a party to this case." Boylan Order at 3; *see also Henry v. Bristol Hosp., Inc.*, 2020 WL 1158464, at *1 (D. Conn. Mar. 10, 2020) ("[C]ourts give special weight to the burden on non-parties of producing documents to parties involved in litigation." (quotation marks and alteration omitted)). In assessing whether Mr. Cuomo's requests were "proportionate to the needs of the case," the lower court assessed Ms. Boylan's status as a "non-party witness" along with other important factors, including the fact that Ms. Boylan "chose not to file a lawsuit against Governor Cuomo because she did not want to walk into this circus"; that "Trooper 1's claims are specific" and "narrow"; and that Mr. Cuomo had "insane amounts of cross-examination [material]." Jan. 11 Tr., ECF No. 232-3 at 44:12-45:2. As for each and every request that the lower court found not to be proportional, the court also found that those requests were not relevant, as described above. *Cf. Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("A subpoena that pursues material with little apparent or likely relevance to the subject matter ... is likely to be quashed as unreasonable even where the burden of compliance would not be onerous.") (quotation and citation omitted).

In addition, to the extent Mr. Cuomo argues that he should be entitled to the requests at issue for the purpose of cross-examining Ms. Boylan at trial, he is incorrect as a matter of law. Though Mr. Cuomo boldly claims that "the law is plain that discovery requests seeking impeachment information are not disproportionate," Def. App. at 5, he does not provide any authority that supports this blanket assertion. Indeed, courts routinely *reject* nonparty subpoenas seeking impeachment evidence. *See Cuomo v. Boylan*, ECF No. 17 at 20-21 (citing cases); Boylan Reply, ECF No. 112 at 8 (citing cases); *see also Shih v. Petal Card, Inc.*, 2021 WL 5279395, at *4 (S.D.N.Y. Nov. 12, 2021) ("[A]lthough the credibility of a witness (whether or not a party) is always relevant, in a broad sense, to the parties' claims and defenses, courts have historically been wary of discovery sought solely for impeachment purposes."). Moreover, courts in the Second Circuit have relied on Rule 608 to deny the discovery for the purpose of attacking credibility. Boylan Reply, ECF No. 112 at 13 (citing cases).[8]

**_Third_**, Mr. Cuomo takes issue with the temporal scope that the Boylan Order imposes on Boylan Document Request 5 (and several related third-party subpoenas). Apparently, Mr. Cuomo believes that the lower court committed legal error by ordering Ms. Boylan to only produce

---

[8] The two cases that Mr. Cuomo cites are also inapposite. *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 464 (S.D.N.Y. 1988) involves *party* discovery, not *nonparty* discovery. And in *Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300 (S.D.N.Y. June 19, 2019), the Court determined that the documents at issue were—unlike those at issue here—"plainly germane, and indeed important" to the plaintiff's claims and calculation of damages. *Id.* at *9.

documents, for certain requests, reflecting communications with other complainants up until February 2022 (when the Complaint was filed); according to Mr. Cuomo, the Court should have ordered Ms. Boylan to produce documents reflecting communications up until March 2023 (when the subpoena was issued). However, there is no support for that in the law and there is nothing unreasonable—let alone an abuse of discretion—in imposing a timeframe on a subpoena that is *completely unlimited* in temporal scope, as here. *See* Boylan Order at 17 (requesting "*all* documents reflecting" certain communications, without specifying a start date or end date) (emphasis added); *see also* Jan. 11 Tr., ECF No. 232-3 at 18:10-12 ("Because that is another thing I found lacking in all of the subpoenas, was appropriate limits on the timeframe[.]"). In fact, in the absence of any such timeframe, Judge Merkl was well within her discretion to consider an amalgam of factors when imposing a start date and an end date. *See Bruce Kirby, Inc. v. LaserPerformance (Eur.) Ltd.*, 2021 WL 4520157, at *3 (D. Conn. Oct. 4, 2021) (limiting the temporal scope of document requests based on the producing party's status as a nonparty and the overbreadth of the requests, among other factors). Indeed, the extensive colloquy regarding this exact question makes clear that Judge Merkl engaged in exactly that analysis. *See* Jan. 11 Tr., ECF No. 232-3 at 119:25-126:19 (extensive discussions regarding the appropriate temporal scope for Document Request 5, including discussion regarding burden, proportionality, and relevance). Because the lower court did not commit any error in defining the temporal limits of Mr. Cuomo's document requests (when there were none in the first place), the Magistrate Judge's decision should be affirmed.

Because Mr. Cuomo has failed to show that the lower court committed any error—let alone any clear error or abuse of discretion—his appeal should be denied.

Sincerely,

*/s/ E. Danya Perry*
E. Danya Perry
Krista Oehlke (*pro hac vice*)
Perry Law
157 East 86th Street, 4th Floor
New York, NY 10028
Email: dperry@danyaperrylaw.com
Telephone: (212) 840-7939

Julie R. F. Gerchik (*pro hac vice*)
for Glaser Weil Fink Howard Jordan & Shapiro LLP

*Attorneys for Nonparty Lindsey Boylan*